UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------------------x
UNITED STATES OF AMERICA,


     – against –                             No. 24-cr-128 (MAS)

ELIYAHU WEINSTEIN,

                       Defendant.
------------------------------------------------------------------------x




---

## DEFENDANT ELIYAHU WEINSTEIN'S MEMORANDUM OF LAW IN SUPPORT OF HIS OMNIBUS PRETRIAL MOTIONS

---




**MEISTER SEELIG & FEIN PLLC**
***Attorneys for Eliyahu Weinstein***
125 Park Avenue, 7th Floor
New York, New York 10017
Phone: (212) 655-3500
Fax: (212) 655-3535

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ........................................................................................... 1

II.    THE GOVERNMENT SHOULD BE ORDERED TO FILE A BILL OF PARTICULARS SPECIFYING THE SECURITIES CHARGED IN COUNTS ONE; THAT IS THE ONLY MEANS OF ENSURING MR. WEINSTEIN UNDERSTANDS THE CHARGES AGAINST HIM AND CAN PREPARE TO DEFEND HIMSELF AT TRIAL ................ 4

      A.    Neither the Charging Documents nor the Discovery Identify the Securities Charged in Counts One and Two ......................................................................... 5

      B.    Legal Standard: Only a Limited Subset of Investment Vehicles Qualify as "Securities" As Defined by the Federal Securities Laws........................................ 7

      C.    The Government Should be Required to File a Bill of Particulars ......................... 9

III.   THE OBSTRUCTION OF JUSTICE CHARGED IN COUNT SEVEN IS FATALLY FLAWED: THE COURT SHOULD DISMISS THE CHARGE OR ALTERNATIVELY SEVER IT FROM THE INDICTMENT'S REMAINING COUNTS ............................. 12

      A.    The Indictment's Obstruction Charge is Rooted in Mr. Weinstein's Prior Convictions; the Other Six Counts Are Wholly Unrelated to Mr. Weinstein's Criminal History ............................................................................ 13

      B.    The Obstruction Charge Does Not Satisfy the Statute's Basic Elements, It Should Be Dismissed ........................................................................................ 15

            1.    *Legal Standard: Motion to Dismiss Under Rule 12*................................. 15

            2.    *The Obstruction Charge Should be Dismissed: It Does Not Satisfy the Statute's Basic Elements* ........................................................................ 16

      C.    In the Alternative, The Court Should Sever the Obstruction Charged in Count Seven from the Indictment's Fraud Charges in Counts One through Six ....................... 18

            1.    *Third Circuit Case Law Recognizes the Severe Prejudice Inherent in Introducing Mr. Weinstein's Prior Convictions* ........................................ 18

            2.    *Mr. Weinstein's Prior Convictions Are Inadmissible as to the Fraud Charges in Counts One through Six Alone* ............................................... 22

IV.   *BRADY* AND ITS PROGENY REQUIRE SPECIFIC, COMPLETE AND TIMELY DISCLOSURES: THE COURT SHOULD ORDER THE GOVERNMENT TO SUPPLEMENT ITS DISCLOSURES PER *BRADY* ........................................................ 28

      A.    The Government has Ignored Mr. Weinstein's Specific *Brady* Demands, Although *Brady* Requires Timely Disclosures ..................................................... 29

B.  Mr. Weinstein Should Not Have to Resort to Finding a *Brady* Needle in the Haystack: The Government Cannot Rely on its Voluminous Discovery Disclosures *In Lieu* of Satisfying its *Brady* Obligation ............................................................. 30

C.  The Government Cannot Withhold *Brady* Simply Because it Deems the Information Unreliable ............................................................................................. 33

V.  CONCLUSION .................................................................................................................. 34

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Brady v. Maryland,*
373 U.S. 83 (1963) ............................................................................................ 29, 33, 35

*DiSimone v. Phillips,*
461 F.3d 181 (2d Cir. 2006) ...................................................................................... 30, 34

*Dowling v. United States,*
473 U.S. 207 (1985) ...................................................................................................... 15

*Fagan v. Fischer,*
No. CV-147013, 2016 WL 347318 (D.N.J. Jan. 28, 2016) .......................................... 9

*Fischer v. United States,*
No. 23-5572, Slip. Op., 603 U.S. __ (2024) ............................................................... 17

*Haili v. United States,*
260 F.2d 744 (9th Cir. 1958) ...................................................................................... 17

*Huddleston v. United States,*
485 U.S. 681 (1988) ...................................................................................................... 23

*In re Paoli R.R. Yard Litig.,*
35 F.3d 717 (3d Cir. 1994) .......................................................................................... 28

*Kyles v. Whitley,*
514 U.S. 419 (1995) .............................................................................................. 29, 34

*Lino v. City Investing Co.,*
487 F.2d 689 (3d Cir.1973) .......................................................................................... 9

*Michelson v. United States,*
335 U.S. 469 (1948) ...................................................................................................... 20

*P & C Inv. Club v. Becker,*
520 F. Supp. 120 (E.D. Pa. 1981).............................................................................. 8

*Reves v. Ernst & Young,*
494 U.S. 56 (1990) ................................................................................................... 7, 8

*Robyn Meredith, Inc. v. Levy,*
440 F. Supp. 2d 378 (D.N.J. 2006)............................................................................. 9

*S.E.C. v. Bennett,*
　889 F. Supp. 804 (E.D. Pa. 1995) ................................................................ 8

*S.E.C. v. W.J. Howey Co.,*
　328 U.S. 293 (1946) ..................................................................................... 8

*United States v. Aleynikov,*
　676 F.3d 71 (2d Cir. 2012) ........................................................................ 15

*United States v. Bagley,*
　473 U.S. 667 (1985) ................................................................................... 29

*United States v. Blankenship,*
　No. 5:14-CR-00244, 2015 WL 3687864 (S.D. W. Va. June 12, 2015) ....... 31, 32, 33

*United States v. Bortnovsky,*
　820 F.2d 572 (2d Cir. 1987) ................................................................... 9, 11

*United States v. Busic,*
　587 F.2d 577 (3d Cir. 1978) .................................................................. 19, 22

*United States v. Caldwell,*
　760 F.3d 267 (3d Cir. 2014) ......................................................... 20, 22, 23, 24

*United States v. Cohen,*
　301 F.3d 152 (3d Cir. 2002) .................................................................... 16

*United States v. Coleman,*
　451 F.3d 154 (3d Cir. 2006) .................................................................. 19, 21

*United States v. Colon,*
　880 F.2d 650 (2d Cir. 1989) .................................................................... 25

*United States v. Connolly,*
　24 F.4th 821 (2d Cir. 2022) .................................................................... 12

*United States v. Connolly,*
　No. 16-CR-00370, 2017 WL 2537808 (S.D.N.Y. May 24, 2017) ................. 11, 12

*United States v. Covington,*
　395 U.S. 57 (1969) ................................................................................... 15

*United States v. Davis,*
　183 F.3d 231 (3d Cir. 1999) .................................................................... 17

*United States v. Edwards*,
    700 F. Supp. 837 (W.D. Pa. 1988) .................................................................. 21, 22

*United States v. Frazier*,
    469 F.3d 85 (3d Cir. 2006) .............................................................................. 19, 21

*United States v. Gillard*,
    No. 23-CR-00026, 2024 WL 247054 (E.D. Pa. Jan. 23, 2024)................................. 20

*United States v. Grasso*,
    No. 00-CR-051, 2002 WL 35644827 (E.D. Pa. Feb. 7, 2002) ............................. 19, 21

*United States v. Handy*,
    No. 4:17-CR-00310, 2018 WL 2734846 (M.D. Pa. June 7, 2018)........................... 25

*United States v. Hawit*,
    No. 15-CR-252, 2017 WL 663542 (E.D.N.Y. Feb. 17, 2017) ................................. 10

*United States v. Heicklen*,
    858 F. Supp. 2d 256 (S.D.N.Y. 2012) .................................................................... 15

*United States v. Hsia*,
    24 F. Supp. 2d 14 (D.D.C. 1998)............................................................................ 31

*United States v. Jacobs*,
    44 F.3d 1219 (3d Cir. 1995) .............................................................................. 19, 22

*United States v. Jones*,
    No. CR 16-516 (KM), 2017 WL 1591855 (D.N.J. May 1, 2017)........................... 28

*United States v. Kahale*,
    789 F. Supp. 2d 359 (E.D.N.Y. 2009) .................................................................... 11

*United States v. Kerik*,
    615 F. Supp. 2d 256 (S.D.N.Y. 2009) .................................................................... 16

*United States v. Lacerda*,
    No. `12-CR-303, 2013 WL 3146835 (D.N.J. June 19, 2013) ................................. 10

*United States v. Mahaffy*,
    693 F.3d 113 (2d Cir. 2012) ................................................................................... 29

*United States v. Manzo*,
    851 F. Supp. 2d 797 (D.N.J. 2012).......................................................................... 15

*United States v. Naegele*,
    468 F. Supp. 2d 150 (D.D.C. 2007) ......................................................................... 31

*United States v. Nelson*,
    852 F.2d 706 (3d Cir. 1988) .................................................................................... 16

*United States v. Newton*,
    No. 01-CR-635, 2002 WL 230964 (S.D.N.Y. Feb. 14, 2002) ................................. 25

*United States v. Parlavecchio*,
    903 F. Supp. 788 (D.N.J. 1995) .............................................................................. 15

*United States v. Pirro*,
    212 F.3d 86 (2d Cir. 2000) ..................................................................................... 15

*United States v. Puco*,
    453 F.2d 539 (2d Cir. 1971) .................................................................................... 25

*United States v. Rivas*,
    377 F.3d 195 (2d Cir. 2004) .................................................................................... 29

*United States v. Rodriguez*,
    496 F.3d 221 (2d Cir. 2007) ....................................................................... 29, 30, 31

*United States v. Rosa*,
    891 F.2d 1063 (3d Cir.1989) ................................................................................ 9, 11

*United States v. Sampson*,
    980 F.2d 883 (3d Cir. 1992) ............................................................................ 20, 23

*United States v. Shteyman*,
    No. 10-CR-347, 2011 WL 2006291 (E.D.N.Y. May 23, 2011) ............................... 11

*United States v. Simmons*,
    591 F.2d 206 (3d Cir. 1979) ................................................................................... 16

*United States v. Skilling*,
    554 F.3d 529 (5th Cir. 2009) .................................................................................. 32

*United States v. Slayer*,
    No. CR S-10-0062, 2010 WL 3036444, S-10-0062 ......................................... 32, 33

*United States v. Stocker*,
    No. CRIM. A. 89-00463-01, 1990 WL 157153 (E.D. Pa. Oct. 10, 1990)................. 12

*United States v. Thomas,*
   981 F. Supp. 2d 229 (S.D.N.Y. 2013) ........................................................ 31

*United States v. Upton,*
   856 F. Supp. 727 (E.D.N.Y. 1994) ........................................................... 10

*United States v. Vaid,*
   16-CR-763, 2017 WL 3891695 (S.D.N.Y. Sept. 5, 2017) ..................... 10

*United States v. Vastola,*
   670 F. Supp. 1244 (D.N.J. 1987) ............................................................. 25

**Statutes**

15 U.S.C. § 78 ............................................................................................ 5, 7,8
18 U.S.C. § 371 ................................................................. 5, 13,16,17, 18, 19
18 U.S.C. § 922(g)(1) ..................................................................................... 19
18 U.S.C. § 1503 ..................................................................... 13, 16, 17, 18
18 U.S.C. § 1512 ............................................................................................ 17
18 U.S.C. § 3583(i) ........................................................................................ 18
18 U.S.C. §§ 841 ........................................................................................... 19

**Rules**

Fed. R. Crim. P. 7(f) ........................................................................................ 9
Fed. R. Crim. P. 11 ......................................................................................... 27
Fed. R. Crim. P. 12(b) ................................................................................... 15
Fed. R. Crim. P. 14(a) ............................................................................. 18, 20
Fed. R. Evid. 403 ...................................................................... 23, 24, 25, 28
Fed. R. Evid. 404(b) ................................................................... 22, 23, 25

## <u>EXHIBIT LIST</u>

| Exhibit A |
|---|
| *Brady* Demand Letter |

We respectfully submit defendant Eliyahu Weinstein's memorandum of law in support of his omnibus pretrial motions requesting that the Court: (1) order the government to file a bill of particulars specifying the security charged in Counts One and Two; (2) dismiss Count Seven, charging obstruction of justice; (3) in the alternative, sever Count Seven from the Indictment's remaining counts; and (4) order the government to supplement its pretrial disclosures as required per *Brady v. Maryland*.

## I.    INTRODUCTION

Mr. Weinstein faces the trial of his life come November. With two prior convictions, and a presidential commutation, Mr. Weinstein knows this may be his last chance to vindicate himself and clear his name in the face of these new charges. And that is precisely what he intends to do at trial: present a fulsome defense to the jury that his efforts related to the charged transactions were in pursuit of identifying market opportunities and executing real deals.

But the conduct of this case—beginning with the government's very charging documents—has been designed to thwart his every effort to prepare and mount a meaningful defense. While Mr. Weinstein's fate should be determined by the jury solely based on any evidence pertaining to the investor fraud charged in this Indictment, the government packed the Indictment with irrelevant and prejudicial information relating solely to Mr. Weinstein's prior convictions. A significant portion of the Indictment's "speaking" section is devoted to Mr. Weinstein's past.

There are real problems plaguing Mr. Weinstein's prior cases. The circumstances leading up to Mr. Weinstein's pleas and sentences, set forth in his voluminous Petition for *Habeas Corpus* relief from his prior convictions, colors any fair view of Mr. Weinstein's past experiences with the criminal justice system. Mr. Weinstein received a total sentence of 24 years' imprisonment for the pleas in his 2013 and 2014 cases, and a combined restitution judgment of over $200 million— although the government had previously offered him a plea carrying a statutory maximum term of

imprisonment of five years, and restitution of $14 million.  The chasm between Mr. Weinstein's plea offer and his ultimate sentence is a telling indicator that the proceedings in his 2013 and 2014 cases were anything but standard.  A fair airing of his criminal history would necessitate opening a decade-old can of worms.  Mr. Weinstein's presidential commutation recognized as much.

Although Mr. Weinstein has a powerful story to tell about the conduct of his prior cases, this trial is not the appropriate forum to litigate Mr. Weinstein's past.  Indeed, any efforts to introduce evidence of Mr. Weinstein's prior convictions at trial would be not just improper, but ruinous to Mr. Weinstein's constitutionally guaranteed right to a fair trial by an impartial jury.

But that is apparently just what the government plainly intends to do. The Indictment includes an obstruction of justice charge predicated on Mr. Weinstein's prior supervised release that seems devised to ensure the jury is fully aware of Mr. Weinstein's criminal history.  There is a problem with the government's theory, though.  While obstruction of justice requires a pending "judicial proceeding" there was none at the time of the Indictment's allegations.  The supervised release order binding Mr. Weinstein does not qualify as a matter of law.  The obstruction charge should thus fail, sweeping away any effort to taint the jury with Mr. Weinstein's history.  Either way, however, the jury deciding the fraud charges against Mr. Weinstein should not adjudicate the obstruction charge.   Count Seven should be severed to protect Mr. Weinstein from the insurmountable prejudice he would suffer if the jury tasked with protecting his presumption of innocence on the fraud charges were informed of his prior fraud convictions.  Decades of Third Circuit case law recognize that Mr. Weinstein should be tried for the present allegations against him, not for his past.  Precluding the government from trying Count Seven together with the remaining counts is the only means of ensuring Mr. Weinstein receives a fair trial by an unbiased jury.

The government's charging and disclosure decisions have also thwarted Mr. Weinstein's ability to prepare a thorough and vigorous defense in other ways. While the Indictment's centerpiece charges in Counts One and Two sound in securities fraud, there is neither mention nor identification of what financial instruments are charged as the underlying securities. All Mr. Weinstein has is swirling accusations of fraud on "investors," and a giant heap of disparate communications with a wide array of individuals produced in discovery. Securities fraud requires more. Not all transactions constitute securities. And Mr. Weinstein can only mount his defense to the specific securities fraud charges if he knows what transactions the grand jury charged as securities. Presently without that, he remains in the dark regarding a crucial element of the Indictment's first two charges.

The government's failure to produce or disclose any *Brady* material, even in the face of a court-ordered deadline, and specific requests by Mr. Weinstein compounds that prejudice. Mr. Weinstein specifically requested evidence in the government's possession of his good faith, including statements by witnesses and cooperators, and evidence of successful transactions. Such evidence is obviously exculpatory and crucial to Mr. Weinstein's defense. To date, however, Mr. Weinstein has received no response, although there are strong reasons to believe such information exists. The discovery materials produced thus far suggests that the primary government cooperating witnesses spent months recording Mr. Weinstein specifically to trap him so they could use their manufactured evidence to avoid consequences for their own frauds, and instead blame Mr. Weinstein. In the process, the same cooperating witnesses, apparently grabbed what assets they could for their own benefit, now leaving Mr. Weinstein holding the bag. In the face of such entrapment efforts, Mr. Weinstein has a good faith belief that there is powerful exculpatory evidence of his good faith efforts that he is entitled to per *Brady*.

Trial by surprise is anathema to Mr. Weinstein's constitutional and due process protections. The Court should grant his motions to ensure that Mr. Weinstein can prepare a fulsome defense where decades of his liberty may be at stake.

## II.   THE GOVERNMENT SHOULD BE ORDERED TO FILE A BILL OF PARTICULARS SPECIFYING THE SECURITIES CHARGED IN COUNTS ONE; THAT IS THE ONLY MEANS OF ENSURING MR. WEINSTEIN UNDERSTANDS THE CHARGES AGAINST HIM AND CAN PREPARE TO DEFEND HIMSELF AT TRIAL

The Indictment's headline charges—Counts One and Two—charge Mr. Weinstein with securities fraud.  Of course, Mr. Weinstein maintains his innocence as to all of the Indictment's charges.  He is actively preparing to present a fulsome defense at trial to vindicate himself: his efforts were always directed to facilitating substantive transactions for all involved.  The Indictment's allegations of fraud and misrepresentation simply will not stand at trial.

But simply countering the government's proof regarding any alleged misrepresentations is not Mr. Weinstein's only means of defending against Counts One and Two.  The government's proof on those securities fraud counts require more than the government's basic allegations of deception foundational to all of the Indictment's fraud charges: Counts One and Two must also involve "securities."  That is a defined term in the federal securities laws, with specific characteristics.  Not all financial transactions qualify as securities—only those meeting the statutory requirements can underpin a securities fraud charge.

The Indictment has a glaring hole, however.  It nowhere identifies the specific financial instruments that the grand jury charged as "securities" in Counts One and Two.  While the Indictment variously references groups of "investors" and speaks in generalities about "notes," there is simply no precision regarding the particular securities allegedly involved in the fraud. Indict., Count 1, at 8 ¶ 4(j).  With that basic element of the charged offense missing, Mr. Weinstein's defense is hamstrung.  Obviously, he cannot counter charges of securities fraud while he remains in the dark regarding the specific "securities."  But the government has to date declined to provide specific details regarding the securities charges, stating only during a June 28, 2024 meet and confer that while not every alleged investor contract produced in Rule 16 discovery necessarily constitutes a security, the Indictment provided sufficiently details of examples of the securities charged, which the government views as the typical contracts with Optimus and Tryon investors.

With a crucial element of the Indictment's hallmark charges missing, Mr. Weinstein faces trial by surprise—exactly what our constitutional criminal justice system is designed to prevent. To ensure Mr. Weinstein can adequately prepare to defend his very liberty at stake in this trial, the Court should order the government to file a bill of particulars identifying the financial instruments charged as securities in the Indictment.

### A.    Neither the Charging Documents nor the Discovery Identify the Securities Charged in Counts One and Two

Count One of the Indictment charges conspiracy to commit securities fraud in violation of 18 U.S.C. § 371; 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 40.10b5.  *See* Indict., Count One, at 5-6 ¶ 2.  Count Two charges a substantive count of securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 40.10b5.  *See* Indict., Count Two, at 19 ¶ 2.

Throughout the 17 page "speaking" section, the Indictment repeatedly references alleged "investors." *See, e.g.,* Indict., Count 1, at 4 ¶¶ 1(c), 1(g); 6 ¶ 3, 4(a); 7 ¶ 4(d); 9 ¶ 4(m); 10 ¶ 4(p). But neither count of securities fraud delineates what financial instruments constitute the alleged "securities" charged.  The only times the Indictment even references securities with respect to Counts One and Two is in the charges' headings, and statutory language.  *See* Indict., Count 1, at 6 ¶ 2; Count 2 at 18 ¶ 2.

Sowing further confusion, the Indictment references alleged "investors" related to two entities: "Optimus Investments Inc.," and "Tryon Management Group LLC."  Indict., Count 1, at 4 ¶¶ 1(c), 1(g).[1]  But it expressly discusses only "promissory notes" that "Tryon provided investors"—although those too are not clearly defined as the "securities" at issue.  *See* Indict ¶ 1(j).  Nowhere does the Indictment specify the financial instruments allegedly provided to Optimus "investors," or address whether some or all of those are charged as securities.

The criminal complaint pursuant to which Mr. Weinstein was initially arrested provides no further detail.  It does not allege securities fraud or otherwise mention securities, instead including only wire fraud conspiracy and obstruction of justice conspiracy.  *See* Crim. Compl. At 2, 3.  The criminal complaint references only the same "notes" allegedly provided by Tryon.  *See* Crim. Compl. ¶ 14.

So too, the discovery produced pursuant to Rule 16 provides little clarity.  It includes details regarding several forms and versions of financial instruments seemingly used by Optimus and Tryon, with different terms.  It remains unclear whether the Indictment charges securities fraud based on each of these various financial instruments, or only a subset.

---

[1] Consistent with the Indictment, "Optimus Investments Inc.," will be referred to as "Optimus," and "Tryon Management Group LLC," will be referred to as "Tryon."  Indict ¶¶ 1(c), 1(g).

During a meet and confer on June 28, 2024, the government declined to provide Mr. Weinstein with the specific investment vehicles presented as securities to the grand jury—although acknowledging that not every alleged investor contract produced in Rule 16 discovery necessarily constitutes a security.  Instead, the government pointed Mr. Weinstein to the Indictment's allegations, referenced the "typical" contracts with Optimus and Tryon investors without providing a concrete example or subset.  Given the broad swathe of alleged investor communications and fundraising vehicles alleged in the Indictment and produced in discovery, the government's response provides no clarity on what it views as satisfying this basic element of the crimes charged in Counts One and Two.

**B.    Legal Standard: Only a Limited Subset of Investment Vehicles Qualify as "Securities" As Defined by the Federal Securities Laws**

To allege securities fraud, the government must charge that Mr. Weinstein: (a) employed one or more devices, schemes and artifices to defraud; (b) made one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; and (c) engaged in one or more acts, practices, and courses of business which would and did operate as a fraud and deceit upon one or more investors or prospective investors, ***in connection with the purchase and sale of a security***, by use of means and instrumentalities of interstate commerce and the mails.  *See* 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 40.10b5.

Crucial to those charges, is the use of a "security" in the alleged fraud.[2]  By design, the

---

[2] The definition of "security" is consistent across the federal securities laws.  *Reves v. Ernst & Young*, 494 U.S. 56, 61 n.1 (1990) ("We have consistently held that The definition of a security in § 3(a)(10) of the 1934 Act . . . is virtually identical to the definition in the Securities Act of 1933 and, . . . the coverage of the two Acts may be considered the same.") (quotation marks, citations, and modifications omitted).  Thus, the definition employed in the civil context is applicable to criminal cases as well.

securities laws do not cover all fraudulent investment allegations.  In enacting the securities laws, "Congress did not . . . intend to provide a broad federal remedy for all fraud." *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990) (quotation marks, citations and modifications omitted); *accord id.* at 65 (in passing the securities laws, "Congress was concerned with regulating the investment market, not with creating a general federal cause of action for fraud.").  Instead, because "security" is a defined term under the securities fraud statutes and interpretive caselaw, understanding precisely which instruments are at issue is critical to preparing Mr. Weinstein's defense at trial.

Indeed, for the last nearly 80 years, the Supreme Court has defined and refined what are the characteristics of an "investment contract" that constitutes a "security" under the securities fraud laws.  Not every financial or investment instrument satisfies the legal requirements of a security.  *See, e.g., S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 297 (1946) (addressing the statutory definition of "security," and whether its inclusion of "investment contract" reached the "land sales contract, the warranty deed and the service contract" at issue in that case); *P & C Inv. Club v. Becker*, 520 F. Supp. 120, 121–22 (E.D. Pa. 1981) (holding that the commodity future investment vehicle at issue was not a "security" for purposes of the securities laws).

The subset of loans, or "notes," constituting securities is narrower yet.  The statute itself narrows those loans that qualify, stating that "[t]he term 'security' means any note. . . but shall not include currency or any note. . . which has a maturity at the time of issuance of not exceeding nine months. . . ."  15 U.S.C. § 78c(a)(10).  Courts have provided yet further guidance, clarifying that only certain types of loans or "notes" qualify as securities.  *See S.E.C. v. Bennett*, 889 F. Supp. 804, 808 n.3 (E.D. Pa. 1995) (courts have consistently maintained that term "all 'notes'" in the security definition does not mean that all notes "necessarily qualify for the narrower label 'securities.'"); *see also Reves v. Ernst & Young*, 494 U.S. 56, 62–63 (1990) (rejecting a "per se

rule" including all notes as securities, and clarifying that the statute's "phrase 'any note' should not be interpreted to mean literally 'any note'"); *Robyn Meredith, Inc. v. Levy*, 440 F. Supp. 2d 378, 384 (D.N.J. 2006) (discussing *Lino v. City Investing Co.*, 487 F.2d 689 (3d Cir.1973), which explained that the "definition of a 'note'" requires "fine-tuning . . . to avoid sweeping within the coverage of section 10(b) of the 1934 Act every consumer and business loan financing current operational costs," and held that "a particular note did not fall within the definition of a security").

Thus, whether particular investment vehicles "are securities, is legally and factually complex." *Fagan v. Fischer*, No. CV-147013 (FLW) (TJB), 2016 WL 347318, at *11 (D.N.J. Jan. 28, 2016) ("Plaintiffs' investments consist of a 10% membership interest in Byana, and loans to Byana and Fischer Capital under certain promissory notes. The analysis of whether membership interests in an LLC or debt investments made pursuant to promissory notes are securities, is legally and factually complex.") (quotation marks and citations omitted).

This analysis is impossible without precise identification of the investment vehicle foundational to the securities fraud charges in Counts One and Two.

### C.    The Government Should be Required to File a Bill of Particulars

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the accused has the right to seek "a bill of particulars in order to identify with sufficient particularity the nature of the charge[s] pending against him, thereby enabling [the] defendant to prepare for trial [and] to prevent surprise." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987); *accord United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir.1989) (a bill of particulars "should be granted whenever an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise.") (citations omitted).

A bill of particulars is particularly appropriate and necessary when charges are

complicated, such as in fraud indictments like this one. *See United States v. Vaid*, No. 16-CR-763 (LGS), 2017 WL 3891695, at *11 (S.D.N.Y. Sept. 5, 2017) (bill of particulars required in fraud cases detailing the "transactions [the Government] intends to prove are fraudulent if this information is not ascertainable; otherwise, in effect, the burden of proof impermissibly [may] shift[] to the defendant to prove the documents or transactions are not fraudulent") (quotation marks and citation omitted); *United States v. Hawit*, No. 15-CR-252, 2017 WL 663542, at *11 (E.D.N.Y. Feb. 17, 2017) (requiring the Government to file a bill of particulars "specifying the transactions . . . that the Government will seek to prove were tainted by an unlawful conspiracy" as "[w]ithout a detailed list of those allegedly tainted transactions, [the defendant] and his counsel will be . . . accused of having committed unlawful acts in connection with a category of transactions, but without being given notice of which specific transactions falling within that category are alleged to have been tainted by unlawful conduct.").

Further, while the Government may cure deficiencies in the indictment by providing additional information in discovery, this is only satisfactory when a limited set of documents is produced. *See, e.g.*, *United States v. Lacerda*, No. 12-CR-303 NLH/AMD, 2013 WL 3146835, at *14 (D.N.J. June 19, 2013) ("disclosure by the government of mountains of documents is not an adequate substitute for a bill of particulars when the government's disclosure does not provide guidance regarding what it seeks to prove at trial.") (quotation marks and citations omitted); *United States v. Upton*, 856 F. Supp. 727, 753 (E.D.N.Y. 1994) (Government must specifically identify allegedly falsified documents "buried in thousands of documents already produced"). Courts routinely grant requests for a bill of particulars when the Government provides "mountains of documents to defense counsel who [are] left unguided as to which documents are relevant to the

charged conduct." *United States v. Kahale*, 789 F. Supp. 2d 359, 371 (E.D.N.Y. 2009) (quoting *Bortnovsky*, 820 F.2d at 575) (quotation marks omitted).

When a defendant is unable to glean from the discovery how the government will prove an element of the charged offense, courts have granted requests for particulars about Rule 16 discovery that the government already produced. *See United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989) (particulars motion erroneously denied where discovery failed to clarify an element of the charged offense); *United States v. Shteyman*, No. 10-CR-347 (SJ), 2011 WL 2006291, at *4-5 (E.D.N.Y. May 23, 2011) (granting, in part, defendant's request for "particulars on the Rule 16 discovery the Government has already provided").

That is precisely the situation here. The government has produced more than 150,000 pages of documents, and many thousands of pages of communications with or about the apparent alleged investors, including a swathe of documents that could potentially constitute the financial instruments that the grand jury charged in the Indictment. But the disparate universe of such documents obfuscates, rather than clarifies, what are the particular securities charged in the Indictment. Even after a review of the discovery, Mr. Weinstein is unable to identify what are the securities charged, requiring further clarity from the government. *See United States v. Connolly*, No. S1 16-CR-00370 (CM), 2017 WL 2537808 (S.D.N.Y. May 24, 2017) (ordering that "[t]he Government . . . needs to particularize the crimes charged by identifying to the defense a finite universe of trades" involved in the alleged fraud charged as "it is simply unrealistic to think that giving defendants the underlying data. . . without identifying a limited subset of transactions on which the Government intends to rely, is sufficiently precise to allow defendants to prepare a

defense and to avoid unfair surprise at trial");[3] *United States v. Stocker*, No. CRIM. A. 89-00463-01, 1990 WL 157153, at *1 (E.D. Pa. Oct. 10, 1990) (granting bill of particulars where "disclosure by the government of mountains of documents is not an adequate substitute for a bill of particulars when the disclosure does not provide guidance regarding what the government would prove at trial.") (quotation marks omitted).

Without a bill of particulars, Mr. Weinstein is simply unable to understand the securities fraud charges against him, and thus unable to prepare a complete defense to the Indictment. The Court should not permit the government to hide behind vague allegations and mountains of opaque discovery, and hamper Mr. Weinstein's defense in the process. The Court should order the government to file a bill of particulars identifying the financial instruments charged as securities in Counts One and Two.

## III.     THE OBSTRUCTION OF JUSTICE CHARGED IN COUNT SEVEN IS FATALLY FLAWED: THE COURT SHOULD DISMISS THE CHARGE OR ALTERNATIVELY SEVER IT FROM THE INDICTMENT'S REMAINING COUNTS

The obstruction of justice charged in Count Seven is rooted in Mr. Weinstein's prior convictions from 2013 and 2014. While the Indictment's remaining charges, centered on investor fraud, are based on allegations dating nearly a decade later from 2021 through 2023. Although the prior convictions are functionally irrelevant to the bulk of the Indictment, they are nonetheless a focal point—plainly the government wants to utilize Mr. Weinstein's past to frame its view of his present.

---

[3] The convictions in *Connolly* were vacated on other grounds, that did not touch upon the district court's discovery holdings. Rather, the Second Circuit reversed the wire fraud and bank fraud convictions, as "the evidence was insufficient to show that the [defendant's] . . . statements that they induced were false." *United States v. Connolly*, 24 F.4th 821, 824 (2d Cir. 2022). In the absence of any false statement, the Second Circuit held that the bank fraud and wire fraud convictions could not stand.

But there is a problem with the government's efforts. The obstruction statute charged requires the pendency of a "judicial proceeding," but there was none during the timeframe of the Indictment. All that bound Mr. Weinstein was a supervised release order. That alone cannot form the basis of obstruction of justice per the statute charged. Count Seven should thus be dismissed.

Alternatively, should the Court decline to dismiss the obstruction charge at this stage, the Court should sever the trial on Count Seven from the fraud charges in Counts One through Six. That is the only means of ensuring Mr. Weinstein receives a fair trial. Informing the jury of Mr. Weinstein's prior fraud convictions will invariably, irreparably, and improperly color their opinion of him. How could a jury preserve Mr. Weinstein's presumption of innocence, and fairly evaluate whether there is proof beyond a reasonable doubt on the instant investor fraud charges if they are told that Mr. Weinstein was previously convicted of similar investor frauds? Of course, no jury could. Simply placing Mr. Weinstein's criminal history before the jury would render an acquittal all but impossible—no matter the strength or weakness of the government's evidence on the instant fraud charges.

Under our criminal justice system, Mr. Weinstein should be tried based on what the evidence shows he did here; not who he is or what he has done previously. Permitting the government to tarnish Mr. Weinstein before the jury, even before they can evaluate the evidence of the alleged investor fraud at the heart of this Indictment would be contrary to those foundational principles. To prevent such insurmountable prejudice, and protect Mr. Weinstein's fair trial rights, the Court should sever Count Seven from the Indictment's remaining charges.

### A.   The Indictment's Obstruction Charge is Rooted in Mr. Weinstein's Prior Convictions; the Other Six Counts Are Wholly Unrelated to Mr. Weinstein's Criminal History

Count Seven charges Mr. Weinstein with a conspiracy under 18 U.S.C. § 371 to obstruct justice in violation of 18 U.S.C. § 1503. Specifically, the Indictment charges that during Mr.

Weinstein's three year period of supervised release stemming from his two prior 2013 and 2014 fraud convictions, Mr. Weinstein was prohibited from: "(a) liquidating assets, except in service of paying restitution, and (b) playing a role, directly or indirectly, in soliciting money from investors." Indict., Count 7, at 22 ¶ 2(a).  Count Seven charges that Mr. Weinstein engaged in: "(a) hiding WEINSTEIN's unsanctioned business activities, and (b) hiding and diverting funds and assets that should have gone towards restitution," all allegedly in violation of his supervised release terms. Indict., Count 7, at 23 ¶ 2(d).

Notably, the Indictment neither charges that a violation of supervised release proceeding was ever instituted, nor has Mr. Weinstein received notice that such a proceeding is pending.  His period of supervised release ended on January 21, 2024.  All the allegations and evidence confirm that Mr. Weinstein was never charged with a violation of supervised release.

Unlike Count Seven, the bulk of the Indictment's charges—the six other counts—relate to allegations of investor fraud wholly separate from his 2013 and 2014 convictions.  Instead, the Indictment charges securities fraud and wire fraud charges in Counts One through Six stemming from alleged conduct between 2021 and 2023, nearly a decade after his prior convictions.  Indict., Counts 1-6.

Nonetheless, in reciting the obstruction charge, the Indictment devotes several pages to a detailed recitation of the charges and sentences in Mr. Weinstein's prior cases, most of which is largely extraneous to the obstruction charge in Count Seven, and immaterial to the Indictment's six fraud counts.  Indict., Count 1, at 3 ¶ 1.

**B.    The Obstruction Charge Does Not Satisfy the Statute's Basic Elements, It Should Be Dismissed**

**1.    *Legal Standard: Motion to Dismiss Under Rule 12***

Federal Rule of Criminal Procedure 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the issue." Fed. R. Crim. P. 12(b); *see also United States v. Covington*, 395 U.S. 57, 60–61 (1969) (holding that where determinative questions of law were decided in his favor, defendant was entitled to dismissal of indictment).

Because federal crimes are "solely creatures of statute," *Dowling v. United States*, 473 U.S. 207, 213 (1985) (quotations omitted), "a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute." *United States v. Aleynikov*, 676 F.3d 71, 75–76 (2d Cir. 2012); *accord United States v. Parlavecchio*, 903 F. Supp. 788, 792–93 (D.N.J. 1995) (dismissing count of the indictment based on bribery allegations where "[d]efendants' alleged conduct simply does not fit" the elements of criminal bribery "even assuming all the government's allegations to be true").

Where, as here, the government has set out detailed factual allegations in the Indictment, the Court must dismiss the Indictment if those allegations, taken as if true, do not establish criminal liability. *See, e.g., Aleynikov*, 676 F.3d at 76–79 (dismissing indictment as transferring proprietary computer source code alleged in indictment, did not constitute offense under National Stolen Property Act); *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) (dismissing tax fraud and perjury counts because conduct alleged in indictment did not violate applicable statute); *United States v. Manzo*, 851 F. Supp. 2d 797, 811 (D.N.J. 2012) (dismissing indictment for failing to set out facts satisfying elements of charged crime: "while the conduct alleged in the Indictment is reprehensible," it did not meet the "statutory definitions of bribery"); *Heicklen*, 858 F. Supp. 2d at

275-76 (dismissing indictment where facts alleged did not constitute the crime of attempting to influence the actions of a juror); *United States v. Kerik*, 615 F. Supp. 2d 256, 271-74 (S.D.N.Y. 2009) (dismissing false statement charge because defendant's alleged failure to disclose information in response to a question that the court determined was "fundamentally ambiguous" was not a crime as a matter of law).

### 2.    The Obstruction Charge Should be Dismissed: It Does Not Satisfy the Statute's Basic Elements

The obstruction statute charged in Count Seven criminalizes actions that "corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice."  18 U.S.C. § 1503.

"[T]he pendency of some sort of ***judicial proceeding*** . . . is a ***necessary prerequisite*** for a conviction for violation of 18 U.S.C. § 1503."  *United States v. Nelson*, 852 F.2d 706, 709 (3d Cir. 1988) (emphasis added); *accord United States v. Cohen*, 301 F.3d 152, 157 (3d Cir. 2002) (vacating obstruction conviction for failing to prove the elements of a § 1503 offense, including "that a judicial proceeding was pending") (quotation marks, citations and modifications omitted). Not all governmental actions constitute a "judicial proceeding" per § 1503.  *See, e.g., United States v. Simmons*, 591 F.2d 206, 208 (3d Cir. 1979) ("the obstruction of an investigation that is being conducted by the FBI, or by any similar governmental agency or instrumentality, does not constitute a § 1503 violation because such agencies or instrumentalities are not judicial arms of the government 'administering justice.'").

The Indictment's sole obstruction allegations relate to alleged violations of Mr. Weinstein's conditions of supervised release.  *See, e.g.,* Indict., Count 7, at 24 ¶ 5(a) (alleging conduct undertaken "knowing that it violated his terms of supervision"); ¶ 5(b) (alleging actions

16

that "explicitly violated the terms of his supervised release" and "obstructed WEINSTEIN's Probation officer's ability to supervise him"); ¶ 5(d) (alleging conduct designed to "thwart the efforts of both the Court and the United States Attorney to collect restitution" during his period of supervised release). No supervised release violation proceeding was ever instituted, however. In other words, the Indictment only charges alleged violations of Mr. Weinstein's terms of supervision, without any enforcement of violation proceeding, as the basis for the obstruction of justice charged in Count Seven.

That is a fatal flaw in the Indictment. Allegations of violations of supervised release are not encompassed by the obstruction statute; supervised release is not a "judicial proceeding" constituting "administration of justice" under § 1503. The Third Circuit has stated clearly that "probation supervised by court-appointed officers," analogous to supervised release, "does not constitute a pending proceeding," a prerequisite for a § 1503 charge. *United States v. Davis*, 183 F.3d 231, 239 (3d Cir. 1999); *accord Haili v. United States*, 260 F.2d 744, 744, 46 (9th Cir. 1958) (vacating § 1503 conviction charging that the defendant "corruptly obstructed and impeded the due administration of justice with respect to the terms and conditions of . . . probation" as "neither the language of § 1503 nor the history of its interpretation by the courts support the conviction").[4]

---

[4] The Supreme Court's decision in *Fischer v. United States*, No. 23-5572, Slip. Op., 603 U.S. __ (2024), decided earlier today only reinforces Mr. Weinstein's argument that the obstruction count should be dismissed. *Fischer* employed a "narrow interpretation" of a similar obstruction statute, 18 U.S.C. § 1512, consistent with the high court's "usual approach in obstruction cases has been to resist reading particular sub-provisions to create a coverall statute." *Id.* at *11, *15 (quotation marks and citations deleted). The Supreme Court emphasized the overwhelming import of ensuring that the federal obstruction statutes are not used to criminalize conduct not clearly included in the statutory text—the Supreme Court resisted "transforming" a "focused statute into a one-size-fits-all solution to obstruction of justice." *Id.* at *15; *accord, id.* at *14 (rejecting a broad reading of § 1512 that "would criminalize a broad swath of prosaic conduct").

That deficient allegation is all the Indictment charges here. Apparently, the government chose not to charge Mr. Weinstein in a violation of supervised release, opting instead to bring a more serious obstruction charge, and taint this Indictment with the facts of Mr. Weinstein's prior cases.[5] In the absence of a violation proceeding, though, no "judicial proceeding" was pending during the timeframe of the charges. By definition, Mr. Weinstein could not have obstructed justice under § 1503.

Putting aside Mr. Weinstein's factual challenges to the Indictment's allegations—his comprehensive factual defenses demonstrating his innocence are for the jury—the Indictment's allegations simply do not make out the legal requirements for § 1503 obstruction of justice. Count Seven should be dismissed accordingly.

### C. In the Alternative, The Court Should Sever the Obstruction Charged in Count Seven from the Indictment's Fraud Charges in Counts One through Six

#### 1. *Third Circuit Case Law Recognizes the Severe Prejudice Inherent in Introducing Mr. Weinstein's Prior Convictions*

Federal Rule of Criminal Procedure 14(a) provides that "[i]f the joinder of offenses . . . appears to prejudice a defendant or the government, the court may order separate trials of counts." Fed. R. Crim. P. 14(a).

The Third Circuit has long recognized the inherent, and overwhelming prejudice faced by a defendant whose prior convictions are admitted at a trial. For decades, case law has been clear that severance of counts under Rule 14(a) is particularly appropriate to prevent defendants from suffering such stigma in the eyes of the jury. Thus, when defendants are "charged with multiple

---

[5] Because Mr. Weinstein's term of supervised release ended on January 21, 2024, no new violation of supervised release can be charged, even for conduct during the term of supervised release. The supervised release statute expressly requires that "before . . . expiration," of the term of supervised release, "a warrant or summons has been issued on the basis of an allegation of such a violation." 18 U.S.C. § 3583(i).

offenses, including one requiring proof of a prior felony conviction, the trial judge should sever the latter offense unless the conviction would be independently admissible with respect to the other charges." *United States v. Jacobs*, 44 F.3d 1219, 1221 (3d Cir. 1995) (citations omitted); *accord United States v. Busic*, 587 F.2d 577, 584-85 (3d Cir. 1978), *rev'd on other grounds*, 446 U.S. 398 (1980) ("we think that in ruling on a pre-trial motion to sever the district court should determine whether evidence of the prior convictions would be independently admissible on the other counts. If it is determined that the convictions would not be admissible on the other counts that were these counts to be tried alone the jury would not hear this evidence then severance should be granted."); *accord United States v. Coleman*, 451 F.3d 154, 156 (3d Cir. 2006) (motion to sever felony firearms counts from remaining counts unrelated to prior conviction was granted); *United States v. Frazier*, 469 F.3d 85, 87 (3d Cir. 2006) ("On September 10, 2002, a grand jury returned a two-count indictment charging Frazier with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and possession with the intent to distribute five or more grams of crack cocaine, in violation of 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). The District Court granted Frazier's motion to sever the two counts").

The obstruction charged in Count Seven embodies precisely the concerns contemplated by the Third Circuit's decisions. Count Seven requires informing the jury of Mr. Weinstein's prior felony convictions, as they hinge on alleged obstruction of the terms of Mr. Weinstein's supervised release following his 2013 and 2014 convictions. *See* Indict., Count Seven, at 22-23 ¶ 2.

The securities fraud and wire fraud charges in Counts One through Six, however, all relate solely to allegations of a separate fraud that allegedly occurred between 2021 and 2023. Nothing in the fraud charges relates to Mr. Weinstein's prior convictions. Severance of Count Seven is thus warranted. *See, e.g., United States v. Grasso*, No. 00-CR-051, 2002 WL 35644827, at *1

(E.D. Pa. Feb. 7, 2002) (severing obstruction counts from the indictment's remaining tax fraud counts, explaining "[i]f the government chooses to join such counts, it must be prepared to justify the joinder to the trial judge by showing that the evidence would be admissible even absent joinder . . . . The Government has not met its burden of showing that the evidence supporting Count 13 [the obstruction count] would be independently admissible absent joinder.") (quotation marks, citations, and modifications omitted).

The prejudice to Mr. Weinstein envisioned in Rule 14(a) to justify severance is also manifest.  Mr. Weinstein's prior convictions would plainly taint him as a felon and a fraud perpetrator in the eyes of the jury; it would be impossible for him to get a fair trial on the Indictment's fraud charges in Counts One through Six.  That only further supports severance.  *See, e.g., United States v. Caldwell*, 760 F.3d 267, 275-76 (3d Cir. 2014) ("courts and commentators came to appreciate the uniquely prejudicial impact that prior bad act evidence has on a jury;" "under our system of justice, an accused is tried for what he did, not who he is," and "prior offense evidence is generally more prejudicial than probative"); *United States v. Sampson*, 980 F.2d 883, 886 (3d Cir. 1992) (vacating conviction based on improper introduction of defendant's prior conviction, as the prior conviction evidence "'is said to weigh too much with the jury and to so overpersuade them as to prejudice one with a bad general record and deny him a fair opportunity to defend against a particular charge.'") (quoting *Michelson v. United States*, 335 U.S. 469, 475–76 (1948)); *United States v. Gillard*, No. 23-CR-00026, 2024 WL 247054, at *7 (E.D. Pa. Jan. 23, 2024) ("[P]rior convictions for the same or similar crimes are admitted sparingly.") (quoting *Weinstein's Federal Evidence* § 609.05[3][d]), and ("[T]he danger of unfair prejudice is enhanced if the witness is the accused and the crime was similar to the crime now charged, since this increases the risk that the jury will draw an impermissible inference under Rule 404(a).") (quoting

Wright & Gold, *Federal Practice and Procedure* § 6134, at 253).

The structure of the Indictment's very factual allegations only highlight the immense prejudice to Mr. Weinstein were the jury to consider the obstruction charge along with the charges regarding the alleged 2021-2023 investor fraud. Although the obstruction charge is but one of the Indictment's seven counts—indeed, it is the last count, charged as Count Seven—the Indictment begins with a more than three-page recitation of Mr. Weinstein's criminal history, irrelevant to the investor frauds charged in Counts One through Six. In the Indictment's telling, Mr. Weinstein's criminal history, although nearly a decade old, frames the entirety of the fraud charges comprising the bulk of the Indictment. *See, e.g.,* Indict., Introduction, at 1-2 ¶¶ 1-2; Count 1, at 3-4 ¶¶ 1(a)-(b).

Mr. Weinstein is entitled to a fair trial, before an unbiased jury that can evaluate the evidence related to the investor fraud charges in Counts One through Six alone. The Indictment makes clear that is impossible if the jury is informed of Mr. Weinstein's prior fraud convictions. As in the Indictment, there is a palpable risk that admitting Mr. Weinstein's prior fraud convictions would infect the actual evidence of the primary fraud charges before the jury at trial. That is impermissible.

Decades of Third Circuit case law thus support severing the obstruction of justice charged in Count Seven from the remaining fraud counts. *See, e.g., Coleman*, 451 F.3d at 156 (indictment severed, and counts unrelated to prior conviction tried separately); *Frazier*, 469 F.3d at 87 (severing felon in possession charge from charges unrelated to the defendant's prior felony conviction); *Grasso*, No. 00-CR-051, 2002 WL 35644827, at *1 (E.D. Pa. Feb. 7, 2002) (severing obstruction charge); *United States v. Edwards*, 700 F. Supp. 837, 838 (W.D. Pa. 1988) (severing

felon in possession charge from remaining counts).   The Court should sever Count Seven accordingly.

### 2.   *Mr. Weinstein's Prior Convictions Are Inadmissible as to the Fraud Charges in Counts One through Six Alone*

#### i.   <u>*As to Counts One through Six, Mr. Weinstein's Criminal History is Purely Propensity Evidence, Inadmissible Under Rule 404(b)*</u>

Nor can the government meet its burden to demonstrate that evidence of Mr. Weinstein's prior convictions would be admissible at a trial addressing solely the investor fraud charges in Counts One through Six.  *See Jacobs*, 44 F.3d at 1221 ("if a defendant is charged with multiple offenses, including one requiring proof of a prior felony conviction, the trial judge should sever the latter offense unless the conviction would be independently admissible with respect to the other charges") (citations omitted); *Busic*, 587 F.2d at 585 ("in ruling on a pre-trial motion to sever the district court should determine whether evidence of the prior convictions would be independently admissible on the other counts. If it is determined that the convictions would not be admissible on the other counts that were these counts to be tried alone the jury would not hear this evidence then severance should be granted."); *Edwards*, 700 F. Supp. at 838 ("severance is appropriate in the present case since the government failed to provide any indication that the evidence of Edwards' prior felony conviction would be admissible for some purpose in relation to" other counts).

Federal Rule of Evidence 404(b) broadly proscribes introduction of evidence of prior crimes and convictions, with limited exceptions.  *See* Fed. R. Evid. 404(b) (permitting introduction of "[e]vidence of any other crime, wrong, or act" for limited purposes, not for propensity, but to "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").

The exceptions permitting introductions of prior crimes should be used sparingly.  "Rule 404(b) must be applied with careful precision," it is "a rule of general exclusion, and carries with

it no presumption of admissibility." *United States v. Caldwell*, 760 F.3d 267, 274-76 (3d Cir. 2014) (vacating conviction based on improper introduction of the defendant's prior conviction through Rule 404(b)). Instead, Rule 404(b) "reflects the revered and longstanding policy that, under our system of justice, an accused is tried for ***what he did, not who he is***. And in recognition that prior offense evidence is generally more prejudicial than probative, Rule 404(b) directs that evidence of prior bad acts be excluded." *Id.* at 276 (emphasis added). Thus, "[t]he 'permitted uses' of prior act evidence set forth in Rule 404(b)(2) are treated like exceptions to this rule of exclusion. As is generally the case with exceptions, the party seeking to admit evidence under Rule 404(b)(2) bears the burden of demonstrating its applicability." *Id.*

To ensure only limited evidence is introduced for proper purposes under 404(b), the Supreme Court articulated a four-part test, which the Third Circuit has summarized as:

> (1) the evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the court must charge the jury to consider the evidence only for the limited purpose for which it is admitted

*United States v. Sampson*, 980 F.2d 883, 886 (3d Cir. 1992) (citing *Huddleston v. United States*, 485 U.S. 681, 691–92 (1988)).

The government could not satisfy that exacting text to permit admission of Mr. Weinstein's prior convictions as to the fraud charges in Counts One through Six, further warranting severance of the obstruction charge in Count Seven based on Mr. Weinstein's prior convictions. Even without speculating what (if any) purported non-propensity purpose the government could proffer under the first *Huddleston* factor, it is clear that merely reciting a non-propensity purpose is insufficient. *Caldwell*, 760 F.3d at 276 ("The task is not merely to find a pigeonhole in which the proof might fit, but to actually demonstrate that the evidence proves something other than propensity.") (quotation marks, citations, and modifications omitted). To satisfy both the first

23

*Huddleston* factor, and the second relevance factor, the Third Circuit has been "emphatic" that the government "and the trial judge [must] articulate, with precision, a chain of inferences that does not contain a propensity link." *Id.* at 277. Because Mr. Weinstein's prior convictions relate to conduct nearly a decade earlier, wholly unrelated transactions, and an entirely separate cast of characters, they plainly bear no permissible, non-propensity, relevance to the present fraud charges.

What's more, under the third *Huddleston* factor, admission of Mr. Weinstein's prior convictions would easily run afoul of Federal Rule of Evidence 403, which provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Any asserted relevance of the prior convictions would be vastly outweighed by the glaring prejudice to Mr. Weinstein's right to a fair trial on the fraud counts if his prior convictions were introduced at trial. *See Caldwell*, 760 F.3d at 277 (third *Huddleston* factor "requires great care on the part of the district court, because few categories of evidence bring greater risk of prejudice to the accused under Rule 403" than prior bad acts) (quotation marks and citations omitted); *United States v. Handy*, No. 4:17-CR-00310, 2018 WL 2734846, at *4 (M.D. Pa. June 7, 2018) (bifurcating counts requiring admission of prior conviction: "[f]inding the probative value of this prior conviction is limited, I conclude that this value is substantially outweighed by the danger of unfair prejudice," and thus finding it independently inadmissible under FRE 404(b)); *United States v. Vastola*, 670 F. Supp. 1244, 1263 (D.N.J. 1987) ("The court is concerned about the prejudicial effect of a trial that includes firearms charges which require proof of previous felony convictions. . . . **The court finds that presenting evidence or even the mere fact of a prior felony conviction**

24

*to a jury would be prejudicial*.") (emphasis added).

Indeed, the similarity of Mr. Weinstein's prior convictions to the Indictment's charges—all uniformly related to investor fraud—only heightens the profound prejudice to Mr. Weinstein were they presented to the jury. Courts have recognized that "[t]he potential for prejudice . . . is greatly enhanced where, as here, the prior offense is similar to the one for which the defendant is on trial." *United States v. Puco*, 453 F.2d 539, 542 (2d Cir. 1971); *see also United States v. Newton*, No. 01-CR-635(CSH), 2002 WL 230964, at *3 (S.D.N.Y. Feb. 14, 2002) (excluding uncharged "similar fraudulent acts" in fraudulent visa case, as "while the activity was similar, these were separate visa referrals"); *United States v. Colon*, 880 F.2d 650, 656 (2d Cir. 1989) (reversing conviction based on admission of other bad acts evidence, emphasizing "district courts must exercise great care to ensure that juries are not permitted to conclude that because a defendant has committed a similar crime before, he or she therefore has a criminal propensity sufficient to justify conviction in the case at hand.").

### ii.    *Introduction of Mr. Weinstein's Criminal History Would Require a Mini-Trial on the Circumstances of His Convictions and Sentences*

Moreover, introducing Mr. Weinstein's prior convictions would risk undue delay and a distracting mini-trial on his prior cases. Should the government introduce Mr. Weinstein's prior convictions, he will have no choice but to seek to introduce contextualizing evidence of the circumstances leading to those convictions and sentences. The evidence of the conduct of the proceedings that prompted Mr. Weinstein's pleas is well documented.

Indeed, Mr. Weinstein's Petition for *Habeas Corpus* lays out clearly the circumstances that ultimately led to Mr. Weinstein's first plea. *See Weinstein v. United States*, No. 18-cv-05575 (AET), ECF Doc. 1, at 103 (D.N.J. Apr. 5, 2018) (describing "the impact of Judge Pisano's intervention in plea discussions. Judge Pisano repeatedly violated Rule 11(c)(1)'s bright line rule

against judicial involvement in plea negotiations, by indicating his preference for a guilty plea, by inserting himself in discussions between defense counsel and U.S. Attorney's Office, by offering to help the parties reach an agreement, and finally by giving Mr. Weinstein an assurance, [*ex parte* through Mr. Weinstein's attorney] about imposing a lenient sentence following a guilty plea."); *id.* at 105 (during an *ex parte* telephone call, "Judge Pisano [as he] had done before . . . indicated his strong preference for a plea deal, telling [Mr. Weinstein's then-counsel] that he was 'glad' that Mr. Weinstein was considering a possible guilty plea"); *id.* at 106 ("During the *ex parte* telephone call . . . Judge Pisano assured [Mr. Weinstein's then-counsel] that, if Mr. Weinstein were to pled guilty, Judge Pisano would 'remember' the U.S. Attorney's Office had, less than two months earlier, made a 5t o-10-year plea offer and, consistent with that offer, sentence Mr. Weinstein to a prison term between 5 and 10 years. Judge Pisano also warned, however, if Mr. Weinstein were to insist on going to trial, 'all doors would be closed,' meaning that Judge Pisano would give no consideration to restitution or remorse and would impose a harsh sentence."); *id.* at 109 ("Mr. Weinstein would not accept any plea offer that would result in a sentence of 10 or more years in prison. . . . If Mr. Weinstein would not accept a plea deal that would result in a 10-year sentence, why would he accept a plea deal that could result in a 25-year sentence? The reason is simple: based on . . . Judge Pisano's assurance that he would 'remember' the 5-to-10-year plea offer, Mr. Weinstein accepted the 0-to-25-year offer").

Mr. Weinstein's efforts to withdraw his plea to the first indictment eventually resulted in his second plea and combined 24-year sentence, as described in his *Habeas Corpus* Petition.  *See id.* at 111 ("Judge Pisano made little effort to hide his personal animus toward Mr. Weinstein. Judge Pisano repeatedly made inappropriate derogatory remarks on the record about Mr. Weinstein's legal strategy and moral character. He also made improper derogatory remarks off the

record to one of Mr. Weinstein's lawyers and even tried to dissuade her from representing Mr. Weinstein, a flagrant attempt to interfere with Mr. Weinstein's Sixth Amendment rights. He . . . took personal offense when defense counsel alleged that he had violated Fed. R. Crim. P. 11. Finally, he included objectively baseless language in the judgments characterizing Mr. Weinstein as a 'flight risk' and vindictively recommended that the BOP incarcerate Mr. Weinstein far from his family and religious community."); *id.* at 113 (Judge Pisano attempted to dissuade Mr. Weinstein's prior counsel from continuing to represent him: "[h]e said words to the effect, 'I don't think you know what you are getting into with this guy . . . he is not a good guy.'") (citations omitted).

These unfortunate events are an indelible part of Mr. Weinstein's history with the criminal justice system.  But this trial should not be about Mr. Weinstein's past.  The only allegations pertinent to the fraud charges in Counts One through Six surround his conduct between 2021 and 2023.  Permitting the government to introduce his years' old convictions would only open the door to a mini-trial focused on Mr. Weinstein's past litigation in criminal court.  That could "result in jury confusion, waste of time, and undue delay," contrary to the dictates in Rule 403.  *United States v. Jones*, No. CR 16-516 (KM), 2017 WL 1591855, at *5 (D.N.J. May 1, 2017) (the court insisted: "I am determined that we shall try this case, not some other one," and excluded testimony related to convictions in other cases: "The guilt or innocence of Sacco and Vanzetti has no bearing on the guilt or innocence of Mr. Jones, which will depend on the quality of evidence introduced in this trial. That minimal probativeness is substantially outweighed by the prejudicial emotional impact of a wrongful conviction. ***Nor do I wish to open the door to the government's responding by instituting a collateral mini-trial*** on whether the allegedly wrongful extrinsic convictions were in fact wrongful.") (emphasis added); *In re Paoli R.R. Yard Litig.*, 35 F.3d 717, 783 (3d Cir. 1994)

27

(affirming exclusion of "minimal[ly] relevan[t]" evidence because that evidence "would create the need to have mini-trials" and "would cause 'undue delay' given the minimal relevance of the evidence").

To avoid the obvious and severe prejudice that Mr. Weinstein would suffer if the jury—tasked with adjudicating his guilt or innocence on the Indictment's fraud charges—learned of his prior fraud convictions, the Court should sever Count Seven. That is the only means of ensuring that Mr. Weinstein's fate is judged by an unbiased jury that can fairly evaluate the evidence of the pending charges.

IV.    **_BRADY_ AND ITS PROGENY REQUIRE SPECIFIC, COMPLETE AND TIMELY DISCLOSURES: THE COURT SHOULD ORDER THE GOVERNMENT TO SUPPLEMENT ITS DISCLOSURES PER _BRADY_**

*Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny impose a due process obligation on the government to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *United States v. Rodriguez*, 496 F.3d 221, 225 (2d Cir. 2007) (internal quotation marks omitted). Such information includes evidence that may directly, or indirectly, rebut the prosecution's case "to assist the defense in making its case." *United States v. Bagley*, 473 U.S. 667, 675 & n.6 (1985). The government's obligation to disclose information extends to exculpatory materials, even those that also contain portions that are consistent with the government's theory. *See United States v. Mahaffy,* 693 F.3d 113, 130-33 (2d Cir. 2012); *United States v. Rivas*, 377 F.3d 195, 199-200 (2d Cir. 2004). To establish that information is material, a defendant need not show that the evidence would necessarily result in an acquittal. *See Kyles v. Whitley*, 514 U.S. 419, 435 (1995). To date the government has not identified a single piece of *Brady* material.

28

### A.      The Government has Ignored Mr. Weinstein's Specific *Brady* Demands, Although *Brady* Requires Timely Disclosures

On May 16, 2024, Mr. Weinstein sent the government a *Brady* demand letter, broadly focusing on: (1) statements made by government witnesses and cooperators regarding Mr. Weinstein's good faith, and (2) evidence of successful transactions similar to those charged in the Indictment. *See* Ex. A. Of course, any such evidence would be powerfully exculpatory of Mr. Weinstein. And, Mr. Weinstein has a good faith basis to believe that such materials exist both in the form of witness statements and other documentary evidence, as requested. But the government has yet to respond to Mr. Weinstein's *Brady* request in any manner, leaving Mr. Weinstein in the dark regarding the government's possession of the requested materials, or their location. That is anathema to *Brady*.

Nor has the government abided by its proposed *Brady* deadline. On June 3, 2024, the parties submitted a joint proposed scheduling order that included a deadline of June 14, 2024 for the government to produce *Brady* material. That deadline lapsed without the government's production or identification of any *Brady* material.

With trial quicky approaching on November 12, 2024, immediate disclosure of *Brady* information is imperative to preserve Mr. Weinstein's right to a fair trial. *Brady* requires not merely disclosure of exculpatory information, but ***timely disclosure*** sufficiently in advance of trial to "give[ ] the defendant a reasonable opportunity either to use the evidence in the trial, or *to use the information to obtain evidence for use in the trial.*" *Rodriguez*, 496 F.3d at 226 (emphasis added); *see also DiSimone v. Phillips*, 461 F.3d 181, 197 (2d Cir. 2006) ("The more a piece of evidence is valuable and rich with potential leads, the less likely it will be that late disclosure

provides the defense an opportunity for use") (internal quotation marks omitted).[6]    The government's silence in the face of the Court's *Brady* deadlines, and Mr. Weinstein's detailed requests risks Mr. Weinstein's constitutionally guaranteed trial rights.

**B.    Mr. Weinstein Should Not Have to Resort to Finding a *Brady* Needle in the Haystack: The Government Cannot Rely on its Voluminous Discovery Disclosures *In Lieu* of Satisfying its *Brady* Obligation**

The government cannot avoid its disclosure obligations under *Brady* by simply defaulting to its voluminous Rule 16 productions.    The form of *Brady* "disclosures must be sufficiently specific and complete to be useful."  *Rodriguez,* 496 F.3d at 226.  The government cannot merely dump a mountain of materials on the defendant and *nowhere* identify the location of *Brady* material within this massive production.  The government "cannot hide *Brady* material as an exculpatory needle in a haystack of discovery materials." *United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013); *United States v. Hsia,* 24 F. Supp. 2d 14, 29 (D.D.C. 1998) ("The government cannot meet its *Brady* obligation by providing [the defendant] with access to 600,000 documents and then claiming that [the defendant] should have been able to find the exculpatory information in the haystack.").[7] Mr. Weinstein simply asks the government to identify *Brady* material ***already known to it*** based on its ***existing knowledge*** of the documents and evidence it collected and

---

[6] To the extent the government's information has not been memorialized in specific notes or FBI 302 reports, but includes topics identified in Mr. Weinstein's May 16 Letter, or any other exculpatory material, the government must still disclose this information.  *See Rodriguez*, 496 F.3d at 226 ("The obligation to disclose information covered by *Brady* and *Giglio* rules exists without regard to whether that information has been recorded in tangible form.").

[7] Nine years after Judge Friedman's decision in *Hsia*, he came to the disheartening conclusion that he could "no longer endorse the view" that the Court should not be a referee or supervisor of the government's determination of what constitutes *Brady* material after discovering that the government's view of *Brady* and the court's view were inconsistent for many years.  *See United States v. Naegele*, 468 F. Supp. 2d 150, 152 n.2 (D.D.C. 2007) (Friedman, J.).  Judge Friedman noted there that the Court "no longer accepts the conclusory assertions by [DOJ] that it 'understands' and 'will comply' or 'has complied' with them." *Id.*

reviewed in the first instance. The government cannot merely turn to its voluminous discovery production and claim that it has fulfilled this responsibility.

That is consistent with the *Brady* disclosures courts have mandated throughout the country. In *United States v. Blankenship*, No. 5:14-CR-00244, 2015 WL 3687864, *3 (S.D. W. Va. June 12, 2015), for example, the defendant sought an order compelling the government to identify in its discovery production, *inter alia,* all *Brady* material. The defendant argued that the government was "hiding" exculpatory material in "four million pages of discovery," and that the "unorganized production" resulted in prejudice because the defendant would not have time to review the massive production before trial. *Id.* The government responded that: (1) *Brady* does not "require the [government] to do the job traditionally performed by defense counsel," (2) the government fulfilled its *Brady* obligations by providing the defense with a "searchable, indexed, digital database of documents," and (3) the database was "capable of electronic search and [was] rich with metadata and indexed by a variety of different characteristics that allow[ed] Defendant to search, sort and categorize them however he please[d]." *Id.* at *4 (citations and internal quotations omitted). The court disagreed.

The court in *Blankenship* found that "the [government] should specifically designate any known *Brady* material as such and disclose the same to defense counsel." *Id.* at *6. The court also found that "the [government] does not comply with the requirement of *Brady* by merely including all known *Brady* material within the four million plus pages of discovery." *Id.* The court observed that "the [government], having determined the nature of the charges and having knowledge of the evidence and witnesses it intends to produce to prove these charges, is in a far better position than the [d]efendant to know what evidence might be exculpatory and/or impeachment material under *Brady.*" *Id.* at *7; *accord United States v. Salyer*, No. CR S-10-

0062, 2010 WL 3036444, at *1, *3-4 (E.D. Cal. Aug. 2, 2010) (directing the government to identify specific *Brady/Giglio* material to the defendant where the government collected documentary information during a years-long investigation, and the government's massive production consisted of electronic information with multiple gigabytes, any professed burden on the government was of no moment: "[d]uring the course of the years long investigation . . . , the government personnel seemed to be able to segregate that evidence which would be useful in the prosecution in terms of guilt, but apparently made no efforts to segregate that evidence which runs counter to the charges."); *cf. United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009), *aff'd in part, vacated in part, remanded,* 561 U.S. 358 (2010) (government satisfied its disclosure obligation when it specified known exculpatory evidence within large electronic production and flagged documents it believed would be helpful or relevant to the defense).

The government's failure here to identify ***any*** *Brady* materials, or to direct Mr. Weinstein to those documents addressing deals undertaken or any indication of good faith, strongly suggests that the government has put no effort to fulfill its *Brady* obligations here. That is very serious and prejudicial to Mr. Weinstein where the government has had over a year to review hundreds of thousands of pages discovery, thousands of text messages, hundreds of consensual recordings, many hundred cellular telephone voice notes, and has the additional advantage of insight into multiple witnesses' testimony.

A massive discovery production without specific identification of the *Brady* material risks that such material will be ***functionally suppressed***. It threatens Mr. Weinstein's ability to mount a meaningful defense and undermines the considerations of fairness and due process that animated the *Brady* decision. That risk is particularly acute here, where the parties are not equally situated to discover *Brady* material. The government, "having determined the nature of the charges and

having knowledge of the evidence and witnesses . . . is in a far better position" to identify *Brady* material. *Blankenship,* 2015 WL 3687864, ay *7. That is especially true in this case, where the government—assisted by at least three federal prosecutors and several federal agents—has had the luxury of reviewing this material on a rolling basis over the course of lengthy investigation that pre-dated Mr. Weinstein's arrest nearly a year ago. Mr. Weinstein, on the other hand, is at a distinct disadvantage given the time constraints of post-indictment review, and his limited financial resources. These inequities further support Mr. Weinstein's requested relief. *See Salyer,* 2010 WL 3036444, at *7 (noting the case involved an individual defendant who was represented by "a relatively small defense team," in holding the government's "data dump" did not satisfy *Brady*).

### C. The Government Cannot Withhold *Brady* Simply Because it Deems the Information Unreliable

The government also cannot selectively withhold *Brady* information that is material and potentially exculpatory based on the government's assessment of the information's reliability. *See DiSimone v. Phillips*, 461 F.3d 181, 195 (2d Cir. 2006) ("[I]f there were questions about the reliability of the exculpatory information, it was the prerogative of the defendant and his counsel – and not that of the prosecution – to exercise judgment in determining whether the defendant should make use of it. . . . To allow otherwise would be to appoint the fox as henhouse guard."); *see also Kyles*, 514 U.S. at 440 (doubtful questions on extent and scope of material to be produced must be resolved in the defendant's favor "to preserve the criminal trial, as distinct from the prosecutor's private deliberations, as the chosen forum for ascertaining the truth about criminal accusations").

The Court should order the government to promptly supplement its disclosures to provide Mr. Weinstein with all *Brady* material—particularly, although not solely, the information he requested. A fulsome and timely disclosure is the only means for the government to comply with

its obligations under *Brady*, and protect Mr. Weinstein's trial rights as he prepares to defend his innocence and his very liberty.

## V.    CONCLUSION

Defendant Eliyahu Weinstein respectfully requests that this Court grant his motions and: (1) order the government to file a bill of particulars specifying the security charged in Counts One and Two; (2) dismiss Count Seven, charging obstruction of justice; (3) in the alternative, sever Count Seven from the Indictment's remaining counts; and (4) order the government to supplement its pretrial disclosures as required per *Brady v. Maryland*.

Dated:      June 28, 2024
            New York, New York

Respectfully submitted,

MEISTER SEELIG & FEIN PLLC

By:      _____/s/ Ilana Haramati_____
         Henry E. Mazurek
         Ilana Haramati

         *Attorneys for Defendant Eliyahu Weinstein*