**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ELIYAHU "ELI" WEINSTEIN & ARYEH "ARI" BROMBERG. | Criminal Action No. 24-128 (MAS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Eliyahu "Eli" Weinstein's ("Weinstein") omnibus motion (ECF No. 116) and Defendant Aryeh "Ari" Bromberg's ("Bromberg") (collectively "Defendants") motion for a bill of particulars (ECF No. 115). Bromberg joined Weinstein's omnibus motion. (*See id.*) The United States of America (the "Government") opposed (ECF No. 124), and Defendants replied (ECF Nos. 127, 142). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b), which is applicable to criminal cases under Local Criminal Rule 1.1. For the reasons set forth herein, Bromberg's motion for a bill of particulars is denied and Weinstein's omnibus motion is granted in part and denied in part.

I.   **BACKGROUND**

  A.   **The Indictment**

On February 20, 2024, Defendants were indicted in the District of New Jersey by a grand jury for the following Counts: (1) Conspiracy to Commit Securities Fraud, in violation of 18 U.S.C. § 371 (Count One); (2) Securities Fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff; Title 17, C.F.R. § 240.10b-5; and 18 U.S.C. § 2 (Count Two); (3) Conspiracy to Commit Wire Fraud, in

violation of 18 U.S.C. § 1349 (Count Three); (4) Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 2 (Counts Four through Six); and (5) Conspiracy to Obstruct Justice, in violation of 18 U.S.C. § 371 (Count Seven). (Indictment, ECF No. 85.)

In relevant part, the Indictment describes Optimus Investments, Inc. ("Optimus") as a New Jersey entity, formed in or around September 2021, that raised "millions of dollars from individual investors to finance the purported purchase and sale of medical supplies and other goods." (*Id.* at 4.) Bromberg is alleged to have been the co-owner of Optimus, while Weinstein is alleged to have been a silent partner. (*Id.*) The Indictment alleges that Defendants and their co-conspirators concealed Weinstein's identity and role in the purported investments, including his two prior convictions. (*Id.* at 2.) The Indictment provides that through such "material misrepresentations and omissions," Weinstein and his co-conspirators "defrauded dozens of investors of millions of dollars in investment funds." (*Id.*)

### B. The Instant Motions

#### 1. *Bromberg's Instant Motion*

On June 28, 2024, Bromberg filed a motion for a bill of particulars requiring the Government to: (1) "disclose whether it charges him with directly, or conspiring to directly, defraud investors other than [co-conspirators] [Christopher] Anderson and [Richard] Curry and to provide specifics about that alleged conduct if it does"; (2) "disclose whether the charges against him are based on alleged misrepresentations other than using Weinstein's alias and to provide specifics about those alleged misrepresentations if it does"; (3) "identify the pseudonymous companies in the Indictment";[1] (4) "identify the investor-victims"; (5) "identify the unnamed

---

[1] Bromberg and the Government agree that this request is moot, and therefore the Court does not consider the request below. (Gov't's Opp'n Br. 10; Bromberg's Reply 5.)

'others' and 'elsewhere' locations mentioned in the Indictment"; and (6) "provide greater detail about what [] Bromberg allegedly agreed to obstruct and when those agreements were made." (Bromberg's Notice of Motion 1, ECF No. 115; Bromberg's Moving Br. 2, ECF No. 115-1.) Bromberg also indicated that he joins in all applicable motions filed by Weinstein.[2] (*Id.*)

### 2. *Weinstein's Instant Motion*

On the same day, Weinstein filed an omnibus motion making several requests. (Weinstein's Moving Br., ECF No. 117.) Specifically, Weinstein seeks: (1) the Government to be required to file a bill of particulars; (2) dismissal of Count Seven, or in the alternative, to sever Count Seven from the Indictment's remaining counts; and (3) immediate disclosure of *Brady* material. (Weinstein's Notice of Motion, ECF No. 116.)

The Government opposed both Bromberg's motion for a bill of particulars and Weinstein's omnibus motion. (Gov't's Opp'n Br., ECF No. 124.) Defendants separately replied. (Bromberg's Reply, ECF No. 127; Weinstein's Reply, ECF No. 142.)

## II. DISCUSSION

### A. Motion to Dismiss Count Seven

Weinstein argues that the Conspiracy to Obstruct Justice charged in Count Seven is rooted in his prior convictions[3] and is distinct from the charges in the Indictment, which allegedly took place from 2021 through 2023. (Weinstein's Moving Br. 12.) He asserts that in charging

---

[2] The Court, accordingly, will consider Weinstein's omnibus motion applicable to Bromberg. Weinstein, however, did not join Bromberg's request.

[3] The Indictment provides that Weinstein was "previously convicted of two separate investment fraud schemes"—first, from in or around June 2004 through in or around August 2011, and second, from in or around February 2012 through in or around May 2013. (Indictment 1.) The Indictment adds that "[a]s a result of his investment fraud schemes, he was ordered to pay, in total, $230,406,799 in restitution to the victims of his crimes, and to serve three years of supervised release." (*Id.* at 2.)

Defendants with Count Seven, the Indictment "devotes several pages to a detailed recitation of the charges and sentences in [Weinstein's] prior cases, most of which [are] largely extraneous to . . . Count Seven, and immaterial to the Indictment's six fraud counts." (*Id.* at 14.) In turn, Weinstein argues that Count Seven must be dismissed because it fails to satisfy a key element of the obstruction statute—specifically, that there be a "judicial proceeding." (*Id.* at 16-17.) In opposition, the Government argues that Weinstein's term of supervised release and restitution judgments are judicial proceedings within the meaning of 18 U.S.C. § 1503. (Gov't's Opp'n Br. 16-23.)

### 1. *Legal Standard*

A defendant may move to dismiss an indictment for "lack of specificity" or "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B). In the Third Circuit, an indictment is facially sufficient to warrant a trial on the merits if it:

> (1) contains the elements of the offense intended to be charged[;] (2) sufficiently apprises the defendant of what he must be prepared to meet[;] and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.

*United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir 2007) (quoting *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989)). Accordingly, an indictment that recites the statutory language of the offense charged is adequate "so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *Rankin*, 870 F.2d at 112; *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007) ("[A]n indictment parroting the language of a federal criminal statute is often sufficient."); *but see Russell v. United States*, 369 U.S. 749, 765 (1962) ("Undoubtedly, the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of

the specific offense, coming under the general description, with which he is charged." (citations omitted)). Yet, "such dismissals may not be predicated upon the insufficiency of the evidence to prove the indictment's charges." *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000); *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990) ("In considering a defense motion to dismiss an indictment, the district court accepts as true the factual allegations set forth in the indictment.").

        2.    *Analysis*

To prove a conspiracy to obstruct justice claim, the Government must establish that: (1) "there was an agreement whose object was to obstruct justice"; (2) "the defendant knowingly joined it"; and (3) "at least one overt act was committed in furtherance of the object of the agreement." *United States v. Davis*, 183 F.3d 231, 243 (3d Cir. 1999), *amended*, 197 F.3d 662 (3d Cir. 1999) ("Circumstantial evidence may be used to prove all the elements." (citing *United States v. Kapp*, 781 F.2d 1008, 1010 (3d Cir. 1986))). In the Third Circuit, the elements of a prima facie case of obstruction of justice under 18 U.S.C. § 1503 are:

> (1) the existence of a judicial proceeding; (2) knowledge or notice of the pending proceeding; (3) acting corruptly with the intent of influencing, obstructing, or impeding the proceeding in the due administration of justice; and (4) the action had the "natural and probable effect" of interfering with the due administration of justice.

*United States v. Sussman*, 709 F.3d 155, 168 (3d Cir. 2013) (quoting *In re Impounded*, 241 F.3d 308, 317 n.8 (3d Cir. 2001)).

The Court considers the dispute at issue here—whether Weinstein's term of supervised release and restitution judgments independently suffice as pending judicial proceedings—below. (Indictment 24; Gov't's Opp'n Br. 16-23; Weinstein's Reply 8-12.)

a.     **Supervised Release**

First, Weinstein argues that "supervised release is not a 'judicial proceeding' constituting 'administration of justice'" under the relevant statute, and thus the Indictment fails to plead the necessary elements for Count Seven. (Weinstein's Moving Br. 16-17.) The question of whether a term of supervised release suffices as a judicial proceeding for purposes of § 1503 has not been squarely addressed by the Third Circuit, nor do the parties identify courts in other jurisdictions that have affirmatively made such a blanket ruling. *See United States v. Novak*, 217 F.3d 566, 571 (8th Cir. 2000) ("While we have noted that § 1503's application typically begins after the commencement of formal judicial proceedings, we evidently have not had occasion to consider when a proceeding ends for purposes of § 1503. In fact, there is relatively little case law addressing this question." (internal quotations and citations removed) (citing Court of Appeals cases))).

To begin, § 1503 includes an "omnibus clause" that courts have seemingly described as a "protective cloak over all judicial proceedings." *United States v. Brenson*, 104 F.3d 1267, 1280 (11th Cir. 1997).[4] A careful read of the relevant cases, however, demonstrates that even this "protective cloak" is not without limits. In fact, existing case law reveals that an ongoing term of

---

[4] As stated by the Third Circuit,

> The first clause is the discharge-of-duty clause, which provides that "[w]hoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any . . . officer in or of any court of the United States . . . in the discharge of his duty" is guilty of violating [§] 1503. 18 U.S.C. § 1503(a). The second clause, which has a broader scope than the first clause, and which is known as the Omnibus Clause, provides that whoever "corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in [§ 1503](b)." *Id.*

*United States v. Lewis*, 438 F. App'x 145, 149 (3d Cir. 2011).

supervised release, without more, may not suffice as a "judicial proceeding,"[5] notwithstanding the fact that supervised release is a core judicial function. *See United States v. Guerra*, 856 F.3d 368, 369 (5th Cir. 2017). On the other hand, some courts have held that a pending, ongoing proceeding—such as a revocation of supervised release hearing or issuance of a warrant—that took place *while* a defendant was on supervised release is sufficient to satisfy the "judicial proceeding" requirement. *See, e.g., United States v. Lewis*, 438 F. App'x 145, 149-50 (3d Cir. 2011) (holding that defendant's conduct was "related to a pending judicial proceeding" where "a revocation hearing [] was to be held in his case"); *United States v. Weber*, 320 F.3d 1047, 1050 (9th Cir. 2003) (citing cases) (holding that there was a "sufficient predicate" of a pending judicial proceeding where "the [Probation Office's] petition to revoke [defendant]'s supervised release in connection with [an earlier conviction] and issuance of a warrant constituted the revival of [pending] proceedings"). Here, Weinstein's prior case did not have a pending violation proceeding or hearing that would have triggered the "revival" of a judicial proceeding.

The Government, however, cites an Eighth Circuit case and Eleventh Circuit case to argue that there was a pending judicial proceeding in this matter. (Gov't's Opp'n Br. 20-21.) In *United States v. Novak*, the Eighth Circuit held that there was a pending judicial proceeding because "all of [a defendant's] misconduct took place well within the one-year period contemplated by [Federal Rule of Criminal Procedure[6]] 35(b)" to file a motion for reduction of sentence. 217 F.3d at 573.

---

[5] In one instance, the Ninth Circuit declined to hold that a defendant violated the statute by associating with a woman who, per the terms of her probation, was prohibited from interacting with him. *Haili v. United States*, 260 F.2d 744, 744 (9th Cir. 1958). The Ninth Circuit stated that although "supervision of a convicted prisoner in a penitentiary is a part of the administration of justice if that term is given a very wide meaning[,] [w]e would be surprised . . . if it were held that conduct designed to encourage a prisoner to escape from a penitentiary could be punished under [§] 1503." *Id.* at 745.

[6] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Criminal Procedure.

Similarly, in *United States. v. Fernandez*, the Eleventh Circuit held that there was a pending judicial proceeding where the relevant misconduct occurred after sentencing but within the one-year period to file a motion for reduction of sentence under Rule 35(b) and within the 14-day or 30-day period to file an appeal under Federal Rule of Appellate Procedure 4(b)). 837 F.2d 1031, 1034 (11th Cir. 1988), *cert. denied*, 488 U.S. 838 (1988). In essence, the Government relies upon those two cases to argue that there was a pending judicial proceeding because although "Weinstein had already completed 11 months of a three-year term of supervised release when he [allegedly] orchestrated a conspiracy to obstruct justice[,]" "Weinstein could have petitioned . . . to 'modify' or 'reduce' the conditions of supervised release." (Gov't's Opp'n Br. 20-21.) Put even more simply, the Government stretches the rationale of the aforementioned circuit courts to argue that there is a pending judicial proceeding "any time prior to the expiration or termination of the term of supervised release," 18 U.S.C. § 3583(e)(2)—not just within the one-year period after sentencing—because a sentencing court maintains the authority to amend, modify, or terminate supervised release, which is "part of a sentence." (Gov't's Opp'n Br. 21 (quoting 18 U.S.C. § 3583(a)).)

    This Court declines to, without supporting case law, stretch the law to reach the Government's desired outcome. The Court heeds that "[§] 1503 is a criminal statute, and as such must be strictly construed." *United States v. Scoratow*, 137 F. Supp. 620, 621 (W.D. Pa. 1956). Relatedly, the Third Circuit has stated—albeit in dicta—that "[e]ven probation supervised by court-appointed officers does not constitute a pending proceeding." *United States v. Davis*, 183 F.3d 231, 239 (3d Cir. 1999), *amended*, 197 F.3d 662 (3d Cir. 1999) (citing *Haili*, 260 F.2d 744).

    Generally, a defendant's violation of his or her supervised release should be procedurally addressed via a revocation or modification of supervised release hearing—not a charge in a new

indictment. *See United States v. Seighman*, 966 F.3d 237, 242 (3d Cir. 2020) ("Revocation of supervised release is typically understood as 'part of the penalty for the initial offense.'" (quoting *Johnson v. United States*, 529 U.S. 694, 700 (2000))). The Third Circuit reasoned that:

> [t]he consequences that flow from violation of the conditions of supervised release are first and foremost considered sanctions for the defendant's "breach of trust"—his "failure to follow the court-imposed conditions" that followed his initial conviction—*not "for the particular conduct triggering the revocation as if that conduct were being sentenced as new federal criminal conduct."*

*Id.* (emphasis added) (quoting United States Sentencing Commission, Guidelines Manual ch. 7, pt. A, intro. 3(b) (Nov. 2018)). The Court, therefore, finds that an ongoing term of supervised release, without more, fails to suffice as a pending judicial proceeding for purposes of § 1503.

### b. Restitution Judgments

The Government also argues that Weinstein's restitution judgments imposed from his prior convictions are judicial proceedings for purposes of § 1503. (Indictment 22-23, 25; Gov't's Opp'n Br. 16-19.)

The Third Circuit—as with supervised release—has not squarely addressed the question of whether a restitution judgment suffices as a judicial proceeding for purposes of § 1503. The few courts that have addressed this issue have not extended a judicial proceeding under § 1503 through the pendency of a restitution judgment. *See United States v. Johnson*, 605 F.2d 729, 731 (4th Cir. 1979) ("[A] criminal action remains pending in the district court until disposition is made of any direct appeal taken by the defendant assigning error that could result in a new trial.").

As a practical matter, a restitution judgment granted under 18 U.S.C. § 3663A[7] "is a lien in favor of the United States on all property and rights to property of the person fined . . .," 18

---

[7] Weinstein is currently subject to an order of restitution entered under 18 U.S.C. § 3663A. *See United States v. Weinstein*, No. 11-cr-701, (D.N.J. 2014), ECF. No. 188.

9

U.S.C. § 3613(c), and "part of the sentence for the offense of conviction." *United States v. Syme*, 276 F.3d 131, 159 (3d Cir. 2002). "The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." 18 U.S.C. § 3613. One such method of enforcement allows a court to resentence a defendant who knowingly fails to pay restitution to any sentence that might originally have been imposed. 18 U.S.C. § 3614; *cf. Bearden v. Georgia*, 461 U.S. 660, 669 (1983) (holding that in a revocation proceeding where a restitution debtor "willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority"). If a defendant fails to comply with the terms of a restitution judgment, therefore, the Government's remedies include initiating a violation of supervised release proceeding or other enforcement proceeding to collect and enforce the restitution judgment—not filing a separate indictment. *See* 18 U.S.C. § 3613. Unless and until the Government initiates such an action, a restitution judgment is merely a lien making up one part of the criminal sentence.

The Government cites to *United States v. Sussman* to support its argument that a restitution judgment is a judicial proceeding. 709 F.3d 155 (3d Cir. 2013). In *Sussman*, the Third Circuit upheld a conviction under 18 U.S.C. § 1503 because a defendant improperly removed gold coins from his safe deposit box against a district court's final order granting a permanent injunction that prohibited defendant from participating in debt collection activities and entering judgment against defendant in the amount of $10,204,445. *Id. Sussman* is distinguishable, however, because the

10

defendant in *Sussman* violated a permanent injunction—not a restitution judgment.[8] "[A]n injunction often requires continuing supervision by the issuing court and . . . a continuing willingness [by the court] to apply its powers and processes on behalf of the party who obtained that equitable relief." *Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961).[9]

The Court, as such, finds that a restitution judgment, without more, does not suffice to serve as a pending judicial proceeding. The Court, accordingly, dismisses Count Seven based on Weinstein's argument that the Indictment fails to plead the judicial proceeding element.

### B.  Sever Count Seven from the Indictment

Since the Court grants Weinstein's motion to dismiss Count Seven, Weinstein's argument in the alternative that Count Seven must be severed from Counts One through Six in the Indictment is moot. (*See* Weinstein's Moving Br. 18-28.)

### C.  Motion for a Bill of Particulars

#### 1.  Legal Standard

An indictment is sufficient if it is "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1); *see also Resendiz-Ponce*, 549 U.S. at 110 ("[D]etailed allegations . . . are not contemplated by Rule 7(c)(1)."). Relatedly,

---

[8] *United States v. Payne* is similarly distinguishable because there was a *permanent injunction* permitting the United States "to seize and remove to impound any trespassing cattle," and the superseding indictment alleged that defendant carried out a "massive armed assault" to prevent law enforcement officers from enforcing the injunction. No. 16-00046, 2017 WL 1305238, at *8 (D. Nev. Jan. 13, 2017), *R. & R. adopted*, No. 16-46, 2017 WL 1366671 (D. Nev. Feb. 10, 2017).

[9] The Government also cites *United States v. Frank*, 354 F.3d 910 (8th Cir. 2004), a case in which the Eighth Circuit upheld two obstruction charges. The Government's own brief, however, cites an Eighth Circuit case that "question[s] whether § 1503 imposes any requirement that there be a 'pending judicial proceeding.'" *Novak*, 217 F.3d at 571. Since the Third Circuit affirmatively requires a pending proceeding, the Court is not persuaded that *Frank* suggests a different outcome.

pursuant to Rule 7(f), "a court may direct the [G]overnment to file a bill of particulars" when "an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *United States v. Moss*, No. 19-701, 2021 WL 1196451, at *7 (D.N.J. Mar. 30, 2021) (quoting *United States v. DePaoli*, 41 F. App'x 543, 546 (3d Cir. 2002)). Rule 7(f) "does not require the United States Attorney to furnish a three[-]dimensional colored motion picture of the prosecution's proof prior to trial." *United States v. Caruso*, 948 F. Supp. 382, 395 (D.N.J. 1996). As such, a court should not grant a motion for a bill of particulars if its only use is to secure evidence pretrial. *Moss*, 2021 WL 1196451, at *7 ("[A]ccess to discovery weakens the case for a bill of particulars." (quoting *United States v. Atwell*, No. 13-0560, 2015 WL 2092687, at *5 (D.N.J. May 5, 2015)).

### 2. *Bromberg's Motion for a Bill of Particulars*

Bromberg asserts that the Indictment "is laden with vague and generalized statements about [his] role in the alleged conspiracy" such that the Court should order the Government to provide a bill of particulars. (Bromberg's Moving Br. 1.)

First, Bromberg states that for Counts One and Two, conspiracy to commit securities fraud and securities fraud charges, the Government must specify the "particulars of [Bromberg]'s involvement" because the Indictment's factual allegations make it unclear as to whether he "had *any* direct contact with allegedly defrauded investors."[10] (Bromberg's Moving Br. 1, 6.) Second, Bromberg argues that the Indictment fails to allege "sufficient particularities about the

---

[10] Bromberg specifically argues that "the Indictment only specifically alleges [that Bromberg] made misrepresentations about [Weinstein's] identity [to Anderson and Curry], and that those representations were passed on to investors by Anderson and Curry—not [Bromberg]." (Bromberg's Moving Br. 1.) As such, Bromberg asserts that if he is "charged with conduct beyond his alleged misrepresentations of Weinstein's identity to Anderson and Curry, the [G]overnment must provide a bill of particulars identifying that conduct more precisely." (*Id.*)

misrepresentations [Bromberg] made to investors, including Anderson and Curry" and thus the Government must identify the misrepresentations predicating the conspiracy and security fraud charges. (Bromberg's Moving Br. 7.)

Both arguments are unpersuasive. "[A] bill of particulars is not a general device or a means of obtaining answers to questions the defendant may have." *United States v. Coburn*, 439 F. Supp. 3d 361, 387 (D.N.J. 2020). Moreover, "the bill 'is not designed to compel the [G]overnment to [submit a] detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial.'" *United States v. Delle Donna*, 552 F. Supp. 2d 475, 498 (D.N.J. 2008), *aff'd in part sub nom.*, 366 F. App'x 441 (3d Cir. 2010) (quoting *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980)). That is particularly true in cases involving conspiracy charges. *See United States v. Ahmad*, 53 F.R.D. 194, 199 (M.D. Pa. 1971) (denying defendants motion for a bill of particulars regarding which offenses each defendant "specifically and expressly subscribed" and "which of the other defendants or unindicted co-conspirators he or she is alleged to have conspired with" because "under the conspiracy law [it] is unnecessary for defendants to prepare their defense—for whether or not a conspirator subscribed to any particular act of other conspirators is of no moment"). Here, the Court finds that the Indictment and voluminous discovery in this matter have apprised Bromberg of sufficient information, and Bromberg is not significantly impaired in preparing his defense nor is he likely to be prejudicially surprised at trial without a bill of particulars. *See Moss*, 2021 WL 1196451, at *7; *N. Jersey Media Grp. v. United States*, 836 F.3d 421, 429 (3d Cir. 2016) (finding that a bill of particulars is not supposed to furnish to the defense "each and every document that provides additional information about a criminal charge").

Next, Bromberg asserts that the Government must "disclose the identities of the two pseudonymous victims in the Indictment, as well as the identities of any other alleged victims."

13

(Bromberg's Moving Br. 13.) Although Bromberg represents in his reply brief that the request is "largely moot" because the Government has since provided relevant FBI interview reports (Bromberg's Reply Br. 6, ECF No. 127), Bromberg maintains that the Court must still "order the [G]overnment [to] confirm [his] understanding of who Victim-1 and Victim-2 are" and "identify any [additionally] alleged Tryon investor-victims for whom the [G]overnment has not provided [FBI interview reports]." (*Id.*)

This request is denied. A bill of particulars is not a means by which a defendant may confirm facts from its own investigation. Rather, a bill of particulars is only necessary where the Government failed to furnish to defendants the minimum amount of information required to put on a defense. *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985). Critically, "where the [i]ndictment and discovery contains 'sufficient factual and legal information for the defense to prepare its case . . . it is not essential that an indictment identify victims by their given names.'" *Delle Donna*, 552 F. Supp. 2d at 498 (quoting *United States v. Wabo*, 290 F. Supp. 2d 486, 490 (D.N.J. 2003) (denying a motion for bill of particulars where the indictment identified victims by their initials)).

To the extent Bromberg argues that "the Government must identify the unnamed 'others' and unnamed locations" where the overt acts of the alleged conspiracy took place (Bromberg's Moving Br. 15-16), that request is also denied. Other than generalized assertions that Bromberg is otherwise "not able to fully investigate the circumstances of the Indictment" (Bromberg's Moving Br. 15), Bromberg fails to make "any specific showing of why the disclosure of unindicted co-conspirators is necessary in this case." *United States v. Edwards*, No. 20-572, 2024 WL 1620311, at *6 (D.N.J. Apr. 15, 2024). Here, the Government represents that the names and identities of Bromberg's co-conspirators are known to the parties and that the relevant locations

are provided in the Indictment and the extensive discovery that has been shared. (Gov't's Opp'n Br. 11-12); *see United States v. Parlavecchio*, 903 F. Supp. 788, 795-96 (D.N.J. 1995) (denying motion for a bill of particulars where not only was the Indictment itself sufficient, but the Government also "provided further information in response to [the defendant's] request, apprising him of [the Government's] specific allegation[,]" and therefore denial of the request would "not lead to [the defendant's] inability to adequately prepare his case" (citation omitted)). Indeed, the Court agrees that the 29-page Indictment and voluminous discovery in the case suffice to allow Defendants to "adequately prepar[e] for trial."[11] *See United States v. Addonizio*, 451 F.2d 49, 64-65 (3d Cir. 1971); *United States v. Delahanty*, No. 21-872, 2022 WL 4237143, at *4 (D.N.J. Sept. 13, 2022) (denying defendants' motion for a bill of particulars because "[d]efendants understand the conduct for which they stand trial and may prepare their defenses accordingly").

Finally, Bromberg argues that the Government must provide greater detail about "when, what, and how [he] allegedly agreed to obstruct justice." (Bromberg's Moving Br. 17.) As this Court has now dismissed Count Seven for obstruction of justice, this request is moot.

In sum, the Court finds that Bromberg has enough information to: (1) understand the nature of the charges brought against him; (2) prepare his defense; (3) avoid surprise during the trial; and (4) protect him against a second prosecution for an inadequately described offense. *See United*

---

[11] *See, e.g., N. Jersey Media Grp.*, 836 F.3d at 433 ("[T]here may be instances in which an indictment charging a conspiracy is so overbroad or vaguely drafted that a bill of particulars identifying unindicted co-conspirators is required to allow the defendant to prepare a defense. Considering the detail of this [36-page] indictment, however, that is not a problem here."); *United States v. Smukler*, 330 F. Supp. 3d 1050, 1066 (E.D. Pa. 2018) (denying a motion for a bill of particulars requesting identities of any alleged, unnamed co-conspirators because the indictment was "15 pages long and detail[ed] at length the charges against defendant, including the naming of co-conspirators . . .," as well as "the alleged purpose of the conspiracy, the manner in which the conspiracy was carried out, and [] the exact dates on which the alleged [offense conduct occurred]," which "is all the law requires").

15

*States v. Sourlis*, 953 F. Supp. 568, 580 (D.N.J. 1996) (quoting *Addonizio*, 451 F.2d at 63-64). Bromberg's motion for a bill of particulars is therefore denied.

### D. Weinstein's Motion for a Bill of Particulars

Weinstein argues that Counts One and Two of the Indictment, both of which relate to securities fraud, fail to "identify [] the financial instruments charged as securities." (Weinstein's Moving Br. 5.) The Government represents that it conferred with Weinstein's counsel and provided Bates numbers corresponding to examples of securities. (Gov't's Opp'n Br. 12-13.) Weinstein nevertheless maintains that "even with these examples" he is "in the dark about the universe of transactions presented to and charged by the grand jury as securities." (Weinstein's Reply 18.)

This request is denied. The Indictment details the Government's theory regarding how Weinstein and his co-conspirators engaged in the securities fraud conspiracy, (Indictment 7-8), and it provides specific examples of various "deals" through which conspirators allegedly obtained investor money (*id.* at 10-13). The Court finds that "[t]he [I]ndictment is specific enough to permit [Defendants] to conduct their own investigation." *Sourlis*, 953 F. Supp. at 579; *Smith*, 776 F.2d at 1111 ("A bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation."). Even if the information in the Indictment was not sufficient, the Government also conferred with Weinstein's counsel in the interim and provided examples of securities, further undermining any claim that Weinstein faces a trial-by-surprise. *See Sourlis*, 953 F. Supp. at 578 ("[W]hen discovery provided by the government fills in the outline of the indictment, the necessity for a bill of particulars declines." (citation omitted)). As such, Weinstein's motion for a bill of particulars is denied.

16

### E. Request for *Brady* Material

Next, Weinstein requests that the Court order the Government to supplement its *Brady* disclosures because it "has not identified a single piece of *Brady* material." (Weinstein's Moving Br. 28-34.) Weinstein states that a demand letter was sent on May 16, 2024, but the Government has yet to respond. (*Id.*) Weinstein also asserts that the Government should be compelled to identify *Brady* material in its voluminous discovery. (*Id.* at 30-33.) In response, the Government argues that it has, in compliance with the Court's scheduling orders,[12] produced searchable documents (using a Bates-stamp system) in individual, separate folders that identify the specific source of the records. (Gov't's Opp'n Br. 37-39.)

Under *Brady*, the Government is required to disclose all potentially exculpatory evidence to the accused "where the evidence is material either to guilt or to punishment." 373 U.S. at 87. That said, *Brady* does not "impose [an] additional duty on the prosecution . . . to ferret out any potentially defense-favorable information from materials that are . . . disclosed. . . . [T]he burden is on the defendant to exercise reasonable diligence." *United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005) (citation omitted). In short, *Brady*, does not require the Government to identify the exculpatory materials within the discovery it has already provided.

Weinstein is correct that some out-of-circuit courts have required the Government to identify *Brady* materials within its past productions. (Weinstein's Moving Br. 30-33.) Yet, those cases are distinguishable because they involved more voluminous discovery, and thus a higher

---

[12] The Court's scheduling order requires the Government to provide "exculpatory evidence, within the meaning of *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, on or before March 22, 2024." (Scheduling Order ¶ 2, ECF No. 89.) Further, the Court's trial scheduling order directs the Government to provide "all material to be disclosed under *Giglio v. United States*, 405 U.S. 150 (1972), and any material to be provided under the Jencks Act, 18 U.S.C. § 3500, on or before October 14, 2024." (Amended Trial Scheduling Order, ECF No. 141.)

burden to search, than the Government's discovery in the case at bar. *See, e.g., United States v. Blankenship*, No. 14-244, 2015 WL 3687864, at *6-7 (S.D.W. Va. June 12, 2015) (compelling the Government to designate *Brady* materials within four million pages of discovery); *United States v. Hsia*, 24 F. Supp. 2d 14, 29-30 (D.D.C. 1998) (requiring the Government to identify *Brady* materials within 600,000 documents).

Here, Weinstein fails to indicate that the universe of documents in this case is equal to such volume.[13] As such, Weinstein has not persuaded this Court that an exception to the general rule is warranted, and therefore this Court declines to compel the Government to identify *Brady* materials within its discovery. *See United States v. Eisenberg*, 773 F. Supp. 662, 687-88 (D.N.J. 1991) (denying defendant's motion to identify *Brady* material among documents previously produced and finding that the Government "complied with its *Brady* obligations"); *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451, 454 (S.D.N.Y. 2011) (declining to compel the Government to identify *Brady* materials "[b]ecause the Government is under no general obligation to identify or sort *Brady* material within even an extremely voluminous disclosure, and [d]efendants have failed to persuade the Court that an exception to this general rule is warranted here . . ."). To the extent the Government is aware of any potentially exculpatory material within its possession that has not already been disclosed to Defendants during discovery, this Court orders the Government to disclose that material to Defendants in a timely fashion, consistent with its obligations under *Brady*.

---

[13] Moreover, the parties indicated at oral argument that discovery documents include message threads, and thus the document count may be inflated if each individual communication or message is counted as a separate document. (*See, e.g.*, Tr. 25:3-26:2 (explaining that "23 individual message threads" equates to "a total of 20,000 messages"), 40:25-41:8, ECF No. 128.)

### III. CONCLUSION

For the reasons set forth above, Bromberg's motion for a bill of particulars is denied. Weinstein's omnibus motion is granted in part and denied in part. The Court will enter an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**