<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA,

v.

ELIYAHU ("ELI") WEINSTEIN, a/k/a
"Mike Konig," and ARYEH ("Ari")
BROMBERG

Criminal Action No. 24-128 (MAS)

**MEMORANDUM OPINION**

<u>**SHIPP, District Judge**</u>

      This matter comes before the Court upon Defendant Eliyahu "Eli" Weinstein's
("Weinstein") Omnibus Pretrial Motion (ECF No. 195) and Defendant Aryeh "Ari" Bromberg's
("Bromberg") (collectively "Defendants") Omnibus Pretrial Motion (ECF No. 197). Bromberg
joined Weinstein's Omnibus Motion. (*See id.*) The United States of America (the "Government")
opposed (ECF No. 215), and Defendants separately replied (ECF Nos. 231, 233). The Court has
carefully considered the parties' submissions and decides the matter without oral argument
pursuant to Local Civil Rule 78.1(b), which is applicable to criminal cases under Local Criminal
Rule 1.1. For the reasons set forth herein, Weinstein's omnibus pretrial motion is denied, and
Bromberg's omnibus pretrial motion is denied.

**I.**     <u>**BACKGROUND**</u>

      The Court assumes the parties' familiarity with the underlying facts and procedural history
and only recites those facts necessary to decide the instant motions. On July 19, 2023, Defendants
were arrested and charged with wire fraud conspiracy and obstruction of justice conspiracy. (ECF
No. 1.)

On February 20, 2024, Defendants were indicted in the District of New Jersey by a grand jury for Seven Counts.[1] (Original Indictment, ECF No. 85.) About four months later, on June 28, 2024, Weinstein moved to, *inter alia*, dismiss Count Seven of the Original Indictment ("Original Count Seven"), a charge for obstruction of justice under 18 U.S.C. § 1503.[2] (ECF No. 116.) Specifically, the Government alleged that Weinstein and Bromberg conspired to subvert the terms of Weinstein's supervised release "by: (a) hiding [Weinstein's] unsanctioned business activities[;] and (b) hiding and diverting funds and assets that should have gone towards restitution." (Original Indictment 23.)

The Court granted Weinstein's motion to dismiss on September 24, 2024 ("Sept. 24 Op."), finding that the Original Indictment failed to allege a "pending judicial proceeding," as required for an obstruction of justice charge.[3] (Sept. 24 Op. 11, ECF No. 154.) That same day, the Government sent an email correspondence to the Court and Defendants stating: "In light of the Court's ruling, the Government would like to request an immediate status conference, before Friday, to discuss the Government's presentation of a Superseding Indictment and other related

---

[1] The Original Indictment brought the following Counts: (1) Conspiracy to Commit Securities Fraud, in violation of 18 U.S.C. § 371 (Count One); (2) Securities Fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff; Title 17, C.F.R. § 240.10b-5; and 18 U.S.C. § 2 (Count Two); (3) Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349 (Count Three); (4) Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 2 (Counts Four through Six); and (5) Conspiracy to Obstruct Justice, in violation of 18 U.S.C. § 371 (Count Seven). (*See generally* Original Indictment.)

[2] Bromberg joined in Weinstein's Motion to Dismiss Count Seven of the Original Indictment. (ECF No. 115.)

[3] The Government appealed the Court's September 24 Opinion on October 24, 2024. (ECF No. 118.) This appeal was dismissed on December 10, 2024. (ECF No. 216.)

items." (Weinstein's Moving Br., Ex. A, ECF No. 195-2.) The Court held a status conference the

next day, on September 25, 2024, where the Government stated:

> We are also considering, as we noted in our conference last week, we noted that we were likely going to seek a superseding indictment adding additional charges. Those charges were largely predicated on money laundering. In light of Your Honor's decision, we may seek to add additional charges, including an additional obstruction offense potentially under Section 1512 as well as offenses related to false statements to [P]robation because we feel strongly that this conduct is - - that the conduct that was the subject of the Court's decision violates other provisions of the federal code.

(Bromberg's Moving Br., Ex. B ("Sept. 25 Tr.") 4:15-24, ECF No. 197-3; Weinstein's Moving

Br. 7, ECF No. 195-1.)

On October 10, 2024, the Government filed the Superseding Indictment, which includes

the following Counts: (1) Conspiracy to Commit Securities Fraud, in violation of 18 U.S.C. § 371

(Count One); (2) Securities Fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5;

18 U.S.C. § 2 (Count Two); (3) Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349

(Count Three); (4) Wire Fraud, in violation of 18 U.S.C. §§ 2, 1343 (Counts Four through Six);

(5) Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h) (Count

Seven); (6) Money Laundering, in violation of 18 U.S.C. §§ 2, 1957(a) (Count Eight);

(7) Conspiracy to Make False Statements to and Conceal Material Facts from the United States

Probation Office ("Probation"), in violation of 18 U.S.C. § 371 (Count Nine); (8) False Statements

to and Concealment of Material Facts from Probation, in violation of 18 U.S.C. §§ 2, 1001(a)(1),

1001(a)(2) (Counts Ten through Thirteen); (9) Conspiracy to Obstruct Justice, in violation of 18

U.S.C. § 1512(k) (Count Fourteen); (10) Obstruction of Justice, in violation of 18 U.S.C. §§ 2,

1512(b)(3) (Count 15); (11) Destruction of Objects to Impede a Federal Investigation, in violation

of 18 U.S.C. § 1519 (Count 16); and (12) Obstruction of Justice, in violation of 18 U.S.C.

§ 1512(c)(2) (Count Seventeen). (*See generally* Superseding Indictment, ECF No. 172.) Counts

One through Fifteen are brought against both Bromberg and Weinstein, but Counts Sixteen and Seventeen are brought against Weinstein only. (*See id.*)

In relevant part, the Superseding Indictment describes a New Jersey entity, Optimus Investments, Inc. ("Optimus"), which was formed in or around September 2021, to allegedly raise millions of dollars through false or misleading pretenses from investors to invest in various purported deals. (*Id.* at 5, 7-8.) Bromberg is alleged to have been the co-owner of Optimus, while Weinstein is alleged to have been a silent partner. (*Id.* at 5.) The Superseding Indictment also describes two other companies involved in the alleged scheme: Tryon Management Group LLC ("Tryon") and Cornerstone Trading Company, LLC ("Cornerstone").[4] (*Id.*)

The Superseding Indictment alleges that Defendants and their co-conspirators concealed Weinstein's identity through use of the alias "Mike Konig" and his role in the purported investments, including his two prior convictions. (*Id.* at 7-9.) The Superseding Indictment further alleges that Defendants and co-conspirators concealed Weinstein's identity from Christopher Anderson ("Anderson") and Richard Curry ("Curry"), who helped raise money for Optimus's purported deals because "individual investors . . . would not invest if they were aware of [Weinstein's] fraud convictions and his significant role at Optimus and concerning the deals." (*Id.* at 9.) The Superseding Indictment alleges that Defendants and their co-conspirators misappropriated investor money, and when the alleged deals did not generate the promised returns, Defendants paid existing investors with money from new investors, in a "Ponzi-like fashion." (*Id.* at 10-11.)

The Superseding Indictment further alleges that Weinstein and Bromberg concealed Weinstein's assets and other business dealings from Probation, in violation of Weinstein's

---

[4] Weinstein is also alleged to have been a silent partner in Cornerstone. (Superseding Indictment 5.)

supervised release conditions from his previous convictions. (*Id.* at 31-37.) In an attempt to keep such information from Probation, Weinstein and Bromberg also allegedly engaged in misleading conduct to prevent Anderson and Curry—once they learned of Weinstein's identity—from reporting him to Probation. (*Id.* at 40-44.)

### A.     The Instant Motions

#### 1.     *Weinstein's Instant Motion*

On November 18, 2024, Weinstein filed an omnibus motion seeking: (1) dismissal of Counts Nine through Fifteen for vindictive prosecution, or in the alternative, to sever Counts Nine through Fifteen from the Superseding Indictment's remaining counts; (2) an order for the Government to file bill of particulars regarding Count Seven, charging money laundering conspiracy; and (3) an order requiring the Government to immediately disclose *Brady* materials. (Weinstein's Notice of Motion 1, ECF No. 195; Weinstein's Moving Br. 1.)

#### 2.     *Bromberg's Instant Motion*

On the same day, Bromberg filed an omnibus motion seeking: (1) dismissal of Counts Nine through Fifteen for vindictive prosecution; and (2) dismissal of Counts Nine through Thirteen for failure to properly charge a federal offense, or in the alternative, an order requiring the Government to elect to proceed on either Count One or Count Nine on grounds of multiplicity, or to hold a

hearing to determine whether Counts One and Nine allege a single conspiracy.[5] (*See* Bromberg's Moving Br. 1-4, ECF No. 197-1.) Bromberg fully joined in Weinstein's pretrial motion.[6] (*Id.* at 4.)

On December 9, 2024, the Government opposed both Weinstein and Bromberg's omnibus motions. (Gov't's Opp'n Br., ECF No. 215.) On December 27, 2024, Defendants separately replied. (Weinstein's Reply Br., ECF No. 231; Bromberg's Reply Br., ECF No. 233.)

## II.    <u>DISCUSSION</u>

### A.    **Motion to Dismiss Counts Nine Through Fifteen for Vindictive Prosecution**

Weinstein and Bromberg argue that Counts Nine through Fifteen should be dismissed for vindictive prosecution. (*See* Weinstein's Moving Br. 3-16; Bromberg's Moving Br. 4-17.) Specifically, Defendants argue that the Government only brought Counts Nine through Fifteen in response to Defendants exercising their right to move to dismiss Original Count Seven, which the Court granted in its September 24 Opinion. (Weinstein's Moving Br. 1, 12; Bromberg's Moving Br. 6; *see* Sept. 24 Op. 9.)

The Government argues in opposition that Defendants have not provided any evidence of actual vindictiveness and have not carried their burden in establishing a presumption of vindictiveness. (Gov't's Opp'n Br. 4.) Even if Defendants carried their burden, the Government argues that it can defeat this presumption because the new counts are based on "significant new evidence it uncovered after the [O]riginal [I]ndictment." (*Id.*)

---

[5] Bromberg's Omnibus Motion also includes two *in limine* motions to exclude: (1) evidence of Weinstein's criminal history and bad acts; and (2) evidence of particular spending and purchases by Bromberg. (Bromberg's Notice of Motion 1.) These requests will be addressed in a separate opinion.

[6] The Court, accordingly, will consider Weinstein's omnibus motion applicable to Bromberg. Weinstein, however, did not join Bromberg's request. (*See generally* Weinstein's Moving Br.)

### 1.    *Legal Standard*

In general, vindictive prosecution exists where the prosecution brings claims against a defendant in retaliation for the defendant "exercising a protected statutory or constitutional right." *United States v. Goodwin*, 457 U.S. 368, 372 (1982). There are two ways that a defendant can prove a claim for prosecutorial vindictiveness. *United States v. Paramo*, 998 F.2d 1212, 1220 (3d Cir. 1993).

"First, a defendant may use evidence of a prosecutor's retaliatory motive to prove actual vindictiveness." *Id.* (citing *Goodwin*, 457 U.S. at 380 n.12, 384). To prove actual vindictiveness, a defendant must provide evidence that the "prosecutor . . . suggested that the charge was brought to influence the [defendant's] conduct." *Goodwin*, 457 U.S. at 381. Such proof is "'exceedingly difficult to make.'" *Paramo*, 998 F.2d at 1221 (quoting *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987)).

Second, "a defendant may show facts sufficient to give rise to a presumption of vindictiveness." *Id.* (citing *Goodwin*, 457 U.S. at 374). At the outset, "[t]he defendant bears the initial burden of proof." *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989). A court will only adopt such a presumption where "a reasonable likelihood of vindictiveness exists." *United States v. Esposito*, 968 F.2d 300, 303 (3d Cir. 1992) (citation omitted). That is, the "totality of circumstances surrounding the prosecutorial decision at issue" must suggest the "appearance of vindictiveness." *United States v. Eisenberg*, 773 F. Supp. 662, 716 (D.N.J. 1991) (quoting *United States v. Robison*, 644 F.2d 1270, 1272 (9th Cir. 1981)). "There is no prosecutorial vindictiveness, however, where the prosecutor's decision to prosecute is based on the usual determinative factors." *Schoolcraft*, 879 F.2d at 67 (citing *United States v. Oliver*, 787 F.2d 124, 126 (3d Cir. 1986)). If a defendant meets his burden, "the burden then shifts to the prosecution to show that the prosecutor's

decision to prosecute was justified." *Id.* at 68 (citing *United States v. Heldt*, 745 F.2d 1275, 1280 (9th Cir. 1984)). Put differently, the Government must "proffer legitimate, objective reasons for its conduct" if the defendant carries his initial burden. *Paramo*, 998 F.2d at 1220 (citing *Esposito*, 968 F.2d at 305).

The Supreme Court has advised that "[t]here is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting." *Goodwin*, 457 U.S. at 381; *see also United States v. Sellers*, 501 F. App'x 194, 197 (3d Cir. 2012) (noting that a presumption of vindictiveness generally does not apply to "pre[]trial prosecutorial conduct"). While preparing a case for trial, "the prosecutor may uncover additional information that suggests a basis for further prosecution[,] or he simply may come to realize that information possessed by the [Government] has a broader significance." *Goodwin*, 457 U.S. at 381. Indeed, "[a]n initial decision should not freeze future conduct." *Id.* at 382.

### 2.    *Actual Vindictiveness*

Bromberg argues that the Government's statements at the September 25, 2024 telephone status conference are evidence of actual, direct vindictiveness. (Bromberg's Moving Br. 7-8, 11-14; Bromberg's Reply Br. 10-11.) At that conference, the Government stated:

> We are also considering, as we noted in our conference last week, we noted that we *were* likely going to seek a superseding indictment adding additional charges. Those charges *were* largely predicated on money laundering. *In light of Your Honor's decision*, we may seek to add additional charges, including an additional obstruction offense potentially under Section 1512 as well as offenses related to false statements to [P]robation because we feel strongly that this conduct is - - that the conduct that was the subject of the Court's decision violates other provisions of the federal code.

(Sept. 25 Tr. 4:15-24 (emphasis added).) Bromberg alleges that this statement demonstrates that the Government was "upping the ante" in response to the Court dismissing Original Count Seven. (Bromberg's Reply Br. 11.) The Court disagrees.

8

At the outset, the Court recognizes that the Government's statement at the September 25, 2024 conference does suggest that it brought Counts Nine through Fifteen in response to the September 24 Opinion. (*See* Sept. 25 Tr. 4:15-24, ("*In light of Your Honor's decision*, we may seek to add additional charges . . . ." (emphasis added)).) A finding of "'actual vindictiveness,' [however,] requires evidence that the charging decision resulted 'solely' from the defendant's exercise of a legal right." *United States v. Katzin*, 707 F. App'x 116, 121 (3d Cir. 2017) (citing *Paramo*, 998 F.2d at 1221). Absent such evidence, "a prosecutor is permitted to add charges to an indictment." *Id.* The Government's words at the September 25, 2024 conference do not evidence actual vindictiveness because "the prosecutor never suggested that the charge was brought to influence the [defendant's] conduct." *Goodwin*, 457 U.S. at 380-81. Instead, the Government's statement just as likely evidences a desire to strengthen its case based "on the usual determinative factors." *Schoolcraft*, 879 F.2d at 67 (citation omitted); *United States v. Baskerville*, No. 03-836, 2007 WL 150439, at *2 (D.N.J. Jan. 17, 2007) (noting that "prosecutorial vindictiveness is not established simply because a defendant exercised a legal right and was subsequently indicted for an additional offense"). The Court, therefore, finds no evidence of actual vindictiveness, and continues on to consider whether Defendants have established a presumption of prosecutorial vindictiveness.

### 3.    *Presumption of Prosecutorial Vindictiveness*

In an attempt to carry their burden to establish a presumption of prosecutorial vindictiveness, Defendants point to the following circumstances surrounding the Superseding Indictment. (*See* Weinstein's Moving Br. 11-16; Bromberg's Moving Br. 6-8.)

- On a September 20, 2024 telephone status conference with the Court, the Government represented that "in the coming weeks, we plan on presenting a superseding indictment to a grand jury" with "additional charges [that] should be based in large part on

evidence that the defendants already have." (Bromberg's Moving Br., Ex. A, Sept. 20 Tr. 13:7-12, ECF No. 197-3.) The Government also "t[ook] the position that this should not result in any kind of adjournment of the trial date."[7] (*Id.* at 13:17-18; *see also* Weinstein's Moving Br. 6 n.3.)

- On September 24, 2024, after the Court's September 24 Opinion dismissed Count Seven of the Original Indictment, the Government emailed the Court and Defendants, stating: "*In light of the Court's ruling*, the Government would like to request an immediate status conference . . . to discuss the Government's presentation of a Superseding Indictment . . . ." (Weinstein's Moving Br., Ex. A (emphasis added).)

- On a September 25, 2024 telephone status conference, the Government stated: "We are also considering, as we noted in our conference last week, we noted that we *were* likely going to seek a superseding indictment adding additional charges. Those charges *were* largely predicated on money laundering. *In light of Your Honor's decision*, we may seek to add additional charges, including an additional obstruction offense potentially under Section 1512 as well as offenses related to false statements to [P]robation because we feel strongly that this conduct is - - that the conduct that was the subject of the Court's decision violates other provisions of the federal code." (Sept. 25 Tr. 4:15-24 (emphasis added); *see* Weinstein's Moving Br. 7.)

- On October 7, 2024, in its *in limine* opposition brief, the Government noted "In its motions *in limine*, the Government argued that Weinstein's concealed history was also relevant to the Count Seven obstruction charge, which this Court has since dismissed. The Government intends to present additional charges to a grand jury in short order . . . ." (Weinstein's Moving Br. 7, 13.)

---

[7] At this time, the trial date was set for November 12, 2024.

Defendants also point to the Superseding Indictment itself, including the substance of Counts Nine through Fifteen as well as the additional sentencing exposure.[8] *First*, they contend that "the Superseding Indictment's Counts Nine through Fifteen cover substantially the same conduct as the [Original] Indictment's Count Seven." (Weinstein's Moving Br. 9; *see also* Bromberg's Moving Br. 11 ("[T]he new charges in the Superseding Indictment are predicated on the same facts that formed the basis for the charges in the [O]riginal Indictment.").) Weinstein maintains that the Government seeks to include such underlying conduct as a "vehicle for informing the jury of [Weinstein's] criminal history." (Weinstein's Moving Br. 1, 5, 13.) Without Original Count Seven as a vehicle to introduce such information, Weinstein argues, the Government faced "real litigation risk" that prompted the Superseding Indictment. (*Id.* at 13.) *Second*, Defendants argue that "the Government . . . severely and vindictively increased [Defendants'] sentencing exposure by 60 years," compared to the five years they each faced under Original Count Seven. (Bromberg's Moving Br. 10; *see also* Weinstein's Moving Br. 9.) The Government argues in opposition that "[w]hile [Counts Nine through Fifteen] increase the Defendants' *statutory* criminal exposure, they do not increase in any meaningful sense their advisory Guidelines range," and they do not include a mandatory minimum sentence. (Gov't's Opp'n Br. 28-29.)

Bromberg makes the following two additional arguments: (1) the "threadbare accusations against [Bromberg] only further evidence the prosecution's vindictiveness";[9] and (2) the

---

[8] In both their moving briefs and reply briefs, Defendants emphasize that a finding of prosecutorial vindictiveness does not imply ill will or malice on the Government's behalf and that Defendants are not asserting such intent. (Weinstein's Moving Br. 10 n.5; Bromberg's Moving Br. 5; Weinstein's Reply 3-4; Bromberg's Reply 3-4.)

[9] As Bromberg has separately moved to dismiss a subset of these Counts as against Bromberg only, the Court takes up this argument in its analysis on that motion below.

Government's "protective" notice of appeal was an "implicit[] threat[] to further delay the trial if the Court dismisses any part of the Superseding Indictment."[10] (Bromberg's Moving Br. 15.)

The Government, on the other hand, argues that it was "objectively reasonable" to bring the additional charges after Original Count Seven was dismissed to both avoid the "judicial proceeding" issue and to strengthen the Government's case. (Gov't Opp'n Br. 27-28.)

To begin its analysis, the Court notes that in the pretrial setting, "timing alone cannot support a vindictive prosecution claim." *United States v. Ponder*, 738 F. App'x 114, 117 (3d Cir. 2018) (citing *Goodwin*, 457 U.S. at 381). A presumption of vindictiveness, therefore, is not warranted simply because the Government expressed its intent to bring the Superseding Indictment within a day of the Court's September 2024 Opinion. *Cf. United States v. Winkelman*, 180 F. App'x 397, 400 (3d Cir. 2006) (noting that "just because one event follows another does not necessarily suggest a causal connection between the two").

The Government's statements and conduct surrounding the Court's September 24 Opinion similarly do not warrant a presumption of vindictiveness. The Third Circuit has held that "where the government's conduct is attributable to legitimate reasons, we will not apply a presumption of vindictiveness." *Esposito*, 968 F.2d at 305. Here, the Government has explained that its decision to bring additional charges stemmed from a desire to "avoid[] the 'judicial proceeding' issue" that led the Court to dismiss Original Count Seven. (Gov't Opp'n Br. 27); *see United States v. Figueroa*, No. 14-672, 2021 WL 1661202, at *9 (D.N.J. Apr. 28, 2021) (finding no prosecutorial vindictiveness when the Government added additional counts where "after [d]efendant pointed out certain problems with the original indictment based on changes in the law since 2014, the

---

[10] The notice of appeal has since been dismissed with prejudice (ECF No. 216), and the Court accordingly considers this argument moot.

Government reindicted him as a means to cure those problems"). This suggests that the Government was motivated to add the additional charges based "on the usual determinative factors." *Schoolcraft*, 879 F.2d at 67 (citation omitted); *see also United States v. Brown*, 298 F.3d 392, 406 (5th Cir. 2002) (affirming district court's finding of no presumption of prosecutorial vindictiveness where "[t]he Government's decision to add the new charges and allegations was motivated [by] a non-vindictive purpose, namely, to strengthen the Government's case").

The Court moves on to Defendants' argument that the underlying conduct in Original Count Seven and Counts Nine through Fifteen is largely the same and Defendants' sentencing exposure has dramatically increased. (*See* Weinstein's Moving Br. 9; Bromberg's Moving Br. 11.) Even if the underlying conduct is the same, in the pretrial context, this is simply insufficient to invoke the presumption of prosecutorial vindictiveness. "[T]he initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." *Goodwin*, 457 U.S. at 381-82 (recognizing that "the prosecutor's assessment of the proper extent of prosecution may not have crystallized"). Here, the Government exercised its prosecutorial discretion to bring additional counts before trial. That is, the Government's decision to increase the number of counts Defendants face and increased their sentencing exposure is within its rights. "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *United States v. Moscony*, 927 F.2d 742, 755 (3d Cir. 1991) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).

Finally, the Court is not persuaded by Defendants' reliance on *United States v. LaDeau*, 734 F.3d 561 (6th Cir. 2013). The Court agrees with the Government that *LaDeau* is distinguishable from the instant facts. (*See* Gov't's Opp'n Br. 30-31.) In *LaDeau*, the defendant

was indicted on one count of child pornography, and after the defendant's successful suppression motion, "there was no longer any admissible evidence that [the defendant] had possessed any child pornography," and the Government's case was "eviscerated." *Id.* at 564, 569. After the suppression motion, the Government brought a superseding indictment that involved a mandatory minimum sentence and higher sentencing range. *Id.* at 564-65. The Sixth Circuit affirmed the district court's finding of vindictive prosecution where the Government already had *all* of the information that supported the Superseding Indictment and the "only substantive occurrence between the two indictments was [the defendant's] successful suppression motion." *Id.* at 568. Here, in contrast, Defendants' motion to dismiss did not "eviscerate" the Government's case, but rather dismissed one of seven counts. And the Government has put forth additional evidence it acquired since the Original Indictment—it is not the case that the Government already knew *all* of the information supporting the Superseding Indictment. (*See* Gov't's Opp'n Br. 9-14.)[11]

After considering the totality of the circumstances, the Court finds that Defendants have not met their burden in establishing a presumption of prosecutorial vindictiveness. Defendants' motion to dismiss Counts Nine through Fifteen is accordingly denied.

---

[11] Defendants spend significant time in reply refuting that the Government used new evidence in the Superseding Indictment, arguing that the Government was aware of the facts used in Counts Nine through Fifteen well before the new evidence that it points to in its opposition brief. (*See* Weinstein's Reply Br. 9-21; Bromberg's Reply Br. 18-36.) Even assuming this is true, the Government did receive massive amounts of additional evidence. (*See* Gov't's Opp'n Br. 9 (10,000 pages of communications on September 12); 10 (20,000 communications after September 30); 12 (Probation officer's internal notes on September 27 and interview on October 4); 13 (Hattab interview on September 5 and communications on September 13).) Receiving such large amounts of evidence constitutes a "substantive occurrence" sufficient to differentiate the instant case from *La Deau*. Additionally, in the pretrial context, "the prosecutor may uncover additional information that suggests a basis for further prosecution[,] or he simply may come to realize that information possessed by the Government has a broader significance." *Goodwin*, 457 U.S. at 381. Even assuming the prosecution already had the underlying information from this discovery available, it was within its rights to decide such evidence had a "broader significance" and change its charging decision accordingly.

**B.    Motion to Sever Counts Nine Through Fifteen from the Superseding Indictment**

Should the Court deny Defendants' motion to dismiss Counts Nine through Fifteen, Weinstein argues in the alternative that Counts Nine through Fifteen must be severed from the remaining counts of the Superseding Indictment due to unfair prejudice. (*See* Weinstein's Moving Br. 16-28.) The Government opposes, arguing that Weinstein's prior convictions are "intrinsic evidence as to the fraud and money laundering charges at Counts [One though Eight] and admissible to show intent under [Federal Rule of Evidence ("FRE")] 404(b) for the obstruction charges at Counts [Sixteen through Seventeen]," and that any prejudice from their admission does not substantially outweigh their probative value. (Gov't's Opp'n Br. 31-32.) The Court considers these arguments below.

1.    *Legal Standard*

Federal Rule of Criminal Procedure 8(a)[12] permits joinder of multiple counts against a defendant if the counts "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." The Government may join multiple offenses in a single indictment if they "arise out of a common series of acts or transactions." *United States v. Brown*, No. 07-296, 2008 WL 161146, at *4 (E.D. Pa. Jan. 16, 2008) (citing *United States v. Eufrasio*, 935 F.2d 553, 570 (3d Cir. 1991)); *United States v. Wise*, No. 20-102, 2021 WL 5016013, at *7 (D.N.J. Oct. 28, 2021) (explaining that Rule 8(a) is not limited to crimes of the "same" character but also covers those of "similar" character, which means "[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness." (quoting *United States v. Hersh*, 297 F.3d 1233, 1241 (11th Cir. 2002))). In essence,

_____

[12] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Criminal Procedure.

joinder helps promote economy of judicial and prosecutorial resources. *See United States v. Gorecki*, 813 F.2d 40, 42 (3d Cir. 1987).

Properly joined charges may nevertheless be severed under Rule 14 if joinder "appears to prejudice a defendant or the [G]overnment." Fed. R. Crim. P. 14(a). "Mere allegations of prejudice are not enough; and it is not sufficient simply to establish that severance would improve the defendant's chance of acquittal." *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981) (citations omitted). Instead, the movant must demonstrate that "clear and substantial prejudice" will result if all counts of the indictment are tried jointly. *United States v. Davis*, 397 F.3d 173, 182 (3d Cir. 2005) (citation omitted). Clear and substantial prejudice exists if the jury would be unable "to compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility." *United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005) (quoting *Davis*, 397 F.3d at 182). Further, separation of charges may be inappropriate if limiting instructions from the court can adequately manage the possibility that a jury might misuse evidence. *Zafiro v. United States*, 506 U.S. 534, 534 (1993) ("[S]everance should be granted only if there is a serious risk that a joint trial would compromise a specific trial right of a properly joined defendant or prevent the jury from making a reliable judgment about guilt or innocence.").

Importantly, "[m]otions for severance rest in the sound discretion of the trial judge." *Reicherter*, 647 F.2d at 400 ("The trial judge is best situated to weigh possible prejudice to the defendant against interests of judicial economy." (citations omitted)). The movant faces a heavy burden in establishing an abuse of discretion. *United States v. Rosa*, 560 F.2d 149, 154 (3d Cir. 1977), *cert. denied*, 434 U.S. 862 (1977).

2.    *Weinstein's Prior Convictions – Intrinsic*

Weinstein argues that Counts Nine through Fifteen are rooted in his prior convictions from 2013 and 2014 and are distinct from the remaining charges contained in the Superseding Indictment, which allegedly took place from 2021 through 2023. (Weinstein's Moving Br. 18.) In turn, Weinstein argues that introducing evidence of his prior convictions, as required for Counts Nine through Fifteen, would be prejudicial and make it "impossible for him to get a fair trial on . . . Counts One through Eight, Sixteen, and Seventeen." (*Id.* at 19.) He further argues that his prior convictions are inadmissible under FRE 404(b) as to Counts One through Eight, Sixteen, and Seventeen; and the introduction of such evidence would result in a mini trial of his convictions and sentences. (*Id.* at 21-28.)

The Government, on the other hand, argues that Counts One through Eight are admissible because Weinstein's alleged "fraud scheme could not have succeeded without concealing from his unwitting investors his true identity." (Gov't Opp'n Br. 33.) As to Counts Sixteen and Seventeen, the Government argues that Weinstein's prior convictions are "admissible under FRE 404(b) to prove Weinstein's knowledge, motive, and intent for those obstruction counts." (*Id.* at 34.) And even if they are not admissible under FRE 404(b), the Government argues that Counts Sixteen and Seventeen are still properly joined because "it is proper to join the obstruction offense with the underlying offense to which the obstructive conduct relates." (*Id.*)

The Third Circuit, albeit in dicta, has found that "if a defendant is charged with multiple offenses, including one requiring proof of a prior felony conviction, the trial judge should sever the latter offense unless the conviction would be independently admissible with respect to the other charges." *United States v. Jacobs*, 44 F.3d 1219, 1221 (3d Cir. 1995) (citing *United States v. Busic*, 587 F.2d 585 (3d Cir. 1978), *rev'd on other grounds*, 446 U.S. 398 (1980)). Moreover, "if the

government chooses to join such counts, it must be prepared to justify the joinder to the trial judge by showing that the prior convictions would be admissible even absent joinder." *United States v. Joshua*, 976 F.2d 844, 847 (3d Cir. 1992) (quoting *Basic*, 587 F.2d at 585 n.9) (noting that "district courts may have difficulty making these determinations in a pre-trial setting"), *abrogated by Stinson v. United States*, 508 U.S. 36 (1993).[13] As such, if Weinstein's prior convictions are found to be independently admissible with respect to Counts One through Eight, Sixteen, and Seventeen, Weinstein's motion to sever may be denied. *See Wise*, 2021 WL 5016013, at *8 (noting that "[d]istrict courts routinely evaluate the admissibility of evidence when making severance decisions").

The Court first considers whether Weinstein's prior convictions are intrinsic. Evidence is intrinsic if: (1) the uncharged conduct "directly proves the charged offense"; or (2) it is "performed contemporaneously with the charged crime" and "facilitate[s] the commission of the charged crime." *United States v. Williams*, 974 F.3d 320, 357 (3d Cir. 2020) (quoting *United States v. Green*, 617 F.3d 233, 248-49 (3d Cir. 2010)) ("This suggests that the nature and scope of the evidence able to be deemed intrinsic will vary with the charged offense."). Particularly relevant here is that "where a criminal conspiracy is charged, courts have afforded the prosecution considerable leeway to present evidence . . . ." *Id.* ("Conspiracy is a single crime, even if it embraces a multitude of ends to be achieved over a period of time, by means that are not themselves the subject of agreement among the conspirators." (citing *Frohwerk v. United States*, 249 U.S. 204, 209-10 (1919))). "Intrinsic evidence need not be analyzed under Rule 404(b) because it is not '[e]vidence

---

[13] "This so-called 'per se rule' of *Basic* has been widely criticized by other courts of appeals and no other court has adopted the procedure spelled out there." *Joshua*, 976 F.2d at 847 n.5 (collecting cases).

of any crime, wrong, or other act,' Fed. R. Evid. 404(b)(1), but rather 'part and parcel of the charged offense.'" *Williams*, 974 F.3d at 357 (quoting *Green*, 617 F.3d at 245).

###### a.    Counts One Through Eight

Counts One through Eight in the Superseding Indictment charge Defendants with securities fraud, wire fraud, and money laundering; and conspiracy to commit securities fraud, wire fraud, and money laundering. (*See* Superseding Indictment 4-30.)

To sustain a securities fraud claim, the Government must prove that there was a "misrepresentation or omission of material facts in connection with the purchase or sale of a securit[y]." *Eisenberg*, 773 F. Supp. at 721; *United States v. Schiff*, 538 F. Supp. 2d 818, 827 (D.N.J. 2008), *aff'd*, 602 F.3d 152 (3d Cir. 2010) (explaining that securities fraud occurs when "any person, directly or indirectly . . . make[s] any untrue statement of a material fact or . . . omit[s] . . . a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading'" (citing 17 C.F.R. 240.10b-5(b)) (emphasis removed)). A "fact is material if there is a substantial likelihood the investor would consider it important in making an investment decision." *Eisenberg*, 773 F. Supp. at 721 (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 231 (1988)).

Here, the Superseding Indictment alleges that Weinstein, Bromberg, and their alleged co-conspirators lied to investors about Weinstein's identity. (*See* Superseding Indictment 7 ("To conceal [Weinstein's] identity from investors, [Bromberg], Wittels, and [Weinstein] agreed that they would use an alias, 'Mike Konig,' to refer to [Weinstein] when communicating with investors, potential investors, and business partners."); 8 ("To further the deception, [Bromberg] and Wittels served as the nominal owners of Optimus on corporate documents, checks, corporate bank accounts, and investor documents. In reality, [Bromberg] and Wittels took direction from [Weinstein] on business transactions, including where and when to move investor money.").) The

Government submits the reason that they allegedly lied about Weinstein's identity was because "individual investors . . . would not invest if they were aware of [Weinstein's] fraud convictions . . . ." (Superseding Indictment 9.) The Superseding Indictment, therefore, directly alleges that misrepresentations about Weinstein's identity were made to conceal his prior fraud convictions. These misrepresentations were "material" because investors would consider Weinstein's prior fraud convictions so important in their investment decisions that they would choose not to invest had they been aware of them. (*See* Superseding Indictment 8 ("Based on the material misrepresentations and omissions about [Weinstein's] true identity, business activities, and his history of fraud, [Weinstein], [Bromberg], Wittels, and others solicited and obtained millions of dollars from investors.")); *see Eisenberg*, 773 F. Supp. at 721-22. Put differently, the Government necessarily must introduce Weinstein's prior fraud convictions to prove and contextualize the material misrepresentations and omissions that were made as to Weinstein's identity and involvement in Optimus and the alleged fraud. As such, Weinstein's prior fraud convictions directly prove the material misrepresentation element of securities fraud and are intrinsic to Counts One and Two.

Similar to securities fraud, the "wire fraud statutes . . . are violated when misrepresentations or omissions of material fact are made." *Eisenberg*, 773 F. Supp. at 724; *see Neder v. United States*, 527 U.S. 1, 25 (1999) (holding that "materiality of falsehood is an element of . . . wire fraud"). Because the Court has found that Weinstein's prior fraud convictions directly prove whether Defendants made a "material misrepresentation," and an element of wire fraud is that Defendant made a material misrepresentation or omission, Weinstein's prior fraud convictions are also intrinsic to the wire fraud charges in Counts Three through Six. *See SEC v. Cammarata*, No. 21-4845, 2023 WL 5644689, at *10 (E.D. Pa. Aug. 31, 2023), *motion for relief from judgment*

*denied*, No. 21-4845, 2024 WL 1416601 (E.D. Pa. Apr. 2, 2024) (finding that the element of a securities fraud claim "that a defendant made a material misrepresentation or omission is encompassed within the first element of wire fraud").

To sustain a money laundering count, the Government must prove: "(1) that the defendant conducted or attempted to conduct a financial transaction[;] (2) which the defendant then knew involved the proceeds of unlawful activity[;] and (3) with the intent to promote or further unlawful activity." *United States v. Caruso*, 948 F. Supp. 382, 390 (D.N.J. 1996) (citation omitted). Here, the Government alleges that the securities fraud and wire fraud offenses constitute the alleged unlawful activity from which the proceeds came. (Gov't's Opp'n Br. 71-72.) As such, Weinstein's prior convictions are similarly intrinsic to the money laundering counts. The Court, accordingly, finds that Weinstein's prior fraud convictions are intrinsic to Counts One through Eight.[14]

Next, the Court must analyze whether evidence of Weinstein's prior fraud convictions should nevertheless be excluded under FRE 403. *United States v. Haas*, 184 F. App'x 230, 234 (3d Cir. 2006) (emphasizing that "even 'intrinsic' evidence is subject to Rule 403 balancing"). Under FRE 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." *See Eufrasio*, 935 F.2d at 573 (advising that district courts are encouraged to engage in an explicit balancing test under FRE 403).

---

[14] The Court is further persuaded to allow the Government to present relevant evidence as to Weinstein's prior convictions because Counts One, Three, and Seven are criminal conspiracy charges. *Williams*, 974 F.3d at 357 (explaining that courts generally provide "considerable leeway" to present evidence reflecting a conspiracy); *see also United States v. Somers*, 496 F.2d 723, 729-30 (3d Cir. 1974) ("Joinder is permitted of a conspiracy count and substantive counts arising out of the conspiracy, since the claim of conspiracy provides a common link, and demonstrates the existence of a common scheme or plan.").

The Court, therefore, begins by analyzing the probative value of evidence of Weinstein's prior convictions. As articulated above, the Court has found that evidence of Weinstein's prior fraud convictions is intrinsic to Counts One through Eight because such evidence "directly proves the charged offense." *Williams*, 974 F.3d at 357. Here, Weinstein's prior fraud convictions carry particularly high probative value because a conviction for investor fraud would be highly material to investors' decisions to invest their money. *See United States v. Sterritt*, 678 F. Supp. 3d 317, 338 (E.D.N.Y. 2023) (admitting evidence of a defendant's prior securities fraud conviction where "the details of that conviction would have been of particular interest to . . . investors and could have tipped them off to the possibility that they were being defrauded"). The Court, accordingly, finds that evidence of Weinstein's prior fraud convictions "is highly probative as to proving the Government's case and, therefore, can only be excluded if that probative value is substantially outweighed by the risk of unfair prejudice."[15] *United States v. Escalante-Melgar*, 567 F. Supp. 3d 485, 493 (D.N.J. 2021).

Moving on to the danger of unfair prejudice, Weinstein argues that admitting his prior fraud convictions "would plainly taint him as a felon and a fraud perpetrator in the eyes of the jury; it

---

[15] Weinstein correctly argues that the Superseding Indictment alleges a "misrepresentation related to the discrepancy between representations of the intended use of investor funds, and how investors' funds were used and investors were ultimately repaid." (Weinstein's Reply Br. 23 (citing Superseding Indictment 8-24).) But the Superseding Indictment *also* includes allegations that Defendants made material misrepresentations to investors concerning Weinstein's identity. The Government "must prove its case beyond a reasonable doubt, and . . . it must be allowed to marshal all supporting relevant evidence." *Escalante-Melgar*, 567 F. Supp. 3d at 490; *see also United States v. Brown*, No. 12-224, 2014 WL 183077, at *3 (W.D. Pa. Jan. 14, 2014) (finding that "the Government must be permitted to prove its case in the manner that it so chooses"). The Government is permitted to advance two separate theories of material misrepresentation in an attempt to satisfy its burden on the fraud counts. *See Williams*, 974 F.3d at 357 (finding that "[c]onspiracy is a single crime, even if it embraces a multitude of ends to be achieved over a period of time"); *see also United States v. Nanda*, 867 F.3d 522, 529 (5th Cir. 2017) (finding that jury did not need to be "unanimous as to a particular false statement" to find defendant guilty of wire fraud).

would be impossible for him to get a fair trial on . . . Counts One through Eight, Sixteen, and Seventeen." (Weinstein's Moving Br. 19.) The Government does not contest the evidence is prejudicial. (*See* Gov't's MIL Moving Br. 20-21, ECF No. 198.) Instead, the Government acknowledges that while evidence of the prior convictions "carry a risk that a jury might infer propensity," the resulting prejudice does not "substantially outweigh" the probative value because "it is central to explaining the fraudulent scheme and proving that . . . Defendants intentionally misled investors by hiding Weinstein's identity." (*Id.* at 20.)

Prior bad act evidence has a "uniquely prejudicial impact" on a jury. *United States v. Caldwell*, 760 F.3d 267, 275 (3d Cir. 2014). The danger of unfair prejudice arises because the jury may infer that the prior bad act evidence "demonstrate[s] the propensity of the defendant to do acts similar to those charged." *Green*, 617 F.3d at 240 (citation omitted); *see also Caldwell*, 760 F.3d at 276 (emphasizing that "under our system of justice, an accused is tried for *what* he did, not *who* he is"). Here, there is no doubt that evidence of Weinstein's prior fraud convictions is prejudicial. *See United States v. Vastola*, 670 F. Supp. 1244, 1263 (D.N.J. 1987) (explaining that "presenting evidence or even the mere fact of a prior felony conviction to a jury would be prejudicial"). The evidence is particularly prejudicial because Weinstein currently faces trial for the same crimes. *See United States v. Puco*, 453 F.2d 539, 542 (2d Cir. 1971) (finding that "[t]he potential for prejudice . . . is greatly enhanced where . . . the prior offense is similar to the one for which the defendant is on trial" (citations omitted)). The question before the Court, however, is not whether the evidence is prejudicial, but rather whether the probative value is "substantially outweighed" by "unfair prejudice."

"Evidence cannot be excluded under Rule 403 merely because its unfairly prejudicial effect is greater than its probative value. Rather, evidence can be kept out only if its unfairly prejudicial

effect 'substantially outweigh[s]' its probative value." *United States v. Bailey*, 840 F.3d 99, 119 (3d Cir. 2016) (finding that "when evidence is highly probative, 'even a large risk of unfair prejudice may be tolerable'" (quoting *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002))); *Haas*, 184 F. App'x at 235 (finding that "the more probative the evidence, the greater the degree of prejudice that can be tolerated"). Here, Weinstein's prior fraud convictions may have an unfairly prejudicial effect, but such prejudice does not substantially outweigh their probative value.

The Court finds *United States v. Sterritt*, 678 F. Supp. 3d 317 (E.D.N.Y. 2023) persuasive. In that case, a central misrepresentation that the government charged was "the alleged misrepresentation of [defendant's] identity in order to obscure his criminal conviction [of conspiracy to commit securities fraud] and the civil judgment resulting from [his previous scheme]." *Id.* at 338. The court admitted evidence of the defendant's prior conviction because "details of that conviction would have been of particular interest to . . . investors." *Id.* Similarly here, the Government alleges that Weinstein's identity was concealed from investors so that they would not know about his previous investor fraud convictions. (*See* Superseding Indictment 8.) This alleged misrepresentation is central to the Government's charged scheme and thus the probative value of evidence of Weinstein's prior convictions is not substantially outweighed by resulting prejudice. *See United States v. Stitsky*, 536 F. App'x 98, 106 (2d Cir. 2013) (finding that district court did not abuse its discretion by refusing to preclude evidence of prior conviction where it was "direct proof of the charged scheme to defraud [because] [p]art of the government's theory at trial was that defendants fraudulently induced victims to invest in [their company] by failing to disclose their leadership roles in the company *and* their prior convictions, facts that investors would have considered material in making their investment decisions"); *United States v. Peperno*, No. 21-287, 2022 WL 2231599, at *7 (M.D. Pa. June 21, 2022) (finding that defendant's prior

fraud conviction and restitution obligation was "highly probative of . . . money laundering charges" and was therefore not substantially outweighed by their undoubted prejudice).

Finally, the Court considers Weinstein's argument that the Court can allow evidence that Weinstein used an alias because he had large debt obligations or a bad reputation, without revealing the underlying offense or restitution judgment, as the court did in *United States v. Beckner*, No. 15-2218, 2024 WL 2880613 (D.N.M. June 7, 2024). (Weinstein's Reply Br. 26; Weinstein's MIL Br. 5, ECF No. 196.) The Government argues in opposition that sanitizing the convictions in this way "would create narrative gaps, unfairly weaken the strength of key evidence, and sow jury confusion." (Gov't's Opp'n Br. 75.) It argues that such evidence "weave[s] in discussion of Weinstein's prior convictions," which creates an evidentiary problem. (*Id.* at 76.) And finally, the Government contends that sanitizing the convictions would be confusing and weaken strong evidence because an investor may disregard a "bad reputation" but would not disregard a prior fraud conviction. (Gov't's MIL Reply Br. 10-11, ECF No. 232.)

The Court agrees with the Government that the *Beckner* approach is unworkable. It would minimize the probative value of Weinstein's prior fraud convictions that the Court articulated above. Merely stating that Weinstein had a bad reputation or owes large sums of money does not have the same probative value, and it does not prove the Government's specific allegations as alleged. (*See* Superseding Indictment 7-9.) The Government also represents that "[n]umerous recordings and WhatsApp chats" (Gov't's Opp'n Br. 76) somehow reference Weinstein's prior convictions, and the Court is cognizant that "[p]eople who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard." *Old Chief v. United States*, 519 U.S. 172, 189 (1997).

The Court, accordingly, finds that the probative value of Weinstein's prior fraud convictions is not "substantially outweighed" by the danger of unfair prejudice, and thus the evidence is admissible as to Counts One through Eight.[16] To mitigate prejudice, however, the Court will provide a limiting instruction to the jury to "circumscribe[] the purpose for which the jury c[an] consider the evidence." *Green*, 617 F.3d at 252; *United States v. Scarfo*, 41 F.4th 136, 181 (3d Cir. 2022) ("Limiting instructions are an appropriate way to ensure that a jury understands the purpose for which evidence of prior acts may be considered, and such instructions are generally sufficient 'to cure any risk of prejudice[.]'" (quoting *Zafiro*, 506 U.S. at 539)).

### b.    Counts Sixteen and Seventeen

With respect to Counts Sixteen and Seventeen, the Government first argues that the prior conviction evidence is admissible because it "establishes Weinstein's knowledge that he was vulnerable to prosecution and his intent to thwart the investigation."[17] (Gov't's Opp'n Br. 34.) Weinstein argues on reply that he "did not need his prior criminal justice experience to know that 'he was vulnerable to prosecution,'" in the instant case because he knew at that time that the Government had a warrant for his arrest. (Weinstein's Reply Br. 23 n.14.) The Government argues in the alternative that even if it was not admissible under Rule 404(b), Counts Sixteen and Seventeen are properly joined because they "are part of the same act or transaction." (Gov't's Opp'n Br. 34.)

---

[16] The Court will elaborate further on specific evidence of Weinstein's prior convictions in its forthcoming opinion regarding the parties' motions *in limine*. Notwithstanding these preliminary decisions, the parties will have the opportunity to make objections during the trial. Should the specific context in which the evidence is sought to be admitted at trial differ from the Government or Defendant's presentation in their respective motions, then the Court reserves the right to deviate from its preliminary decisions regarding the issues raised.

[17] The Government does not cite any cases to support this argument.

The Court finds that even if Weinstein's prior fraud convictions are not admissible under FRE 404(b), Counts Sixteen and Seventeen are still properly joined to the remaining counts. Charges are properly joined where they are part of the same "series of acts or transactions constituting an offense or offenses." *United States v. Somers*, 496 F.2d 723, 729 n.8 (3d Cir. 1974). Specifically, "[w]hen a defendant is charged with obstruction of justice . . . , it is proper to join the obstruction . . . offense with the underlying offense[] [to] which the obstructive conduct relates." *United States v. Hynson*, No. 05-576, 2009 WL 1674423, at *6 (E.D. Pa. June 11, 2009) (citing Moore's Federal Practice § 608.02[4][a] (3d ed.1997)), *aff'd*, 451 F. App'x 91 (3d Cir. 2011). Here, the obstruction of justice counts are related to the same series of events as Counts One through Fifteen, which deal with the alleged fraudulent scheme and concealment of Weinstein's identity and assets as it relates to that scheme. (*See generally* Superseding Indictment). Defendants further have not demonstrated "clear and substantial prejudice" in the event Counts Sixteen and Seventeen are tried jointly. *Davis*, 397 F.3d at 182 (citation omitted). Trying Counts Sixteen and Seventeen together with the remaining counts also "promote[s] economy of judicial and prosecutorial resources." *Gorecki*, 813 F.2d at 42. As such, the Court denies Weinstein's request to sever Counts One through Eight, Sixteen, and Seventeen from Counts Nine through Fifteen.

**C.    Motion for a Bill of Particulars**

*1.    Legal Standard*

An indictment is sufficient if it is "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1); *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007) ("[D]etailed allegations . . . are not contemplated by Rule 7(c)(1)."). Relatedly, pursuant to Rule 7(f), a "court may direct the [G]overnment to file a bill of particulars" when "an indictment's failure to provide factual or legal information

significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *United States v. Moss*, No. 19-701, 2021 WL 1196451, at *7 (D.N.J. Mar. 30, 2021) (quoting *United States v. DePaoli*, 41 F. App'x 543, 546 (3d Cir. 2002)). Rule 7(f) "does not require the United States Attorney to furnish a three[-]dimensional colored motion picture of the prosecution's proof prior to trial." *Caruso*, 948 F. Supp. at 395 (quoting *United States v. Calvi*, 830 F. Supp. 221, 222-23 (S.D.N.Y. 1993)). As such, a court should not grant a motion for a bill of particulars if its only use is to secure evidence pretrial. *Moss*, 2021 WL 1196451, at *7 ("[A]ccess to discovery weakens the case for a bill of particulars." (quoting *United States v. Atwell*, No. 13-0560, 2015 WL 2092687, at *5 (D.N.J. May 5, 2015)).

### 2.    *Analysis*

Weinstein asserts that the Government should be required to file a bill of particulars regarding Count Seven, the money laundering conspiracy, because he does not have enough information to (1) defend himself at trial; or (2) bring pretrial challenges. (Weinstein's Moving Br. 28-34.) The Court considers these arguments in turn.

### a.    **Superseding Indictment and Discovery**

First, Weinstein argues that he does not have enough information from the Superseding Indictment and discovery to defend himself at trial. (Weinstein's Moving Br. 28-31.) Specifically, he cannot "identify what transactions or types of transactions are implicated," and therefore "is simply unable to understand the money laundering conspiracy charged against him." (*Id.* at 30-31.) The Government argues in opposition that the charging documents, discovery, and other information provided by the Government provide sufficient information regarding Count Seven. (Gov't's Opp'n Br. 38-43.)

"[A] bill of particulars is not a general discovery device or a means of obtaining answers to questions the defendant may have." *United States v. Coburn*, 439 F. Supp. 3d 361, 387 (D.N.J. 2020). Moreover, "the bill 'is not designed to compel the [G]overnment to [submit a] detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial.'" *United States v. Delle Donna*, 552 F. Supp. 2d 475, 498 (D.N.J. 2008) (quoting *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980)), *aff'd in part sub nom.*, 366 F. App'x 441 (3d Cir. 2010). Rather, a bill of particulars will be granted where "an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir.1989).

Here, the Superseding Indictment details Weinstein and Bromberg's efforts to use money derived from the alleged fraud. (*See* Superseding Indictment 11-12, 13, 17.) The Court finds that "[t]he [Superseding] [I]ndictment is specific enough to permit . . . [Defendants] to conduct their own investigation." *United States v. Sourlis*, 953 F. Supp. 568, 578-79 (D.N.J. 1996) ("[W]hen discovery provided by the government fills in the outline of the indictment, the necessity for a bill of particulars declines." (citation omitted)). Even if the Superseding Indictment did not provide enough information, the Government has also provided Weinstein with a "vast trove of financial material" through discovery." (Weinstein's Moving Br. 30.) The Government has also provided Weinstein with "examples of categories of money laundering transactions" in response to his counsel's request for particulars. (Gov't's Opp'n Br. 39.) This additional information further undermines Weinstein's request for a bill of particulars because it provides additional detail about Count Seven and guidance for Weinstein to conduct his own search of the discovery. *See United States v. Parlavecchio*, 903 F. Supp. 788, 795-96 (D.N.J. 1995) (denying motion for a bill of

particulars where not only was the indictment itself sufficient, but the Government also "provided further information in response to [the defendant's] request").

### b.      Pretrial Challenges: Merger

Second, Weinstein argues that he does not have enough information to challenge the sufficiency of the charge at the pretrial stage; in particular to determine whether there is a merger issue. (Weinstein's Moving Br. 32-34.) The Government argues in opposition that Weinstein is not entitled to a bill of particulars because of a hypothetical, pretrial merger issue. (Gov't's Opp'n Br.  43-45). In his reply, Weinstein points to the Government's examples of alleged money laundering conspiracy transactions as themselves evidence of a potential merger issue. (Weinstein's Reply Br. 28-30.)

To address this argument, the Court reiterates the purpose of a bill of particulars: "to inform the defendant of the nature of the charges brought against him to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense." *United States v. Addonizio*, 451 F.2d 49, 63-64 (3d Cir. 1971) (quoting *United States v. Tucker*, 262 F. Supp. 305, 308 (S.D.N.Y. 1966)), *cert. denied*, 405 U.S. 936 (1972). While bringing pretrial motions to challenge the charges against a defendant constitutes part of his defense, Weinstein has cited no cases for the proposition that a bill of particulars should be granted to allow a defendant sufficient information to bring a merger challenge pretrial.[18] The Government has cited cases, albeit out of circuit, where courts find it premature to address a merger issue pretrial. (*See* Gov't's Opp'n Br. 44 (collecting cases).) Given that the Court has already found the Superseding Indictment, discovery, and additional disclosure

---

[18] As the Government notes, all of the cases that Weinstein cites to support his argument deal with motions made after trial. (*See* Gov't's Opp'n 44-45.)

from the Government sufficient to apprise Weinstein of the charges brought against him, the Court declines to grant a bill of particulars solely to address a potential merger issue at this juncture.[19] As such, Weinstein's motion for a bill of particulars as to Count Seven is denied.

### D.    Request for *Brady* Material

Weinstein requests that the Court order the Government to supplement its *Brady* disclosures with material from four separate out-of-district criminal investigations conducted by four other United States Attorney's Offices ("USAO") related to Curry and Joel Wittels ("Wittels")—two alleged co-conspirators and cooperators for the Government. (Weinstein's Moving Br. 34-36.) Weinstein contends that materials from those investigations are within the same agency, the Department of Justice ("DOJ"), as the Government, and therefore in the Government's possession for *Brady* purposes. (*Id.* at 34-36; Weinstein's Reply Br. 30-31.) In response, the Government argues that those investigations are "entirely unrelated" to the instant prosecution, and it has no obligation to search and review all files within the DOJ.[20] (Gov't's Opp'n Br. 45-53.)

Under *Brady v. Maryland*, the Government has an affirmative duty to disclose all potentially exculpatory evidence to the accused "where the evidence is material either to guilt or

---

[19] This holding of course in no way limits Weinstein from bringing a post-trial motion regarding merger.

[20] The Government explains that it asked the other U.S. District Attorneys to run search terms in their investigative files and has turned over the documents it received from that search. (Gov't's Opp'n Br. 47.) Some files could not be electronically searched, however, and so the Government provided Defendants with the contact information for Assistant United States Attorneys ("AUSAs") in case they wanted to speak further about the evidence. (*Id.*) The Government also sat in on two interviews where an AUSA from another district was present, and the Government already produced the documents from the individuals interviewed and states that it plans to produce the reports of those interviews. (*Id.* at 51-52.)

to punishment." 373 U.S. 83, 87 (1963). To that end, prosecutors must "learn of any favorable evidence known to the others acting on the government's behalf." *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 284 (3d Cir. 2016) (quoting *Strickler v. Greene*, 527 U.S. 263, 281 (1999)). The obligation ceases, however, if the "information [is] possessed by other government agencies that have no involvement in the investigation or prosecution at issue." *United States v. Merlino*, 349 F.3d 144, 154 (3d Cir. 2003) (quoting *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996)).

Here, Weinstein maintains that "[t]he DOJ is a single unit," and therefore "any known potential *Brady* [materials] within [the] possession of the DOJ must be disclosed to [Weinstein] promptly." (Weinstein's Moving Br. 35.) But Weinstein fails to cite any case to support this proposition or any case where the Government was ordered to produce *Brady* materials under analogous circumstances.[21] Without any supporting case law, the Court declines to order any *Brady* disclosures based on Weinstein's argument that the DOJ is a single unit. The Court will, however, analyze whether the Government has "constructive knowledge" of the other USAO's investigations or prosecutions such that it has a *Brady* obligation to search those materials.

Constructive knowledge includes "information possessed by other agents of the federal government when those agents are a part of a 'prosecution team,' which includes federal personnel involved in the investigation . . . [and] prosecution." *United States v. Reyeros*, 537 F.3d 270, 281 (3d Cir. 2008) (citing *United States v. Pelullo*, 399 F.3d 197, 216-18 (3d Cir. 2005)). To consider

---

[21] The cases that Weinstein cite are distinguishable from the instant facts. In *United States v. Gupta*, the Government and Securities and Exchange Commission ("SEC") engaged in a "joint investigation" where "the overwhelming bulk of witness interviews were jointly conducted." 848 F. Supp. 2d 491, 495 (S.D.N.Y. 2012). In *United States v. Martoma*, the Government and SEC were similarly involved in "joint fact-gathering." 990 F. Supp. 2d 458, 462 (S.D.N.Y. 2014) (quoting *Gupta*, 848 F. Supp. 2d at 494). Weinstein does not suggest a joint investigation or other significant joint fact-gathering here.

whether the Government has such "constructive knowledge," courts look to: (1) whether the party with knowledge is "acting on the [G]overnment's 'behalf' or is under its 'control'"; (2) the extent to which the party with knowledge and the Government are acting as "team" or participating in a "joint investigation"; and (3) whether the Government has "ready access" to the evidence. *Id.* at 282 (quoting *United States v. Risha*, 445 F.3d 298, 304 (3d Cir. 2006)).

Here, the Court finds that the Government does not have constructive possession over the investigative files or litigation materials of the other USAOs. Neither Weinstein nor the Government have provided any facts sufficient for the Court to find that the other USAOs were working on behalf of the Government or otherwise under its control. (*See generally* Weinstein's Moving Br. 34-36; Gov't's Opp'n Br. 45-53.) The circumstances also do not suggest that there is any "joint investigation." While the Government did sit in on two interviews with an AUSA from another district (Gov't's Opp'n Br. 51-52), there is no suggestion that there was any further coordination. The Government also does not have "ready access" to the other USAO's evidence, as demonstrated by the fact that it needed to ask the other USAOs to perform electronic searches on its behalf. (*Id.* at 47.) The Court is further persuaded that the Government does not have constructive knowledge because the subject-matter of the other districts' investigations are entirely separate from the instant prosecution. (*See* Gov't's Opp'n Br. 46-47 ("The [o]ther USAOs' investigations generally related to fraudulent orders for medical supplies, trafficking in stolen medical products or supplies, and fraudulent drug recalls.).) Given the disparate subject-matter, there is little incentive for the Government and other USAOs to engage in such a "joint investigation" or otherwise conduct their investigations such that they would be considered part of the same prosecution team.

The Court, accordingly, denies Defendants' request that the Court order the Government to supplement its *Brady* disclosures. To the extent the Government is aware of any potentially exculpatory material within its possession that has not already been disclosed to Defendants during discovery, this Court orders the Government to disclose that material to Defendants in a timely fashion, consistent with its obligations under *Brady*.

### E.     Bromberg's Motion to Dismiss Counts Nine Through Thirteen

Bromberg argues that the Superseding Indictment does not properly charge an offense in Counts Nine through Thirteen and therefore must be dismissed under Rule 12(b)(3)(B). (Bromberg's Moving Br. 17-30.) In particular, Bromberg contends that the Superseding Indictment "fail[s] to sufficiently allege facts that satisfy the essential elements of the false statements related charges set forth in Counts [Nine] through [Thirteen]." (*Id.* at 19.) The Government argues in opposition that it has satisfied the liberal pleading standard, and Bromberg's motion amounts to an impermissible challenge to the sufficiency of the Government's evidence. (Gov't's Opp'n Br. 53-62.) The Court agrees.

#### 1.     *Legal Standard*

A defendant may move to dismiss an indictment for "lack of specificity" or "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B). In the Third Circuit, an indictment is facially sufficient to warrant a trial on the merits if it:

> (1) contains the elements of the offense intended to be charged[;] (2) sufficiently apprises the defendant of what he must be prepared to meet[;] and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.

*United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007) (quoting *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989)). Accordingly, an indictment that recites the statutory language of the offense charged is adequate "so long as there is sufficient factual orientation to permit the

defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *Rankin*, 870 F.2d at 112; *see Resendiz-Ponce*, 549 U.S. at 109 ("[A]n indictment parroting the language of a federal criminal statute is often sufficient."); *but see Russell v. United States*, 369 U.S. 749, 765 (1962) ("Undoubtedly, the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." (citations omitted)). Yet, "such dismissals may not be predicated upon the insufficiency of the evidence to prove the indictment's charges." *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000); *see United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990) ("In considering a defense motion to dismiss an indictment, the district court accepts as true the factual allegations set forth in the indictment.").

### 2.    *Analysis – Counts Ten Through Thirteen*

#### a.    **Elements of the Offense**

Counts Ten through Thirteen charge Bromberg and Weinstein with false statements to and concealment of material facts from Probation under 18 U.S.C. §§ 2, 1001(a)(1), and 1001(a)(2). (*See* Superseding Indictment 38-39.) Sections 1001(a)(1) and 1001(a)(2) put forth the elements for the substantive offense, and Section 2 is the federal aiding and abetting statute.

To establish the substantive offense under 18 U.S.C. § 1001(a)(1), the Government must prove that the defendant: "(1) knowingly and willfully; (2) conceal[ed] and cover[ed] up by trick, scheme or device; (3) a material fact; (4) in any matter within the jurisdiction of a department or agency of the United States." *United States v. Menendez*, 137 F. Supp. 3d 688, 693 (D.N.J. 2015), *aff'd*, 831 F.3d 155 (3d Cir. 2016) (quoting *United States v. Rooney*, 37 F.3d 847, 855 (2d Cir. 1994)). To establish the substantive offense under 18 U.S.C. § 1001(a)(2), the Government must

prove: "(1) that [the defendant] made a statement or representation; (2) that the statement or representation was false; (3) that the false statement was made knowingly and willfully; (4) that the statement or representation was material; and (5) that the statement or representation was made in a matter within the jurisdiction of the federal government." *United States v. Moyer*, 674 F.3d 192, 213 (3d Cir. 2012) (citing *United States v. Barr*, 963 F.2d 641, 645 (3d Cir. 1992)). In effect, § 1001(a)(1) prohibits "concealment of material facts," whereas § 1001(a)(2) prohibits "false representations." *See United States v. Curran*, 20 F.3d 560, 566 (3d Cir. 1994). Both sections, however, require that the prohibited conduct was performed "knowingly and willfully." *Id.* at 567 (explaining that "[i]ntent, or *mens rea*, is a vital component of a section 1001 violation").

Although the Superseding Indictment charges both Bromberg and Weinstein with substantive violations under §§ 1001(a)(1) and 1001(a)(2), the Government clarifies in opposition to Bromberg's motion that it seeks to pursue an aiding and abetting charge against Bromberg. (Gov't's Opp'n Br. 59 ("[T]he Superseding Indictment properly alleges that Bromberg knowingly and willfully *aided and abetted* Weinstein's false statement [§ 1001(a)(2)] and concealment offenses [§ 1001(a)(1)] . . . ." (emphasis added)).) The Court, therefore, analyzes Counts Ten through Thirteen against Bromberg on the basis of aiding and abetting liability.

### b.    Aiding and Abetting: Knowledge

Bromberg argues that the Superseding Indictment fails to allege that Bromberg acted with knowledge or intent in relation to Weinstein's supervised release obligations. (Bromberg's Moving Br. 20-23.) Specifically, Bromberg argues that the Superseding Indictment does not allege that Bromberg knew: (1) about Weinstein's supervised release order; (2) the conditions of that order, including any reporting obligations; or (3) that Weinstein was even speaking to Probation. (*Id.* at 21.) The Government maintains that the Superseding Indictment contains numerous overt acts

36

that Bromberg took to conceal material facts for Weinstein concerning Weinstein's financial and business activities, and Bromberg's motion therefore merely challenges the sufficiency of that evidence. (Gov't's Opp'n Br. 57-58.)

To establish an aiding and abetting violation, the Government must prove: "(1) that the substantive crime has been committed; and (2) that the defendant charged with aiding and abetting knew of the commission of the substantive offense and acted with intent to facilitate it." *United States v. Stevens*, 70 F.4th 653, 661 (3d Cir. 2023) (emphasis omitted) (quoting *United States v. Petersen*, 622 F.3d 196, 208 (3d Cir. 2010)). Where the underlying substantive offense includes a particular *mens rea*, that same *mens rea* is an element of liability under § 2 because "[a]iding and abetting a crime has the exact same elements as the principal offense." *Id.* at 662 (quoting *United States v. Ali*, 991 F.3d 561, 574 (4th Cir. 2021)); *see also United States v. Roan Eagle*, 867 F.2d 436, 445 (8th Cir. 1989) (noting that "[a]iding and abetting is not a separate crime but rather is linked to the underlying offense and shares the requisite intent of that offense"). The Superseding Indictment must therefore sufficiently allege knowledge even under an aiding and abetting theory of liability under 18 U.S.C. § 2(a)[22] because the underlying substantive offense, § 1001, requires that the act be done "knowingly."[23] *See Curran*, 20 F.3d at 567 (explaining that "[i]ntent, or *mens rea*, is a vital component of a section 1001 violation").

---

[22] Under 18 U.S.C. § 2(a), "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

[23] Bromberg argues that the Superseding Indictment is insufficient because Counts Ten through Thirteen do not track the distinctive elements of the aiding and abetting statute. (Bromberg's Reply Br. 40-42.) But the Superseding Indictment need not track the language of the statue explicitly, as "aiding and abetting is implied in every federal indictment for a substantive offense." *United States v. Frorup*, 963 F.2d 41, 42 n.1 (3d Cir. 1992); *see also United States v. Forsythe*, 560 F.2d 1127, 1136 n.15 (3d Cir. 1977) (stating that "[t]he indictment must be read as if 18 U.S.C. [§] 2 were embodied in each count").

Here, the Superseding Indictment alleges that Weinstein "made numerous false statements to Probation about his income and financial accounts, which [Bromberg] aided and abetted by helping [Weinstein] open bank accounts and credit cards and purchase assets in the names of others." (Superseding Indictment 3; *id.* at 38 (Weinstein and Bromberg "knowingly and willfully falsified, concealed, and covered up by trick, scheme, and device a material fact and made materially false, fictitious, and fraudulent statements and representations . . . .").) It further alleges that "[Weinstein], [Bromberg], and others agreed to conceal [Weinstein's] unsanctioned business activities . . . from Probation."[24] (*Id.* at 33.) Taken together, these statements sufficiently allege that Bromberg acted "knowingly" with respect to Weinstein's allegedly false statements and concealment of material information to Probation. *See United States v. Huet*, 665 F.3d 588, 596 (3d Cir. 2012) (finding the indictment adequately set forth the required elements where it alleged that "[the defendant] knowingly aided and abetted" the commission of a substantive offense); *United States v. Kraselnick*, 702 F. Supp. 480, 486 (D.N.J. 1988) (finding that the indictment adequately stated a criminal offense under 18 U.S.C. §§ 2 and 1001 where the indictment alleged, *inter alia*, that the defendant "knowingly and willfully" conspired).

The Court also finds that the Superseding Indictment provides "sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *Rankin*, 870 F.2d at 112. The Superseding Indictment includes excerpts of recordings of meetings between co-conspirators, including Bromberg and Weinstein. (*See* Gov't's Opp'n Br. 58.) In these meetings, Weinstein mentions "Probation," that "one violation is problematic," and "needing to conceal [his] financial stake in [Saniton] from the 'feds'" because

---

[24] Counts Ten through Thirteen incorporate the allegations made in Count Nine for conspiracy. (Superseding Indictment 38.)

otherwise they will "claw back on every business deal that I'm [Weinstein] going through."[25] (Superseding Indictment 35-36.) These statements provide factual orientation for Bromberg's alleged knowledge by indicating, at a minimum, that Bromberg was generally aware that Weinstein was on supervised release.[26] *Cf. United States v. Starnes*, 583 F.3d 196, 213 (3d Cir. 2009) (noting that *mens rea* may be established through circumstantial evidence). As such, the Court is satisfied that Bromberg's motion amounts to an improper challenge "to the sufficiency of the evidence rather than the adequacy of the government's allegations." *United States v. Yalin Liu*, No. 16-42, 2018 WL 527942, at *3 (M.D. Pa. Jan. 24, 2018) (finding the allegations that "all defendants 'knowingly and intentionally' agreed to devise a scheme to defraud" sufficient to state a claim).

Moreover, the intent requirement of the aiding and abetting statute may also be "proven if a defendant voluntarily gives false information or participates in a plan such that it is *foreseeable* that false information will be used in statements made to a government agency in order to further the plan." *United States v. Beck*, 615 F.2d 441, 453 (7th Cir. 1980) (emphasis added). And as the Government correctly states, a defendant, therefore, need not make the false statements or

---

[25] The Superseding Indictment alleges that "[o]n or about August 26, 2022, during a meeting between [Weinstein], [Bromberg], Hattab, Curry, and Anderson . . . [s]peaking to [Bromberg] and then addressing the other [c]onspirators at the meeting, [Weinstein] said, "You've [Bromberg] seen my [bank] account? Believe me, just let me get off Probation guys." (Superseding Indictment 35.) At that same meeting, Weinstein allegedly said, "catch me in a lie . . . walk me straight where you want to, call Probation." (*Id.* at 36.) He further said, "What I say to you is please keep it discreet in this room, so I can help you – help you, help yourselves, because one violation is problematic." (*Id.*) "Later in the meeting, [Weinstein] again repeated: 'like I said, catch me in a lie, you can walk right into Probation.'" (*Id.*) At a meeting about four days later, Weinstein allegedly said, "Do you think the feds won't take Saniton away? . . .They absolutely will." (*Id.*) He also says, "They're gonna do a claw back on every business deal that I'm going through, every single investment." (*Id.*)

[26] The Government also represents that it "will present additional evidence at trial—including testimony from co-conspirators." (Gov't Opp'n Br. 61.)

omissions himself, know the details of the principal's illicit activities, or know the relevant laws to be guilty of aiding and abetting. (Gov't's Opp'n Br. 58-59 (citing *Beck*, 615 F.2d at 453).) Even if Bromberg was not aware of Weinstein's false statements or omissions, therefore, he may still be liable under the aiding and abetting statute if it was foreseeable that his actions concealing Weinstein's assets and business activity would have led to such false statements and omissions. *See United States v. Lozano*, 511 F.2d 1, 5 (7th Cir. 1975) (finding that "it was easily foreseeable" that a co-conspirator would conceal material information under 18 U.S.C. § 1001 despite "no direct proof that he was aware of the specific information called for or the exact responses [the co-conspirator] would make").[27]

The Court, therefore, denies Bromberg's motion to dismiss Counts Ten through Thirteen.

### 3.    *Analysis – Count Nine*

Count Nine charges Bromberg with conspiracy to make false statements to and conceal material facts from Probation under 18 U.S.C. § 371. (*See* Superseding Indictment 31-37.) The elements for a claim under the general conspiracy statute, 18 U.S.C. § 371, are: "(1) an agreement between two or more persons to achieve an unlawful goal; (2) the defendant intentionally joined the agreement, with knowledge of its objective; and (3) an overt act taken in furtherance of the conspiracy by a co-conspirator." *Scarfo*, 41 F.4th at 196 (quoting *United States v. Whiteford*, 676 F.3d 348, 357 (3d Cir. 2012)).

---

[27] Bromberg attempts to distinguish *Beck* and *Lozano* by arguing that those cases stand for the proposition that "some threshold of knowledge" is required to sustain a charge, and the Superseding Indictment does not allege that Bromberg knew any of the conditions of Weinstein's supervised release. (Bromberg's Reply Br. 46.) This argument, however, speaks to the sufficiency of the evidence. The Superseding Indictment must only "be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense." *Russell*, 369 U.S. at 765. The Superseding Indictment's allegations concerning the co-conspirators' discussions of Probation and the actions that Bromberg took to conceal Weinstein's assets (*see* Superseding Indictment 31-38) satisfy this low threshold.

To satisfy this standard, "each conspirator must have specifically intended that *some conspirator* commit each element of the substantive offense." *Ocasio v. United States*, 578 U.S. 282, 292 (2016) (explaining that a defendant must reach an agreement with the "specific intent that the underlying crime be committed" (emphasis omitted)). Here, the Court has already found that the Superseding Indictment has sufficiently alleged that Bromberg knowingly aided and abetted the underlying offense, and thus the Superseding Indictment properly alleges that Bromberg had the necessary "intent to facilitate [the underlying offense]." *Stevens*, 70 F.4th at 661. The Court therefore also denies Bromberg's motion to dismiss Count Nine. *See United States v. Giampa*, 904 F. Supp. 235, 271 (D.N.J. 1995) (denying motion to dismiss where the "[indictment] track[ed] the relevant statutory language of the crimes charged and include[d] sufficient facts to enable the [d]efendants to prepare their defense).

### F.      Bromberg's Motion for an Order Requiring the Government to Elect to Proceed on Either Count One or Count Nine on Grounds of Multiplicity

Having denied Bromberg's motion to dismiss Counts Nine through Thirteen, the Court addresses Bromberg's argument in the alternative that "the Government must elect either Count [One] or Count [Nine] to prove at trial because the charged conspiracies are multiplicitous." (Bromberg's Moving Br. 30.) In the alternative, Bromberg requests a pretrial evidentiary hearing "to assess the evidence that the Government intends to introduce to prove each alleged conspiracy and adjudicate his Double Jeopardy claim." (*Id.* at 34.) The Court considers this argument below.

#### 1.      *Legal Standard*

"[M]ultiplicity is the charging of a single offense in separate counts of the indictment. A multiplicitous indictment risks subjecting a defendant to multiple sentences for the same offense, an obvious violation of the Double Jeopardy Clause's protection against cumulative punishment." *United States v. Hodge*, 870 F.3d 184, 193 (3d Cir. 2017) (citation omitted). In the Third Circuit,

41

courts use a "totality of circumstances test" to evaluate a claim of multiplicity as to conspiracies. *United States v. Liotard*, 817 F.2d 1074, 1078 (3d Cir. 1987). Under this test, courts analyze four factors: (1) the place of the alleged conspiracies; (2) the temporal overlap of the alleged conspiracies; (3) the overlap of personnel between the alleged conspiracies; and (4) "the overt acts charged and the role played by the defendant according to the two indictments." *Id.* These factors need not be applied in a rigid manner, as "different conspiracies may warrant emphasizing different factors." *United States v. Travillion*, 759 F.3d 281, 295 (3d Cir. 2014) (quoting *United States v. Smith*, 82 F.3d 1261, 1267 (3d Cir. 1996)). The "ultimate inquiry" presented by such claims is "whether there are two agreements or only one." *Smith*, 82 F.3d at 1267; *Travillion*, 759 F.3d at 295 (explaining that the "ultimate purpose" is to determine whether "two groups of conspirators alleged by the government to have entered separate agreements are actually all committed to the same set of *objectives* in a single conspiracy"); *United States v. Mark*, 284 F. App'x 946, 949 (3d Cir. 2008) (explaining the reason for the totality of the circumstances test is because "it is the agreement which constitutes the crime, not the overt acts"). The Court considers these factors in turn.

  2. *Analysis*

    a. **Place of the Alleged Conspiracies**

  Bromberg contends that the alleged conspiracies both occurred "in the District of New Jersey, and elsewhere." (Bromberg's Moving Br. 33-34 (quoting Superseding Indictment 6, 32).) The Government opposes by maintaining that "virtually all of the relevant acts for Count [Nine] occurred in New Jersey," while "several important activities for Count [One] occurred outside New Jersey." (Gov't's Opp'n Br. 66.) Bromberg replies that the Government is wrong, as the allegations in Count Nine reference the August meetings in Pennsylvania, agreeing to conceal real

estate transactions in Morocco and Florida, and agreeing to conceal "unsanctioned business activities," which took place in Israel and Turkey. (Bromberg's Reply Br. 56.) The Court agrees with Bromberg that the place of the alleged conspiracies is largely overlapping because even though the locations are not explicitly referenced in Count Nine, they are referred to indirectly.

### b.    Temporal Overlap of the Alleged Conspiracies

Bromberg contends that there is "substantial" temporal overlap because "Count [One] allegedly occurred between July 2021 and July 2023 . . . while Count [Nine] allegedly occurred between January 2021 and July 2023." (Bromberg's Moving Br. 33.) The Government acknowledges some overlap, but it urges the Court that the difference in time frames is important because Count Nine is alleged to have started shortly after Weinstein was released from prison and went on for months before Count One began. (*See* Gov't's Opp'n Br. 64 n.16.) The Court acknowledges the time difference between the two conspiracies but finds that overall, this factor favors a finding of multiplicity because the time period of one conspiracy "is entirely subsumed with the period" of the other conspiracy. *United States v. Liotard*, 817 F.2d 1074, 1079 (3d Cir. 1987).

### c.    Overlap of Personnel

Bromberg contends that the personnel between the two conspiracies are the same. (Bromberg's Moving Br. 33.) Count One identifies Weinstein, Bromberg, Wittels, Anderson, Curry, Shlomo Erez ("Erez"), and Alaa Hattab ("Hattab"), and while Count Nine identifies Weinstein, Bromberg, "and others," the factual allegations underpinning Count Nine include Wittels, Anderson, Curry, Erez, and Hattab. (*Id.*) The Government argues that there are "vital distinctions" between the personnel because Curry, Anderson, and Hattab were not involved with Count Nine. (Gov't's Opp'n Br. 67.) Specifically, the Government maintains that Curry and

Anderson did not know until August 2022—halfway through the conspiracy—that Weinstein was not "Mike Konig," and that the only allegation concerning Curry, Anderson, and Hattab is their attendance at meetings in August 2022. (*Id.* at 68.)

The overlap of participants is relevant to a multiplicity analysis because "it helps determine whether the alleged conspirators . . . were committed to the same objectives and consequently were members of a single conspiracy." *United States v. Smith*, 82 F.3d 1261, 1269 (3d Cir. 1996). If the alleged conspiracies "are not interdependent or mutually supportive and . . . there are major participants in each conspiracy who lack knowledge of, or any interest in, the activities of the other, this factor weighs heavily in favor of a conclusion that two conspiracies exist." *Id.* The Court recognizes that co-conspirators do not need to be alleged by name to be considered a part of an alleged conspiracy. *See United States v. Rigas*, 605 F.3d 194, 215-16 (3d Cir. 2010) (noting the overlap of personnel where, even though family members were not specifically named in the second indictment, many allegations included "the Rigas family").

Here, there is undoubtedly overlap of personnel between the two conspiracies. Weinstein, Bromberg, Wittels, and Erez are alleged to have assisted in concealing Weinstein's assets throughout most of both conspiracies, but Curry, Anderson, and Hattab were not involved in the Count Nine conspiracy until later in 2022. (*See* Superseding Indictment 4-21, 31-37.) Overlap of personnel does not necessarily point to a single conspiracy, however, as "a party can be involved in more than one conspiracy at one time.". *United States v. Becker*, 892 F.2d 265, 268 (3d Cir. 1989). Since the Court finds overlap between personnel, it must look to the alleged overt acts and objectives of each conspiracy to determine whether these individuals were nonetheless engaged in two separate conspiracies.

### d.    Overt Acts and the Defendant's Role

Bromberg contends that there are "significant similarities between the conduct charged and the alleged overt acts in each conspiracy, including [Bromberg's] role." (Bromberg's Moving Br. 33.) Specifically, Bromberg points to factual allegations that he and Wittels concealed Weinstein's identity and roles in the deals, and the overt acts that Bromberg and Wittels opened the Optimus account in September 2021 and attended the meetings with co-conspirators in August 2022. (*Id.*) Most importantly, Bromberg contends that his role in both conspiracies was largely the same, as he agreed to conceal Weinstein's assets in both deals, and "the only difference is [Bromberg's] alleged intent in taking those actions." (*Id.* at 33-34.) The Government argues in opposition that Counts One and Nine contain "almost entirely discrete overt acts." (Gov't's Opp'n Br. 69 (noting that "[o]nly a single overt act is the same between the two Counts—that Bromberg and Wittels created and operated Optimus without putting Weinstein on the documents").)

The totality of the circumstances approach seeks to avoid "[u]ndue emphasis on the alleged overt acts," and instead requires courts "to look into the full scope of activities described and implied in the indictment[]." *United States v. Smith*, 82 F.3d 1261, 1268 (3d Cir. 1996). In both alleged conspiracies, Bromberg's role was largely to conceal assets on behalf of Weinstein. (*See* Superseding Indictment 4-21, 31-37.) The Government is correct, however, that the explicit overt acts alleged in Counts One and Nine are almost entirely different. (*Compare* Superseding Indictment 21-24, *with* Superseding Indictment 34-37.) But Bromberg is also correct that the other factual allegations surrounding Counts One and Nine have significant overlap. (*Compare* Superseding Indictment 4-21, *with* Superseding Indictment 31-37.) Regardless of the overlap between overt acts, however, "[p]roper weight must be given to consideration of whether the overt acts alleged in the first conspiracy charge were carried out in furtherance of the broad agreement

45

alleged in the second indictment or whether these acts were carried out in furtherance of a different agreement." *United States v. Liotard*, 817 F.2d 1074, 1078 (3d Cir. 1987) (citation omitted). The Court, therefore, considers this element neutral and turns to the objectives of these different alleged agreements.

### e.    Other Factors: Objectives of the Alleged Conspiracies

The Government argues that the objective of the conspiracy in Count One is "fundamentally different" than the conspiracy in Count Nine, and this fact "proves that there were two agreements, not one." (Gov't's Opp'n Br. 64.) Bromberg argues in reply that "a nuanced set of objectives does not negate the presence of a single conspiracy." (Bromberg's Reply Br. 52.)

The Superseding Indictment alleges that the goal of the conspiracy in Count One was for "[Weinstein] and [Bromberg], together with each other and others, to enrich themselves and their associates by soliciting and obtaining tens of millions of dollars of investors' funds through false and misleading pretenses, representations, omissions, and promises." (Superseding Indictment 7.) The Superseding Indictment alleges that the goal of the conspiracy in Count Nine was for "[Weinstein], aided by [Bromberg] and others, to make materially false and misleading statements and conceal from Probation [Weinstein's] unsanctioned business activities with [Bromberg] and others, including his unsanctioned financial accounts, credit card charges and monetary obligations, real estate transactions, and encumbrance and liquidation of interests in assets." (Superseding Indictment 33.)

Before beginning its analysis of the objectives of the alleged conspiracies, the Court is reminded that "[t]he ultimate purpose of the totality of the circumstances inquiry is to determine whether two groups of conspirators alleged by the government to have entered separate agreements are actually all committed to the *same set of objectives* in a single conspiracy." *United States v.*

*Smith*, 82 F.3d 1261, 1271 (3d Cir. 1996) (emphasis added); *United States v. Kurlander*, No. 11-315, 2012 WL 2263290, at *6 (D.N.J. June 14, 2012) (explaining that "[w]hether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy" (quoting *United States v. Rigas*, 605 F.3d 194, 208, 209 (3d Cir. 2010)).

The unique objectives of Count One include making misrepresentations to investors about deals, misappropriating investments for unauthorized purposes, and engaging in a Ponzi-like scheme. (*See* Superseding Indictment 4-21.) The unique objectives of Count Nine include keeping Weinstein's name off of assets in order to conceal them from Probation. (*See* Superseding Indictment 31-37.) The Court finds that these are "two different objectives and agreements, and hence two conspiracies." *United States v. Becker*, 892 F.2d 265, 268 (3d Cir. 1989); *United States v. Mark*, 284 F. App'x 946, 949 (3d Cir. 2008) (finding it "determinative that the conspiracies had different objectives" despite "significant overlap in the locations, time periods, and participants in the two conspiracies alleged"); *see United States v. Fumo*, No. 06-319, 2008 WL 1731911, at *4 (E.D. Pa. Apr. 10, 2008) (finding no multiplicity despite location and temporal overlap, as well as "identical" personnel because "the overt acts charged and the 'critical determination' of 'whether one agreement existed,' . . . show[ed] two separate conspiracies" (citation omitted)).

The Court is not persuaded by the one case that Bromberg cites to support his argument concerning objectives: *United States v. Menendez*, No. 23-490, 2024 WL 5103452, at *53 (S.D.N.Y. Dec. 13, 2024). On a post-trial motion for multiplicity, that court found, *inter alia*, that the government used much of the same evidence to prove both conspiracies, which weighed in favor of a finding of multiplicity. *Id.* Bromberg argues that the same logic applies here.

The Third Circuit, however, has adopted the totality of the circumstances test, rather than the same evidence test for evaluating conspiracies. *See Liotard*, 817 F.2d at 1078. The reason for

this shift is that "[i]t is the agreement which constitutes the crime, not the overt acts." *Id.* (citation omitted). Here, based on the different objectives of the two conspiracies, the Government will have to use different evidence to prove that Weinstein and Bromberg had an agreement to allegedly defraud investors and an agreement to conceal assets from Probation. *See United States v. Applewhaite*, 195 F.3d 679, 684 (3d Cir. 1999) (noting that conspiracy is a specific intent crime).

Having considered the totality of the circumstances, the Court denies Bromberg's motion for an order requiring the Government to elect to proceed on either Count One or Count Nine on grounds of multiplicity.[28]

## III.    **CONCLUSION**

For the reasons set forth above, Weinstein's Omnibus Pretrial Motion is denied. Bromberg's Omnibus Pretrial Motion is denied. The Court will enter an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[28] Bromberg may renew his motion concerning multiplicity post-trial if he is convicted and believes that the evidence demonstrates that Counts One and Nine were in fact multiplicitous. *See Menendez*, 2024 WL 5103452, at *153 (finding two conspiracies multiplicitous *after trial*, once all the evidence was presented).