**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ELIYAHU ("ELI") WEINSTEIN, a/k/a "Mike Konig," and ARYEH ("ARI") BROMBERG. | Criminal Action No. 24-128 (MAS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon the United States of America's (the "Government") and Defendants Eliyahu Weinstein ("Weinstein") and Aryeh Bromberg's ("Bromberg") (collectively, "Defendants") various motions *in limine*. (ECF Nos. 196, 197, 198.) The Government and Defendants separately filed oppositions (ECF Nos. 212, 213, 215), and replies (ECF Nos. 230, 232, 233). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b), which is applicable to criminal cases under Local Criminal Rule 1.1. The Court's findings are recited below. For the reasons set forth below, the Court grants in part, denies in part, and reserves in part.

## I.    BACKGROUND

The parties are intimately familiar with the factual background in this matter. The Court, therefore, will not recite any facts in this Memorandum Opinion.[1]

---

[1] For a complete recitation of background facts in this matter, the parties are directed to the Court's prior Opinions at ECF Nos. 154, 256.

## II.   LEGAL STANDARD

"District Courts have 'wide discretion in determining the admissibility of evidence under the Federal Rules [of Evidence].'"[2] *Supernus Pharm., Inc. v. Ajanta Pharma Ltd.*, No. 21-6964, 2023 WL 4866348, at *1 (D.N.J. July 31, 2023) (quoting *United States v. Abel*, 469 U.S. 45, 54 (1984)). "Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine [disputes] of fact, a motion *in limine* is designed to narrow the evidentiary issue for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). Importantly, "[e]vidence should not be excluded pursuant to a motion *in limine*, unless it is clearly inadmissible on *all* potential grounds." *Supernus*, 2023 WL 4866348, at *1 (second emphasis added) (quoting *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013)). "The movant bears the burden of demonstrating that the evidence is inadmissible on any relevant ground." *Id.* (internal quotation marks and citation omitted). In the event that evidence is deemed admissible or inadmissible, a trial court's *in limine* rulings are "subject to change [as] the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer" prior to trial. *Id.* (quoting *Luce v. United States*, 469 U.S. 38, 41-42 (1984)).

## III.   DISCUSSION

The Court's preliminary *in limine* rulings are recited below. The Court will address each motion in turn, beginning with the Government's motions, then moving to Weinstein's motions, and finishing with Bromberg's motions.

---

[2] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Evidence.

### A.    The Government's Motions *in Limine*

The Government brings twelve specific motions *in limine*. The Court will address each motion in turn.

#### 1.    *Motion to Find Certain Evidence Admissible*

The Government moves for a finding that six categories of evidence are admissible at trial as intrinsic to the charged offenses, or in the alternative, for non-propensity purposes under Rule 404(b): (1) concealed history evidence; (2) gambling evidence; (3) Turkish stock market evidence; (4) witness tampering evidence; (5) prison business evidence; and (6) Bromberg financial distress evidence. (Gov't's Moving Br. 6, ECF No. 198.) The Government additionally moves for a finding that two categories of evidence are admissible for only non-propensity purposes under Rule 404(b): (1) Weinstein alias evidence; and (2) consciousness of guilt evidence. (*Id.* at 7.)

##### a.    **Concealed History Evidence**

The Government seeks to find admissible the "Concealed History Evidence," which it describes as evidence that "Defendants and their co-conspirators concealed Weinstein's identity and two prior convictions for investment fraud from their victims to induce them to invest money." (*Id.* at 6.)

The Court has previously found that evidence of Weinstein's prior fraud convictions is intrinsic to Counts One through Eight, and their highly probative value is not substantially

outweighed by the danger of undue prejudice under Rule 403.[3] (*See* Feb. Mem. Op. 17-26, ECF No. 256.) At this time, therefore, the Court will set forth the specific evidence that the Government proposes to introduce:

> [(1)] judgments from Weinstein I and Weinstein II, [No.] 11-CR-701, ECF No. 203 & copy signed by Weinstein on February 3, 2021, [No.] 14-CR-219, ECF No. 93;
>
> [(2)] the February 24, 2021 consent order modifying the terms of Weinstein's supervised release, [No.] 11-CR-701, ECF No. 220;
>
> [(3)] the December 15, 2022 report filed by Weinstein's [United States Probation Office ("Probation")] Officer with the Court, [No.] 14-CR-219, ECF No. 93; and
>
> [(4)] records from Probation and the Clerk's Office concerning how much Weinstein had paid in restitution in Weinstein I and II before being arrested in this matter.

(Gov't Reply Br. 4-5, ECF No. 232 (footnote omitted).) The Government provided redacted versions of these documents, which redact information concerning the length of Weinstein's term

---

[3] The Concealed History Evidence is also admissible as to Bromberg, who argues that it is not admissible as to him under Rules 401, 403, and 404 because it is not relevant, it is highly prejudicial, and it constitutes guilt-by-association evidence. (Bromberg's Moving Br. 34-43, ECF No. 197; Bromberg's Opp'n Br. 4-14, ECF No. 213.) The Concealed History Evidence, however, is also intrinsic as to Bromberg, who is also alleged to have concealed Weinstein's identity from investors and his assets and business dealings from Probation. (*See* Superseding Indictment 4-39; Feb. Mem. Op. 17-26.) The Rule 403 analysis in the Court's previous opinion equally applies to Bromberg, and there may even be less prejudice against Bromberg because, as the Government notes, "[the jury] will not hear any evidence that Bromberg was involved in Weinstein's prior crimes." (Gov't Opp'n Br. 78, ECF No. 215; Feb. Mem. Op. 22-26.) Precisely because the jury will hear no evidence that Bromberg was involved in the prior crimes, the Court finds that it is not improper guilt-by-association evidence. (*See* Gov't Opp'n Br. 78, ECF No. 215.) But the Court does caution the Government to avoid any arguments which may imply or insinuate guilt by association.

of imprisonment and any risk of flight.[4] (*Id.* at 4.) Recognizing the inherent prejudice in Weinstein's prior fraud convictions, the Court will provide a limiting instruction to the jury to "circumscribe[] the purpose for which the jury c[an] consider the evidence."[5] *United States v. Green*, 617 F.3d 233, 252 (3d Cir. 2010); *see United States v. Sriyuth*, 98 F.3d 739, 748 (3d Cir. 1996) (trusting the jury to "compartmentalize the evidence and consider it for its proper purposes" in light of trial court's limiting instruction).

### b. Gambling Evidence

The Government seeks to find admissible "Gambling Evidence," which it describes as evidence that "Weinstein gave millions of dollars of investor money to others to gamble for him at casinos and walked away with hundreds of thousands of dollars in cash, which he failed to report to Probation." (Gov't's Moving Br. 21-22.) The Government contends that the Gambling Evidence is intrinsic to Counts One through Eight, Eleven, and Twelve, or alternatively admissible under Rule 404(b) to show motive and the relationship between Weinstein and Alaa Hattab ("Hattab"). (*Id.* at 26-27.) Finally, the Government argues that Gambling Evidence does not risk "*unfair prejudice*" given its high probative value. (*Id.* at 23-27.)

---

[4] The parties are directed to meet and confer to propose a joint set of redactions to the documents listed above for their potential admission at trial. The parties are also to meet and confer about the evidence that the Government intends to use to "prove that Weinstein did not disclose any additional bank or investment accounts in connection with his prior matters," which it proposes to do "through either a heavily redacted version of the PSRs or, if Weinstein agrees, a stipulation." (Gov't's Moving Br. 5.) The Court's ruling was and remains preliminary, and it reserves ruling on the specifics of what evidence of Weinstein's prior fraud convictions may be admitted into evidence.

[5] Weinstein argues that "[n]o limiting instruction could truly ensure that jurors cabin what they know without using [Weinstein's] prior convictions as propensity in weighing the evidence." (Weinstein's Opp'n Br. 13.) But "[l]imiting instructions are an appropriate way to ensure that a jury understands the purpose for which evidence of prior acts may be considered, and such instructions are generally sufficient 'to cure any risk of prejudice.'" *United States v. Scarfo*, 41 F.4th 136, 181 (3d Cir. 2022) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).

While Weinstein does not dispute whether the Gambling Evidence is intrinsic to Counts One through Eight, Eleven, and Twelve, he does argue that the Government should only be permitted to introduce such evidence "if the [G]overnment can trace the origin of the funds to [Optimus Investments, Inc. ("Optimus")] and [Tryon Management Group LLC ("Tryon")] investors."[6] (Weinstein's Opp'n Br. 22, ECF No. 212.) Weinstein also argues that the Gambling Evidence is unduly prejudicial under Rule 403 because such evidence could be "shocking" to the jury. (*Id.* at 23-24.) In reply, the Government maintains that Weinstein's argument "is largely moot because the Government intends to show that Weinstein misappropriated investor money for gambling." (Gov't's Reply Br. 15.) Even if the Gambling Evidence does not involve exclusively investor funds, the Government argues that comingling of investor and non-investor money is still relevant and admissible to prove the fraud. (*Id.* at 15-16.)

The Court agrees with the Government that the Gambling Evidence is intrinsic to the securities fraud and wire fraud charges in Counts One through Six to show that there was a "misrepresentation or omission of material facts in connection with the purchase or sale of a securit[y]." *United States v. Eisenberg*, 773 F. Supp. 662, 721, 724 (D.N.J. 1991) (explaining that "wire fraud statutes . . . are violated when misrepresentations or omissions of material fact are made"). The Gambling Evidence is also intrinsic to the money laundering charges in Counts Seven and Eight because it tends to show that Weinstein attempted to engage in a monetary transaction with unlawfully derived funds exceeding $10,000, *United States v. Caruso*, 948 F. Supp. 382, 390

---

[6] Bromberg notes that the gambling evidence does not seem to relate to him, but he joins Weinstein's arguments to the extent it does apply. (*See* Bromberg's Opp'n Br. 20.) The Government has represented that it "does not intend at this juncture to offer evidence that Bromberg knew Weinstein gave others money to gamble for him at casinos" at the time of the briefing. (Gov't's Reply Br. 15 n.8.) As such, the Court denies this request as moot as against Bromberg.

(D.N.J. 1996) (citation omitted), and that Weinstein "participated in financial transactions knowing that they were designed . . . to conceal the nature, location, source, ownership, or control of the money." *United States v. Richardson*, 658 F.3d 333, 340 (3d Cir. 2011). The Gambling Evidence is intrinsic to Counts Eleven and Twelve because it demonstrates that Weinstein had income that he did not report to Probation. *United States v. Harra*, 985 F.3d 196, 211 (3d Cir. 2021) (explaining that to prove a claim under 18 U.S.C. § 1001 "the Government must prove a statement was false beyond a reasonable doubt"). The Court also finds that the Government may introduce Gambling Evidence involving commingled funds for the money laundering charge. *United States v. Fallon*, 61 F.4th 95, 118 (3d Cir. 2023) (explaining that transactions "designed to conceal, such as a deliberate commingling of illicit and lawful funds, can form the basis of a money laundering charge"). As to Counts Eleven and Twelve, any income that Weinstein had but did not report to Probation would constitute evidence of a violation of 18 U.S.C. § 1001, so the Government does not necessarily need to show that the money originated from Optimus or Tryon investors.

Under Rule 403, the probative value of the Gambling Evidence is not substantially outweighed by a danger of undue prejudice. Because this evidence is intrinsic, it is highly probative of the fact that Weinstein misappropriated money, that he intended to conceal money, and that he did not report income to Probation. The Gambling Evidence may be shocking to the jury, but "Rule 403 does not provide a shield for defendants who engage in outrageous acts." *United States v. Cross*, 308 F.3d 308, 325 (3d Cir. 2002); *see United States v. Berry*, 732 F. App'x 127, 132 (3d Cir. 2018) (noting that "[w]hile the jury may have inferred immorality from [defendant's] frequent gambling, any such prejudice did not 'substantially outweigh' the probative value of such records" (citation omitted)). The Court, accordingly, grants the Government's motion to find the Gambling Evidence admissible.

### c.    Turkish Stock Market Evidence

The Government seeks to find admissible "Turkish Stock Market Evidence," which it describes as evidence that Weinstein took money from investors and invested it in a "stock market manipulation scheme in Turkey."[7] (Gov't's Moving Br. 28-29.) The Government argues this evidence is intrinsic to the fraud and money laundering charges, or alternatively admissible under Rule 404(b) to show motive and provide background information. (*Id.* at 29-30.)

Weinstein does not argue whether the Turkish Stock Market Evidence is intrinsic, but rather argues that such evidence is only relevant if it is traceable to investors. (Weinstein's Opp'n Br. 24.) He also requests that the Government be precluded from eliciting testimony that the Turkish stock market scheme was manipulative or otherwise improper because the Government has provided "no evidence of abusive investment practices."[8] (*Id.* at 24-25.)

Because the parties do not dispute whether the Turkish Stock Market Evidence is intrinsic, the Court addresses whether the Government should be precluded from eliciting testimony that the scheme was manipulative or otherwise improper.[9] On reply, the Government submitted evidence that the scheme did in fact have a manipulative purpose.[10] (*See* Gov't's Reply Br. 20.) The

---

[7] Specifically, the Government seeks to admit a "recording of an August 26, 2022 meeting in which Weinstein admits to Anderson and Curry, "I put the two and a half million dollars in a stock play, with a bunch of partners." (Gov't's Moving Br. 29.)

[8] Bromberg notes that the Turkish stock market evidence does not seem to relate to him, but he joins Weinstein's arguments to the extent it does apply. (*See* Bromberg's Opp'n Br. 20.)

[9] The Court rejects Weinstein's arguments that the Turkish Stock Market Evidence must be traceable to investor funds for the same reasons articulated above regarding the Gambling Evidence.

[10] The Government provided a voice note from Hattab to Weinstein stating, "You gamble on things, which is good, but you're gambling on a [expletive] – a scam in Turkey. This- this- this, uh [expletive] bonds thing, the stock market thing. You know what it is- it's manipulation." (Gov't's Reply Br. 20.) Weinstein replied to the voice note, "I listened and agree." (*Id.*)

Government is not required "to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone." *United States v. Cross*, 308 F.3d 308, 325 (3d Cir. 2002) (quoting *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998)). This evidence may have a prejudicial effect, but given the Government's evidence of such manipulation, it does not substantially outweigh its probative value. The Court may offer a limiting instruction to offset any prejudice. *United States v. Scarfo*, 41 F.4th 136, 181 (3d Cir. 2022) (noting that limiting instructions "are generally sufficient 'to cure any risk of prejudice'" (quoting *Zafiro*, 506 U.S. at 539)). The Court, accordingly, grants the Government's motion to find the Turkish Stock Market Evidence admissible.

### d.    Witness Tampering Evidence

The Government seeks to find admissible "Witness Tampering Evidence," which it describes as evidence that Weinstein told Hattab not to come to the United States from Canada because the Federal Bureau of Investigation ("FBI") was at Weinstein's home. (Gov't's Moving Br. 31.) Weinstein contends that "many of these allegations are the subject of Count Seventeen," and "[t]o the extent they are the subject of a charge against [Weinstein], whether or not they are admissible under Rule 404(b) is moot." (Weinstein's Opp'n Br. 26.)

Because the Witness Tampering Evidence would "directly prove[] the charged offense" in Count Seventeen, it is intrinsic evidence. *United States v. Williams*, 974 F.3d 320, 357 (3d Cir. 2020) (quoting *United States v. Green*, 617 F.3d 233, 248-49 (3d Cir. 2010)). It also passes the Rule 403 balancing test because any potential prejudice would not substantially outweigh its high probative value. Contrary to Weinstein's argument that this motion should be denied as moot, the evidence is admissible and necessary for the Government to prove Count Seventeen. *See United States v. Vetri*, No. 15-157, 2017 WL 11368300, at *2 (E.D. Pa. Nov. 22, 2017), *aff'd sub nom.*,

*United States v. Vandergrift*, 801 F. App'x 869 (3d Cir. 2020) (admitting evidence that was intrinsic and "necessary to prove" the elements of the charge). The Court therefore grants the Government's motion to find the Witness Tampering Evidence admissible.

### e.        Prison Business Evidence

The Government seeks to find admissible "Prison Business Evidence," which it describes as evidence that Weinstein told Christopher Anderson ("Anderson") and Richard Curry ("Curry") that he did "millions of dollars of business while in prison," and ended up with "substantial cash and assets in other people's names." (Gov't's Moving Br. 32.) The Government contends that Weinstein told Anderson and Curry about this prison business to give them the impression he could pay back their investors' money and therefore stop them from reporting Weinstein's alleged fraud to Probation, the FBI or other authorities. (*Id.*)

Weinstein argues in opposition that any evidence of his prior incarceration presents a risk of undue prejudice, and that it is unnecessary for the Government to mention prison to present evidence that Weinstein tried to assuage Anderson and Curry by telling them that he had sufficient money to pay them back.[11] (Weinstein's Opp'n Br. 16-17.)

It is uncontested that Weinstein's attempts to assuage Anderson and Curry by telling them that he has sufficient assets to pay them back is relevant and probative to Counts Fourteen (Conspiracy to Obstruct Justice) and Fifteen (Obstruction of Justice). The Court, therefore, focuses on undue prejudice, as evidence that a defendant has been incarcerated is undoubtedly prejudicial. *See United States v. Upia-Frias*, 422 F. App'x 78, 82 (3d Cir. 2011) (noting the jury "taint of associating the defendant with being a prisoner"). As such, the Court agrees with Weinstein that it

---

[11] Bromberg notes that the Prison Business Evidence does not seem to relate to him, but he joins Weinstein's arguments to the extent it does apply. (*See* Bromberg's Opp'n Br. 20.)

is unnecessary for the Government to mention prison when presenting this evidence. The prejudice can be minimized by sanitizing the evidence to omit any reference to the fact that Weinstein acquired the cash and assets while incarcerated. *See United States v. Salzano*, No. 22-690, 2024 WL 866885, at *14 (D.N.J. Feb. 26, 2024) (recognizing that "proper sanitation of [evidence] to remove all references to and identifiers of incarceration" can minimize prejudice). The Court, accordingly, grants in part and denies in part the Government's motion to find admissible the Prison Business Evidence. It must exclude any reference to Weinstein's incarceration when presenting such evidence.

### f.        Bromberg Financial Distress Evidence

The Government seeks to find admissible "Bromberg Financial Distress Evidence," which includes that "Bromberg lied to Curry and Anderson about his assets and efforts to liquidate them in an attempt to convince them not to go to federal authorities," including millions of dollars in real estate in the Bronx and Brooklyn and that he had loaned to his father's yeshiva. (Gov't's Moving Br. 36.) The Government additionally seeks to admit evidence that Bromberg was in financial distress when he joined the conspiracy, including that: (1) Bromberg was unemployed, relied on family and friends to support him, and the bank initiated foreclosure on his home; (2) Weinstein promised to help Bromberg pay down his mortgage around the time he asked Bromberg to help him raise money for his deals; (3) Bromberg told his assistant at Optimus he could avoid foreclosure after starting Optimus; and (4) "Bromberg deposited or caused to be deposited" over $1.8 million of funds from Optimus and Tryon into a separate company and used it to pay for personal expenses and make mortgage payments. (*Id.*) The Government argues that this evidence is intrinsic to the obstruction of justice charges in Counts Fourteen and Fifteen or

alternatively admissible under Rule 404(b) to show motive. (*Id.* at 37-39.) In either case, the Government contends that this evidence is not unduly prejudicial. (*Id.*)

Bromberg argues in opposition that this evidence is extrinsic because the fact that Bromberg was unemployed, received money from friends or family, or was behind on mortgage payments is not direct proof that he engaged in a scheme or otherwise defrauded or made false statements. (Bromberg's Opp'n Br. 16-17.) Bromberg further argues that even if the evidence is admissible under Rule 404(b) for motive, it fails Rule 403's balancing test because financial distress evidence will invite the jury's inappropriate "class bias" and runs the risk of evoking "strong adverse" emotions. (*Id.* at 18-19.) Finally, Bromberg argues that introducing the Bromberg Financial Distress Evidence will require an impermissible mini-trial on whether Bromberg was destitute and whether he received financial support from his family. (*Id.* at 19-20.)

The Court finds that the evidence that Bromberg lied to Anderson and Curry about his assets, including real estate and an investment in his father's yeshiva, is intrinsic to Counts Fourteen (Conspiracy to Obstruct Justice) and Fifteen (Obstruction of Justice). Similar to the Government's arguments concerning whether Prison Business Evidence was intrinsic, the Government states that Bromberg tried to prevent Anderson and Curry from going to federal authorities by promising them that he had money to pay them back with millions of dollars in property that he was going to liquidate. (Gov't Moving Br. 37.) This evidence directly proves an element of obstruction of justice; namely, that Bromberg attempted to "corruptly persuade[]," or "to bribe [Anderson and Curry] to withhold information" from federal authorities. *United States v. Farrell*, 126 F.3d 484, 488 (3d Cir. 1997).

The Court finds the evidence that Bromberg was in financial distress when he joined the conspiracy admissible under Rule 404(b) to show motive. While the Third Circuit has cautioned

against admitting evidence of a defendant's financial status, "the special nature of the crime charged may justify the use of evidence of financial embarrassment in order to show the accused's knowledge and motive, as where one is charged with embezzlement or similar financial misconduct." *U.S. ex rel. Mertz v. State of N.J.*, 423 F.2d 537, 541 (3d Cir. 1970) (citations omitted). Here, Bromberg is charged with financial misconduct—securities fraud, wire fraud, and money laundering—which justifies the admissibility of evidence showing Bromberg's financial distress at the time of the fraud. Despite some minor risk of "class bias" or other adverse emotions from the jury, the Court does not find that the highly probative value of either form of Bromberg Financial Distress Evidence is outweighed by undue prejudice. *United States v. Shelow*, No. 10-0037, 2011 WL 6130974, at *7 (E.D. Pa. Dec. 9, 2011) (allowing the government, in a wire fraud prosecution, to introduce evidence of the defendant's financial status during the period of the fraud). The Court, accordingly, grants the Government's motion and finds the Bromberg Financial Distress Evidence admissible.

### g.      Weinstein Alias Evidence

The Government seeks to find admissible evidence that Defendants and others used aliases for Weinstein in addition to "Mike Konig." (Gov't Moving Br. 39-41.) Weinstein argues that the Court should deny the Government's motion because it has not provided sufficient information or context for the Court to make a ruling. (Weinstein's Opp'n Br. 25-26.) Bromberg joins Weinstein's argument and further argues that: (1) there is no allegation that Bromberg used such aliases in the Superseding Indictment; and (2) "the Government does not identify how or when these aliases were used." (Bromberg's Opp'n Br. 20.) The Court agrees with Defendants that it does not have sufficient detail about how, when, to whom, and in what context Defendants allegedly used the aliases that the Government seeks to admit and therefore denies this request.

###### h.    Weinstein Consciousness of Guilt Evidence

The Government seeks to find admissible consciousness of guilt evidence under Rule 404(b) in the form of testimony from Shlomo Erez ("Erez"). (Gov't's Moving Br. 41-44.) The Government expects this evidence to include that: (1) Weinstein and Erez were both housed at Monmouth County Jail for about three months after their arrest and before Erez was released; (2) Weinstein tried to speak with Erez "to coordinate a false narrative"; (3) Weinstein tried to obtain $1 million for Erez's bail, and when Erez asked him not to, Weinstein became nervous Erez may have cooperated; (4) upon Erez's release, he told Weinstein that he was not cooperating, but Weinstein became upset anyway; (5) Weinstein told Erez that people who turned against him in his previous case "suffered mysterious and premature deaths," including a lawyer and a judge; and (6) "Erez believed Weinstein was threatening him that if [he] cooperated with the Government, bad things would happen to him." (*Id.* at 41-42.) The Government argues that this testimony is admissible under Rule 404(b) to show consciousness of guilt and is not unduly prejudicial. (*Id.* at 42-43.)

Weinstein argues in opposition that this evidence amounts to uncharged obstruction of justice conduct. (Weinstein's Opp'n Br. 26.) He further argues that there are no allegations of violence or attempted violence in this case or in Weinstein's criminal history, and the Government's attempt to admit vague threats of violence would significantly and improperly prejudice the jury against Weinstein. (*Id.* at 27-28.) In particular, references to "mysterious and premature deaths" are too attenuated to constitute threats, but rather constitute improper attempts to prejudice Weinstein with allegedly violent obstruction of justice.[12] (*Id.*) The Court agrees.

---

[12] Bromberg notes that the consciousness of guilt evidence does not seem to relate to him, but he joins Weinstein's arguments to the extent it does apply. (*See* Bromberg's Opp'n Br. 20.)

Weinstein's alleged statements to Erez about "mysterious and premature deaths" in his previous case are too attenuated to constitute consciousness of guilt evidence under Rule 404(b). *See United States v. Berrios*, 676 F.3d 118, 130-31 (3d Cir. 2012), *abrogated on other grounds by Lora v. United States*, 599 U.S. 453 (2023) (finding evidence inadmissible under Rule 404(b) where the connection between the statement and consciousness of guilt was too attenuated). Rather, this evidence, as Weinstein notes (*see* Weinstein's Opp'n Br. 27-28), is more similar to uncharged obstruction of justice. Even if the Court found this evidence admissible under Rule 404(b), the slight probative value of such statements is substantially outweighed by its undue prejudice. As Weinstein notes, this is a "purely white collar, financial case"; Weinstein is not on trial for any violent crimes. (Weinstein's Opp'n Br. 28.) Admitting this evidence would unduly prejudice Weinstein by attributing potential violent action to him based on vague potential threats. *See United States v. Blunt*, 930 F.3d 119, 126 (3d Cir. 2019) (explaining that "descriptions of threatened and actual violence clearly would tend to elicit an inappropriate emotional response from the jurors, resulting in unfair prejudice"). As such, the Court denies the Government's motion as to consciousness of guilt evidence.

### 2. Motion to Preclude Weinstein from Challenging Validity of Prior Convictions

The Government seeks to preclude Weinstein from "relitigating any aspect of his prior convictions at trial" and from "presenting any evidence of or referencing his presidential commutation at trial." (Gov't's Moving Br. 44.) In support, the Government argues that: (1) the final judgment rule prevents Weinstein from relitigating his prior convictions; (2) because the Government seeks to admit these prior convictions to show that Weinstein hid them from investors, their legal validity is irrelevant; and (3) Weinstein has never professed innocence of the crimes, so his guilty plea would be sufficient under Rule 404(b)'s preponderance of the evidence standard.

(*Id.* at 44-48.) Finally, the Government argues that Weinstein's commutation is irrelevant because he did not receive a full pardon, and his convictions, terms of supervised release, and restitution obligations remain in full force. (*Id.* at 47.)

Weinstein argues in opposition that if his prior convictions are admitted, he should be permitted to provide contextualizing evidence, including evidence of his presidential commutation and the reasoning surrounding it. (Weinstein's Opp'n Br. 18-19.) Weinstein contends that his sentence was commuted because of "the circumstances of the pleas in his prior cases," including alleged judicial misconduct laid out in Weinstein's previous *habeas corpus* petition. (*Id.* at 18-20.)

The Court finds that the circumstances surrounding Weinstein's prior convictions and his commutation are not relevant under Rule 401. As this Court has previously discussed at length, Weinstein's prior fraud convictions are intrinsic to the charged investor fraud "to prove and contextualize the material misrepresentations and omissions that were made as to Weinstein's identity and involvement in Optimus and the alleged fraud." (Feb. Mem. Op. 20.) The circumstances surrounding Weinstein's prior fraud convictions do not have "*any tendency* to make [the fact that Weinstein did not tell investors about his true identity and existence of the prior convictions] more or less probable than it would be without the evidence." Fed. R. Evid. 401. Weinstein previously filed an appeal that was unsuccessful, *see generally United States v. Weinstein*, 658 F. App'x 57, 63 (3d Cir. 2016), and a since-withdrawn habeas corpus petition, *Weinstein v. United States*, No. 18-5575, ECF No. 1. Here, allowing Weinstein to introduce the circumstances of his previous convictions would effectively amount to a collateral attack on those convictions.

In general, courts do not allow collateral attacks to a prior conviction where "the defendant previously attacked his prior conviction without success." *United States v. Schweitzer*, No. 95-200,

2010 WL 2649898, at *2 (E.D. Pa. June 30, 2010) (citing *Daniels v. United States*, 532 U.S. 374, 382 (2001)). The Court sees no reason to stray from this general rule where the circumstances surrounding Weinstein's prior convictions are not relevant and could cause undue delay, as well as mislead and confuse the jury as to the ultimate factual issue. The Court, accordingly, grants the Government's motion to preclude Weinstein from challenging the validity of his prior convictions.

### 3.    *Motion to Exclude Certain Evidence Regarding Victims*

The Government seeks to preclude evidence that "investors of Optimus or Tryon were negligent, gullible, or insufficiently vigilant for investing in Optimus or Tryon or for failing to discover the Defendants' fraudulent scheme." (Gov't's Moving Br. 48.) Bromberg represents that he will not argue that investors were negligent.[13] (Bromberg's Opp'n Br. 21-22.)

The Third Circuit has clearly stated that "[t]he negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct." *United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995). Accordingly, Defendants shall not introduce evidence of victim negligence, and this motion is granted.

### 4.    *Motion to Exclude Evidence and Claims that Defendants Intended to Repay Victims*

The Government seeks to preclude evidence and claims that Defendants intended to repay victims. In support, the Government argues that the evidence is irrelevant and will be confusing to the jury. (Gov't's Reply Br. 35-37.) Particularly, the Government contends that "the crime of wire fraud does not require proof that the Defendants intended to permanently deprive their victims of their money or property." (Gov't's Moving Br. 49.) Bromberg argues in opposition that evidence related to attempts to repay investors is relevant because it "may be probative of the fact that

---

[13] Weinstein joins Bromberg's argument. (Weinstein's Opp'n Br. 35.)

Defendants lacked the requisite fraudulent intent *in the first instance*."[14] (Bromberg's Opp'n Br. 22.) He intends to introduce evidence that "he believed in the veracity of each deal for which he raised investor capital" and that his subsequent attempts to repay investors is consistent with that good faith belief and inconsistent with any intent to defraud. (*Id.* at 22.)

The Third Circuit has "never held that evidence of repayment is relevant when considering a person's intent to defraud another." *United States v. Lucas*, 709 F. App'x 119, 123 (3d Cir. 2017) (noting that several sister courts have "squarely rejected" this proposition). Here, the fact that Bromberg may have intended to repay investors "is irrelevant to the fact of whether he intended to induce [investors] to give him a loan under false pretenses, which is harm enough." *See id.* The Court, accordingly, grants the Government's motion to preclude Defendants from introducing evidence and claims that Defendants intended to repay victims.

### 5.    *Motion to Exclude Claims Regarding Presence of Attorney*

The Government seeks to exclude claims that the presence of an attorney is relevant to Defendants' intent absent a formal advice of counsel defense. (Gov't's Moving Br. 53-58.) It argues that Defendants may not bring a formal advice of counsel defense because they have failed to notify the Government of their intent to pursue such a strategy. (*Id.* at 53, 56-57.) Ultimately, the Government argues that Bromberg is trying to claim a "back-door" advice of counsel defense without meeting the strict requirements of that defense. (Gov't's Reply Br. 39.)

Bromberg argues in opposition that he will not advance a formal advice of counsel defense, but he is entitled to present evidence that is probative of his lack of scienter.[15] (Bromberg's Opp'n Br. 25.) He further argues that "simply because a defendant is unable to meet the strictures of a formal advice-of-counsel defense does not mean that evidence of attorney involvement should be

---

[14] Weinstein joins Bromberg's argument. (Weinstein's Opp'n Br. 35.)
[15] Weinstein joins Bromberg's argument. (Weinstein's Opp'n Br. 35.)

hidden from the jury, or that any argument that attorney involvement demonstrates good faith must be precluded." (*Id.* at 26.) Rather, Bromberg insists that he seeks to put forth a good faith defense to counter that he acted with *mens rea*. (*Id.* at 26-27.)

A "good faith defense . . . is simply a reiteration that the government must carry its burden in demonstrating that the accused acted knowingly and willfully." *United States v. Ware*, 858 F. App'x 499, 510 (3d Cir. 2021) (quotation marks omitted) (quoting *United States v. Gross*, 961 F.2d 1097, 1103 (3d Cir. 1992)). "The advice[ ]of[ ]counsel defense is a more specific form of the defense of good faith, available in limited circumstances in which a good faith instruction may otherwise be applicable." *Salzano*, 2024 WL 640751, at *2. Some courts have recognized that "reliance on the advice of counsel need not be a formal defense; it is simply evidence of good faith, a relevant consideration in evaluating a defendant's scienter." *Howard v. SEC*, 376 F.3d 1136, 1147 (D.C. Cir. 2004). Courts are wary of allowing such evidence, however, where the "practical effect is indistinguishable" from an advice of counsel defense. *See United States v. Rangott*, No. 23-004, 2024 WL 3488038, at *3 (S.D.N.Y. July 19, 2024).

Here, Bromberg specifically mentions Erez, an Israeli attorney and alleged co-conspirator. (Bromberg's Opp'n Br. 30.) Bromberg assures the Court that he will not argue that he relied on Erez's legal advice, but "there is no reason for the Court to try and take extraordinary measures to hide the fact [Erez] was an attorney, or to limit [Bromberg] from eliciting the truth about [Erez's] involvement in the alleged conspiracy and representations [Erez] made to [Bromberg]." (*Id.*) The Court agrees and finds that the presence of an attorney could be probative of Bromberg's state of mind without becoming a "back-door" advice of counsel defense. *See SEC v. Present*, No. 14-14692, 2017 U.S. Dist. LEXIS 120351, at *2-3 (D. Mass. July 31, 2017) (finding evidence that defendant "engaged top counsel to ensure compliance with legal requirements" admissible "to the

extent it [wa]s relevant to whether [d]efendant acted in good faith"). The Court, accordingly, denies the Government's motion to exclude claims that the presence of an attorney is relevant. The Court cautions Bromberg, however, not to put undue focus on the attorney's presence or otherwise suggest that Bromberg relied on counsel's advice.

### 6.    *Motion to Exclude Certain Personal Factors and Discussion of Punishment*

#### a.    Personal Factors

The Government next moves for a ruling to preclude Defendants from offering evidence or argument concerning "family background (other than as it relates to the charged conduct), health condition, age, conditions of pretrial release or detentions, or any other similar personal factors." (Gov't's Moving Br. 58-60.) Bromberg argues that such a ruling is premature because "it is impossible to know if such information . . . will become relevant and admissible at some point during the trial."[16] (Bromberg's Opp'n Br. 31.) On reply, the Government agrees with Defendants that if such evidence should become relevant during trial Defendants may make an application to the Court seeking to admit it. (Gov't's Reply Br. 43.) The Government, however, clarifies that it seeks a ruling "precluding the Defendants from opening on, or thereafter introducing, such evidence absent a showing of relevance." (*Id.*) Without additional information, the Court is unable to ascertain the context of this request and, accordingly, reserves ruling on this motion.

#### b.    Punishment

The Government argues that Defendants should be "precluded from offering evidence or argument concerning the punishment or consequences they face if convicted." (Gov't's Moving Br. 59.) Bromberg maintains in opposition that "Defendants have no intention of running afoul of

---

[16] Weinstein joins Bromberg's argument. (Weinstein's Opp'n Br. 35.)

well-established law precluding information about the consequences of a guilty verdict," and thus this motion is "unnecessary."[17] (Bromberg's Opp'n Br. 31.)

The law here is clear. A jury empaneled to only decide guilt or innocence of the defendant beyond a reasonable doubt should not hear evidence about "what the consequences of its verdict might be." *United States v. Fisher*, 10 F.3d 115, 121 (3d Cir. 1993). Accordingly, no party shall introduce evidence of potential penalties or mandatory minimums should either or both Defendants be convicted.

### 7.    *Motion to Permit the Government to Use Hypothetical Questions*

The Government "seeks approval to examine certain of its witnesses through hypothetical questions." (Gov't's Moving Br. 61.) Weinstein argues that the Court should deny the Government's motion because it has not provided details regarding which witnesses the Government seeks to question with hypotheticals or the scope of the hypothetical questions.[18] (Weinstein's Opp'n Br. 29.)

The Court agrees with Weinstein that the Government has not provided enough information for the Court to rule on this motion because it has not provided what questions it intends to ask to which witnesses. The Court accordingly denies this request.

### 8.    *Motion to Preclude Defendants from Alleging Vindictive Prosecution or Similar Claims*

The Government seeks to preclude Defendants from alleging vindictive prosecution or other similar claims at trial. (Gov't's Moving Br. 62-63.) Weinstein argues in opposition that this argument should be denied as moot because neither Defendant has raised such an action, and the

---

[17] Weinstein joins Bromberg's argument. (Weinstein's Opp'n Br. 35.)

[18] Bromberg joins Weinstein's argument. (Bromberg's Opp'n Br. 32.)

defense understands that such a claim is appropriate in a pretrial motion. (Weinstein's Opp'n Br. 29-30.) Bromberg represents that he will not seek to advance such an argument before the jury and therefore does not oppose the Government's motion. (Bromberg's Opp'n Br. 32.)

Both parties recognize that a claim for vindictive prosecution "is properly raised in a pretrial motion to dismiss the prosecution." *United States v. Dufresne*, 58 F. App'x 890, 895 (3d Cir. 2003) (citing *United States v. Berrigan*, 482 F.2d 171, 174-76 (3d Cir. 1973)), and neither Defendant has represented the intent to raise a vindictive prosecution or other similar argument at trial. The Court, accordingly, denies this request as moot.

### 9. *Motion to Preclude Defendants from Improperly Using Agent Reports to Impeach Witnesses*

The Government seeks to preclude Defendants from using "law enforcement reports of witness interviews" to impeach witnesses. (Gov't's Moving Br. 63-64.) Weinstein requests the Court deny this motion as moot because defense counsel understands and intends to abide by the Federal Rules of Evidence. (Weinstein's Opp'n Br. 30.) Bromberg argues that "Defendants should be permitted to impeach Government witnesses if their testimony is inconsistent with prior statements made to law enforcement." (Bromberg's Opp'n Br. 33.) He requests the Court to "defer any specific evidentiary rulings at this time and direct the parties to adhere to . . . Rule 613." (*Id.* at 34.)

The Court agrees with Bromberg. As such, the Court reserves on this motion and directs the parties to adhere to Rule 613.

### 10. *Motion to Preclude Defendants from Impeaching Curry or Wittels on Details of FDCA Convictions*

The Government contends that if Curry or Joel Wittels ("Wittels") testify at trial, the Court should preclude or sanitize the introduction of Curry and Wittels's conviction for conspiracy to engage in the wholesale distribution of prescription drugs under the Federal Food, Drug, and

Cosmetic Act (the "FDCA Conviction").[19] (Gov't's Moving Br. 64-69.) Specifically, the Government asks the Court to limit cross-examination to the "essential facts of the FDCA Conviction, including the name of the offense, the fact that it was a felony conviction, that Wittels and Curry committed the offense together, and the potential penalties." (Gov't's Reply Br. 51.) It argues that the FDCA Conviction does not meet the elements of Rule 609(a)(1) because the elements of the crime had little or no bearing on truthfulness and the jury will already hear about Curry and Wittels' other convictions, which bear much more heavily on truthfulness. (Gov't's Moving Br. 65-68.)

Bromberg argues in opposition that Defendants should be allowed to fully cross-examine Curry and Wittels on the previous FDCA Conviction.[20] (Bromberg's Opp'n Br. 34-38.) He contends that the FDCA Conviction is probative of truthfulness because Curry and Wittels pled guilty to "conspiracy to engage in the unlicensed distribution of prescription drugs," which involved operating under false pretenses that they were licensed to distribute prescription drugs when they were not. (*Id.* at 36-37.) Bromberg also argues that the timeliness of the convictions weighs in favor of admissibility under Rule 609—Wittels pled guilty less than a year ago and Curry pled guilty mere months ago. (*Id.* at 37-38.) Finally, he argues that the importance of the witness's testimony and of the credibility to the claim at hand are both critical because Wittels and Curry are alleged co-conspirators. (*Id.* at 38.)

As the party seeking to introduce the evidence, Bromberg bears the burden of showing the prior conviction is admissible for the purpose of impeachment. *See Gov't of V.I. v. Bedford*, 671

---

[19] The Government concedes that Curry's and Wittels's conviction for conspiracy to commit securities fraud and Wittels's conviction for conspiracy to obstruct justice are fully admissible for impeachment purposes. (Gov't's Moving Br. 64.)

[20] Weinstein joins Bromberg's arguments. (Weinstein's Opp'n Br. 35.)

F.2d 758, 761 (3d Cir. 1982). Rule 609 governs witness impeachment through a prior criminal conviction. Fed. R. Evid. 609. Under Rule 609, courts look to the following factors to determine whether the prior conviction is admissible: "(1) the nature of the conviction; (2) the time elapsed since the conviction; (3) the importance of the witness's testimony to the case; and (4) the importance of credibility to the claim at hand." *Sharif v. Picone*, 740 F.3d 263, 272 (3d Cir. 2014) (citing *United States v. Greenidge*, 495 F.3d 85, 97 (3d Cir. 2007)).

First, the Court finds that the FDCA conviction is indicative of truthfulness because Wittels and Curry operated under the false pretense that they had a license to distribute prescription medication. *See Walker v. Horn*, 385 F.3d 321, 333 (3d Cir. 2004) (explaining that crimes probative of truthfulness include "perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or *false pretense*, or any other offense in the nature of *crimen falsi*" (emphasis added) (citation omitted)). The Court may end its inquiry here because "the general balancing test of [Rule] 403 is not applicable to impeachment by *crimen falsi* convictions under [Rule] 609(a)(2)." *United States v. Wong*, 703 F.2d 65, 68 (3d Cir. 1983). Out of an abundance of caution, however, the Court weighs the remaining factors. Second, both convictions are within the last year, which gives them higher probative value. *See cf. United States v. Caldwell*, 760 F.3d 267, 287 (3d Cir. 2014) (noting that "[t]he age of a conviction may weigh particularly in favor of exclusion"). Finally, Wittels and Curry are alleged co-conspirators of Weinstein and Bromberg, so the testimony that they give will be uniquely important to the case, which in turn mandates that their credibility will also be crucial to Defendants' case. The Court, accordingly, denies the Government's motion to preclude evidence on cross-examination concerning Curry and Wittels's FDCA Conviction.

> **11.  *Motion to Preclude Defendants from Improperly Using Character Evidence to Impeach Witnesses***

The Government moves to preclude Defendants from attempting to impeach witnesses based on information that they may have engaged in extramarital affairs or hired sex workers. (Gov't's Moving Br. 69-71.) Specifically, the Government argues that questions about sexual activities are generally not relevant to a witness's truthfulness and are therefore improper grounds for impeachment. (*Id.* at 69-70.)

Weinstein urges the Court to refrain from ruling on this issue before the Government presents the specific conduct it seeks to preclude.[21] (Weinstein's Opp'n Br. 30.) Weinstein argues that credibility is not the only reason to cross-examine a witness, and sexual conduct may be proper to show bias or identify a motive.[22] (*Id.* at 31.) Moreover, he argues that the witness's sexual activity is relevant to Weinstein's defense to the charges. (*Id.* at 32-33.) For example, Weinstein points to communications between Hattab and Anderson describing how they were misappropriating lenders' funds to pay for sex workers, alcohol, and drugs on a business trip, which Weinstein argues demonstrates that they were defrauding Weinstein rather than conspiring with him. (*Id.*) The Government maintains on reply that such information still is not relevant specifically to Anderson and Hattab's bias or motive to testify, and even if it was, it would fail a Rule 403 balancing test. (Gov't's Reply Br. 56.)

---

[21] Weinstein also repeatedly mentions that the Government seeks a ruling concerning impeaching witnesses about prior drug use (Weinstein's Opp'n Br. 30-32), but as there is no such request in the Government's motion (*see* Gov't's Moving Br. 69-71; Gov't's Reply Br. 53-58), the Court does not consider it.

[22] Bromberg joins Weinstein's argument. (Bromberg's Opp'n Br. 38-39.)

Without the specific context in which the evidence concerning sexual conduct arises, the Court is unable to make an informed decision. The Court, accordingly, reserves ruling on this motion. The parties may make specific objections to this evidence if it arises at trial.

### 12.    *Motion to Permit Michael Petron to Testify as Summary Witness*

The Government requests permission to have Michael Petron ("Petron"), a Managing Director with Stout Risius Ross, LLC, testify as a summary witness at trial. (Gov't's Moving Br. 71-73.) The Government intends to have Petron testify regarding his creation of summary charts of voluminous bank records under Rule 1006. (*Id.* at 71, 71 n.10) The Government represents that the summary charts will show: (1) the cash flow of individuals and entities relevant to the case, including Optimus and Tryon; (2) "investor money flowing in and out of Optimus and Tryon accounts"; (3) "Defendants' and their co-conspirators' use of investor money to pay certain expenses"; and (4) "the movement of money from Optimus and Tryon accounts to nominee accounts, including accounts that Erez controlled on Weinstein's behalf." (*Id.* at 71.)

Bromberg notes that the Government has not yet produced the summary charts and therefore requests the Court to deny this motion without prejudice until Defendants have had the opportunity to assess if the underlying files are admissible and whether the charts accurately represent those underlying files.[23] (Bromberg's Opp'n Br. 39) The Government responds that it will produce the summary charts before trial, and Defendants have had the bank records that Petron intends to summarize for months, along with a disclosure setting forth his area of testimony. (Gov't's Reply Br. 58.) The Government therefore urges the Court to make a preliminary determination that Petron may testify as a summary witness to avoid delays at trial. (*Id.*)

---

[23] Weinstein joins Bromberg's argument. (Weinstein's Opp'n Br. 35.)

The Court grants the Government's request to have Petron testify as a summary witness, and Defendants will have the opportunity for cross-examination. The Court is satisfied that the Government has met its initial burden of showing the use of summary charts would be beneficial, considering the Government's representation of the voluminous relevant bank records it intends to use at trial. *See United States v. Manamela*, 463 F. App'x 127, 132 (3d Cir. 2012) ("[Rule] 1006 provides that a party may use a summary or chart to prove the content of 'voluminous writings.'"). If Defendants have specific objections to the summary charts once they have reviewed them, Defendants may bring their objections to the Court's attention for a ruling at that time. *See United States v. Malik*, 424 F. App'x 122, 128 (3d Cir. 2011) ("To have a summary admitted, the proponent of a summary must lay a proper foundation and show that the summation is accurate." (citing *Pritchard v. Liggett & Myers Tobacco Co.*, 295 F.2d 292, 301 (3d Cir. 1961))).

### 13.    *Motion to Compel Defendants to Produce Reciprocal Discovery*

The Government requests that the Court compel Defendants to produce all undisclosed material required by Rule 16(b)(1) and preclude Defendants from admitting or using at trial any materials not produced. (Gov't's Moving Br. 2-5.) Weinstein maintains that he will abide by all pretrial deadlines. (Weinstein's Opp'n Br. 1.) Bromberg similarly notes that he is aware of his obligations and will comply with them. (Bromberg's Opp'n Br. 4.) The Court, accordingly, denies this motion as moot.

### B.    **Weinstein's Motions**

Weinstein brings three motions *in limine*, but after considering the Government's *in limine* motion related to Weinstein's prior convictions, only two remain: (1) whether to preclude the introduction of allegedly fraudulent deals beyond those in the Superseding Indictment; and

(2) whether a *Starks* hearing may be necessary.[24] (*See* Weinstein's Moving Br, 5-12, ECF No. 196.) The Court addresses each in turn.

### 1.    *Introduction of Additional Fraudulent Transactions*

Weinstein argues that the Government should be precluded from "introducing any deals as allegedly fraudulent, beyond those specifically alleged in the [Superseding] Indictment" to avoid an improper trial by surprise. (*Id.* 6.) He notes that the Government has alluded to other deals, and there are "thousands of messages, hundreds of bank transactions, and myriad conversations related to dozens of transactions nowhere mentioned in the [Superseding] Indictment." (*Id.* at 5.) Alternatively, Weinstein argues that the Government should be required to disclose the unindicted transactions it will seek to introduce as fraudulent and the nature of those frauds. (*Id.* at 7.)

The Government argues in opposition that Weinstein is recycling his motion for a bill of particulars, which this Court denied, and in any event, the cases that Weinstein cites do not provide for a different result. (Gov't Opp'n Br. 84-85, ECF No. 215.)

Based on the parties' arguments, and without any information concerning the alleged deals that the Government may seek to introduce and whether they are relevant to the allegations in the Superseding Indictment, the Court will reserve on this ruling. The Court will address the Government's request to introduce such evidence if and when it becomes relevant during trial.

### 2.    *Motion for a Starks Hearing*

Weinstein argues that a *Starks* hearing is necessary because there are questions as to the accuracy and admissibility of certain recordings made by cooperating witnesses. (Weinstein's Moving Br. 8-9.) In opposition, the Government argues that a *Starks* hearing is not necessary

---

[24] Bromberg fully joins Weinstein's motions *in limine* and adopts the arguments made in Weinstein's supporting documents. (Bromberg's Moving Br. 47, ECF No. 197.)

because it will easily meet the requirements of admissibility at trial. (Gov't's Opp'n Br. 85-93.) The Government also notes that it "is willing to provide proffers of certain evidence that it expects to present at trial concerning the recordings." (*Id.* at 91.) Weinstein on reply requests the Court to order the Government to immediately provide such proffers so that he may evaluate whether he believes that a *Starks* hearing is still necessary. (Weinstein's Reply Br. 5, ECF No. 230.) The Court orders the Government to immediately provide the proffers of the evidence on which it intends to rely, if it has not provided the information already. If, after reviewing the evidence, Weinstein would like to renew his request for a *Starks* hearing, he may e-file correspondence on the docket.

### C.    Bromberg's Motions

Bromberg brings two motions *in limine*, but after considering the prior conviction-related *in limine* motion from the Government, only one remains: whether to preclude the Government from introducing particular instances of spending by Bromberg. (Bromberg's Moving Br. 43-47, ECF No. 197.)

Bromberg seeks to preclude the Government from introducing evidence of his spending habits on expensive items because it risks inappropriate "class bias" or "class prejudice" or otherwise inflaming the jury. (Bromberg's Moving Br. 43-44.) Bromberg represents that he will not dispute that he earned profits and that he spent those profits, but only whether he believed those profits were legal or whether they were proceeds of a fraudulent scheme. (Bromberg's Reply Br. 61, ECF No. 233.) He argues that the lavish spending evidence is not probative when the only question is whether the methods used to acquire the money were legal. (Bromberg's Moving Br. 45.) Regarding Rule 403, Bromberg argues that the fact of lavish spending itself is prejudicial, regardless of how the Government introduces evidence of such spending. (Bromberg's Reply Br. 63.)

The Government argues in opposition that it intends to offer evidence of Bromberg's spending, "not as mere lifestyle evidence, but rather as evidence that directly proves the charged offenses and bears directly" on Bromberg's intent and motive. (Gov't Opp'n Br. 81-82.) In particular, the Government represents that the evidence will show that Bromberg defrauded investors, in part, to fund his lifestyle. (*Id.* at 82.) Regarding Rule 403, the Government represents that most of this evidence will be introduced through a summary of bank accounts with minimal descriptions, which will not inflame the jury.

While admitting lifestyle evidence carries a danger of class prejudice or bias, extravagant spending may be admissible when it speaks to a defendant's "fraudulent intent," to "demonstrate that this was not some sort of good faith error, but purposeful conduct motivated by greed." *United States v. Lattanzio*, No. 15-446, 2018 WL 1837856, at *15 (D.N.J. Apr. 16, 2018) ("[E]vidence of lavish spending is 'clearly probative of [the defendant's] motive (e.g., wealth accumulation and maintenance).'" (quoting *United States v. Abdulwahab*, No. 10-248, 2016 WL 2349109 (E.D. Va. May 3, 2016)). Here, the Government seeks to introduce this lavish spending evidence to show in part that Bromberg defrauded investors to fund his lifestyle (Gov't Opp'n Br. 82), which is probative of Bromberg's knowledge, motive, and intent. *See United States v. Staton*, No. 10-800, 2012 WL 2036045, at *5 (E.D. Pa. June 5, 2012) (admitting evidence that defendant spent money on "personal expenses, such as expensive cars, vacations, and other luxury items" because "[s]uch evidence support[ed] an intent and knowledge by [d]efendant to defraud the victims"). The Court finds that this evidence is not inflammatory, and any prejudice from this evidence does not outweigh its highly probative nature. *See Lattanzio*, 2018 WL 1837856, at *15 (admitting evidence of lavish spending where "nothing about the items purchased was inflammatory, prejudicial, or suggestive of bad acts extrinsic to the charged offenses"). The Court, accordingly, denies

Bromberg's motion to preclude the Government from introducing evidence of his spending habits on expensive items.

**IV.    CONCLUSION**

For the above reasons, the Court grants in part, denies in part, and reserves in part on the parties' motions *in limine*. The Court's rulings today are based on the context in which the issues were presented. Notwithstanding these preliminary decisions, the parties will have the opportunity to make objections during the trial. Should the specific context in which the evidence is sought to be admitted at trial differ from the Government's or Defendants' presentation in their respective motions, the Court reserves the right to deviate from its preliminary decisions regarding the issues raised. An appropriate order will follow this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE