**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ELIYAHU ("ELI") WEINSTEIN, a/k/a "Mike Konig," and ARYEH ("ARI") BROMBERG. | Criminal Action No. 24-128 (MAS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon the United States of America's (the "Government") and Defendants Eliyahu Weinstein ("Weinstein") and Aryeh Bromberg's ("Bromberg") (collectively, "Defendants") motions related to proposed expert testimony. (ECF Nos. 248, 249.) The Government and Defendants separately filed oppositions. (ECF Nos. 258, 259.) The Court has carefully considered the parties' submissions and heard oral argument on the Government's motion to exclude Rabbi Moshe Estreicher on February 14, 2025. The Court decides the remaining motions pursuant to Local Civil Rule 78.1(b), which is applicable to criminal cases under Local Criminal Rule 1.1. The Court's findings are recited below. For the reasons set forth below, the Court grants in part and denies in part.

### I.  BACKGROUND

The parties are intimately familiar with the factual background in this matter. The Court, therefore, will not recite any facts in this Memorandum Opinion.[1]

---

[1] For a complete recitation of background facts in this matter, the parties are directed to the Court's prior Opinions at ECF Nos. 154, 256.

## II. LEGAL STANDARD

Federal Rule of Evidence 702[2] governs the admission of expert testimony. *See* Fed. R. Evid. 702. Rule 702 provides that a witness who is qualified as an expert may testify in the form of an opinion or otherwise if:

> (a) the expert's ... specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(a)-(d). Rule 703 provides in part that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."

As established under *Daubert*, the trial court serves as a "gatekeeper" tasked with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand" in deciding whether that testimony is admissible. *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 597 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999) (applying *Daubert* standard to all expert testimony). To accomplish that duty, courts must evaluate three factors in deciding whether to admit the testimony, including whether: (1) the expert is qualified; (2) the expert's testimony is reliable; and (3) the expert's testimony is helpful to the trier of fact, i.e., "fit." *See United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010); Fed. R. Evid. 702.

## III. DISCUSSION

The Court will address each motion in turn, beginning with the Government's motion, and then moving to Defendants' motion.

---

[2] All references to Rule or Rules hereinafter refer to the Federal Rules of Evidence.

### A. The Government's Motion

The Government seeks to exclude two of Weinstein's proposed experts: (1) Rabbi Moshe Estreicher ("Rabbi Estreicher"); and (2) Manoj Dandekar ("Mr. Dandekar").

#### 1. *Rabbi Moshe Estreicher*

Weinstein represents that Rabbi Estreicher will testify about Jewish law, which prohibits Jews from collecting interest on loans, or "Ribbis," from other Jews; and that to avoid this prohibition, Jewish law allows loans to be structured as investment contracts, which is called "Heter Iska." (Gov't's Moving Br. 1, ECF No. 249; Gov't's Moving Br., Ex. A at 1, ECF No. 249-1.) Additionally, Rabbi Estreicher is expected to consider Optimus Investments Inc.'s ("Optimus") contracts and address how they interact with the concepts of Ribbis and Heter Iska. (Gov't's Moving Br. 1; Gov't's Moving Br., Ex. A at 1.)

The Government argues that Weinstein has not complied with Rule 16 governing expert disclosures, and that Rabbi Estreicher's testimony is irrelevant, will confuse the jury, and will create mini-trials on extraneous issues. (Gov't's Moving Br. 3.) Weinstein responds that the disclosures were sufficient, and that the testimony will be probative of Weinstein's intent concerning the Optimus Agreements and whether he treated the funds as "ill-gotten gains" or used them "in good faith to invest in substitute assets." (Weinstein's Opp'n 4.)

"Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). The third restriction, fit, "goes primarily to relevance." *Daubert*, 509 U.S. at 580. To establish "fit," Weinstein must demonstrate "a connection between the expert opinion offered and the particular disputed factual issues in the case." *In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999). The Government argues that Rabbi Estreicher's testimony does not "fit" the facts because

Jewish law, as well as the concepts of Ribbis and Heter Iska, are not relevant to a contested issue in this case. (Gov't's Moving Br. 3.) Specifically, the Government does not dispute that Optimus sometimes entered into agreements under Jewish law, which were clearly labeled as such and "made no reference to investments in specific products." (*Id.* at 3-4.) Instead, the Government maintains that Optimus *investment agreements* "looked very different"; they did not cite Jewish law; and they referred to capital investments in specific products. (*Id.* at 4.) Weinstein, on the other hand, maintains that such Jewish law concepts are relevant because they are probative of "the intent of the Optimus Agreements." (Weinstein's Opp'n Br. 4, ECF No. 258.) The Court disagrees.

Rabbi Estreicher's testimony will not "aid the jury in resolving a factual dispute." *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 790 (3d Cir. 2009) (citation omitted). As the Government represents, there is no dispute that certain Optimus contracts were entered into under Jewish law. (Gov't's Moving Br. at 3-4.) And the Government represents that those contracts were different from the *investment contracts* at issue, which include no reference to Jewish law. (*Id.* at 3-4.) Simply put, the Court does not see how the structure of the transactions that Optimus entered into "makes a fact of consequence"; namely, Weinstein's intent in entering into those transactions, "more probable or less probable than it would be without the evidence." *United States v. Ford*, 481 F.3d 215, 220 (3d Cir. 2007). Rather, by explaining precepts under Jewish law and that Optimus entered into contracts under Jewish law, Rabbi Estreicher's testimony risks misleading the jury. *See United States v. Ford*, 481 F.3d 215, 220 (3d Cir. 2007) (noting that expert testimony must "speak[] clearly and directly to an issue in dispute in the case, and that it will not mislead the jury" (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995)); *see also United States v. Mills*, No. 17-122, 2019 WL 2464782, at *4 (W.D. Pa. June 13, 2019) (excluding expert testimony concerning a post-indictment cognitive test where the

4

defendant's knowledge was at issue, but it "d[id] not meet the requirement that it 'fit' the case and there [wa]s a significant risk that such evidence would be misleading to the jury"). The Court, accordingly, grants the Government's motion to exclude Rabbi Estreicher from testifying.

### 2. *Manoj Dandekar*

Next, the Government seeks to exclude the expert testimony of Mr. Dandekar, who will testify about the methods of valuing patents and businesses based on those patents. (Gov't's Moving Br. 1-2; Gov't's Moving Br., Ex. A at 2.) He will testify that he evaluated the patents of Saniton Plastic in 2022 and will testify to the valuation ranges of Saniton Plastic at that time. (Gov't's Moving Br. 1-2; Gov't's Moving Br., Ex. A at 2.)

First, the Government argues that Weinstein's disclosures fail to comply with Rule 16. (Gov't's Moving Br. 3.) The Court disagrees. Weinstein need not provide a "verbatim recitation" of the proposed testimony, but rather only needs to provide sufficient disclosure to allow the Government to adequately prepare for trial. *See United States v. Bressi*, No. 19-207, 2023 WL 7287214, at *1 (M.D. Pa. Nov. 3, 2023) (quoting Fed. R. Crim. P. 16, Advisory Comm. Notes 2022 Amendments) (Rule 16 "does not require a verbatim recitation of the testimony the expert will give at trial."). Even if the initial disclosures were not sufficient, Weinstein's supplemental disclosure, which provided sixty documents that Mr. Dandekar reviewed to form the factual basis of his valuation and his specific valuation methodologies (*see* Weinstein's Opp'n Br. 1), meet the Rule 16 requirements.

Second, the Government argues that Mr. Dandekar's testimony is irrelevant, will confuse the jury, and create mini-trials on extraneous issues. (Gov't's Moving Br. 3.) Weinstein argues in opposition that the value of Saniton speaks to his good faith in investing lenders' funds "in accordance with his good faith understanding of the terms of the funds raised from the Tryon

lenders." (Weinstein's Opp'n Br. 2.) Further, Weinstein argues that any disagreement about valuations speaks to the weight of the evidence, rather than its admissibility. (*Id.* at 3.)

The Court agrees that Mr. Dandekar's testimony speaks to a "disputed factual issue[] in the case." *In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999). A good faith belief can be a complete defense to wire fraud because "it would be 'inconsistent with [Defendant] acting with an intent to defraud.'" *United States v. Sponaugle*, 621 F. Supp. 3d 474, 488 (D. Del. 2022), *aff'd*, No. 22-2851, 2024 WL 4144069 (3d Cir. Sept. 11, 2024). Mr. Dandekar's testimony thus meets the low threshold for relevance, and it will not tend to mislead the jury. And the Court disagrees that it will lead to a mini-trial on the valuation of Saniton. The Government may dispute Mr. Dandekar's valuation through cross-examination, which speaks to the weight of the evidence, not admissibility. *Luciotti v. Borough of Haddonfield*, No. 20-3539, 2023 WL 6366091, at *7 (D.N.J. Sept. 29, 2023) (explaining that questions concerning a conclusion "can be probed on cross-examination and certainly go to the weight of the [expert's] opinions but are not grounds for exclusion").

The Court, therefore, denies the Government's motion to preclude Mr. Dandekar from testifying.

### B. Defendants' Motions

Defendants move to exclude three proposed experts: (1) Thomas Carocci, Esq. ("Mr. Carocci"); (2) Michael Petron ("Mr. Petron"); and (3) Paul Kumpf ("Mr. Kumpf").

#### *1. Thomas Carocci, Esq.*

The Court first addresses arguments concerning Mr. Thomas Carocci, Esq., Assistant General Counsel of the Criminal Prosecution Assistance Group at the Financial Regulatory Authority, ("FINRA").

The Government represents that Mr. Carocci will: (1) testify about "the nature, structure, and regulation of securities markets"; (2) explain certain financial terms, the importance of truthful disclosures to investors and the importance of maintaining accurate books and records and using investor money for its stated purpose; and (3) testify about the common features of Ponzi schemes. (Defs.' Moving Br. 15, ECF No. 248.) Defendants argue that Mr. Carocci should be precluded from testifying for a number of reasons, which the Court will address in turn.

*First*, Defendants argue that the Government's disclosures fail to comply with Rule 16 because they do not disclose Mr. Carocci's complete opinions on the topic and do not include the basis and reasons for any of Mr. Carocci's opinions. (*Id.* at 12-13.)

The statement of the witness's opinion under Rule 16, however, "does not require a verbatim recitation of the testimony the expert will give at trial." *Bressi*, 2023 WL 7287214, at *1 (quoting Fed. R. Crim. P. 16, Advisory Comm. Notes 2022 Amendments). Here, the Court finds that the Government's disclosures allow Defendants to prepare for trial to "meet the other side's expert evidence" as to Mr. Carocci. Fed. R. Crim. P. 16, Advisory Comm. Notes 2022 Amendments.

As to the basis and reasons for Mr. Carocci's opinions, the Government has stated that Mr. Carocci's testimony will be based on his training and experience. (Gov't's Opp'n Br. 11-13, ECF No. 259.) Extensive practical experience is sufficient to qualify as an expert. *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 327–28 (3d Cir. 2002). Here, Mr. Carocci has nineteen years of experience at FINRA working on criminal investigations and prosecutions involving securities-related offenses. (Gov't's Opp'n Br. 12.) The Government noted that Mr. Carocci's testimony is based on his experience rather than a scientific method or technical principle, (*id.*) which can be sufficient to qualify as an expert. *See Nat'l Fire & Marine Ins. Co. v. Newtown*

*Square, LLC*, No. 21-5397, 2024 WL 1683609, at *2 (E.D. Pa. Apr. 18, 2024) (noting that "some courts have said that when examining expert testimony that is based on practical experience, 'the Daubert factors (peer review, publication, potential error rate, etc.) simply are not applicable,' because the reliability of testimony from a practical experience expert 'depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it'"). As such, the Court agrees that the Government has satisfied its Rule 16 disclosure obligations.

*Second*, Defendants argue that Mr. Carocci's testimony includes noncontroversial legal terms that are better left to a jury charge. (Defs.' Moving Br. 18-21.) The Government argues in opposition that it will not ask Mr. Carocci for legal definitions, but rather generally about securities laws and technical financial terms of art. (Gov't's Opp'n Br. 10-11.)

The Court agrees with the Government that Mr. Carocci's testimony on securities laws and technical financial terms of art will not usurp the role of the judge. An expert may testify to the "customs and business practice in the securities industry" to provide important context. *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 218 (3d Cir. 2006). Here, that background knowledge is relevant context to inform Mr. Carocci's other testimony concerning how Ponzi schemes—the alleged fraudulent scheme directly at issue in this case—generally operate. *See Hafen v. Howell*, No. 19-813, 2023 WL 2188566 at *2, (D. Utah Feb. 23, 2023) (collecting cases where courts admitted expert testimony "to help jurors assess whether an investment scheme was a Ponzi scheme, reasoning such testimony can be relevant and helpful to the trier of fact on this issue").

*Third*, Defendants argue that Mr. Carocci's testimony improperly speaks to the ultimate issue of Defendants' mental state in violation of Rule 704. (Defs.' Moving Br. at 22-25.)

Rule 704 prohibits an expert witness from "stat[ing] an opinion about whether the defendant did or did not have a mental state or condition that constitute[s] an element of the crime charged." The Third Circuit has held, however, that:

> Expert testimony is admissible if it merely support[s] an inference or conclusion that the defendant did or did not have the requisite *mens rea*, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony.

*United States v. Womack*, 55 F.4th 219, 229 (3d Cir. 2022) (quoting *United States v. Watson*, 260 F.3d 301, 308 (3d Cir. 2001)). Based on the Government's representations, Mr. Carocci's testimony will not take "the last step in the inferential process—a conclusion as to the defendant's mental state." *Id.* By only describing what is typically important to investors and the common features of a Ponzi scheme, the jury will be left to determine if the alleged misrepresentations were material to investors *in this case* and whether the facts *in this case* constitute a Ponzi scheme. *See Diaz v. United States*, 602 U.S. 526, 536 (2024) (holding that an expert's testimony did not violate Rule 704 where he testified that *most* drug dealers knowingly transport drugs, but the jury was left to decide the defendant's specific mental state).

*Finally*, Defendants argue that Mr. Carocci's testimony will be unfairly prejudicial, as well as potentially misleading and confusing to the jury under Rule 403. (Defs.' Moving Br. 22-25.) The Court disagrees. The Government has represented that Mr. Carocci's testimony will make clear that he is not giving an opinion on whether Defendants' conduct constituted a Ponzi scheme. (Gov't's Opp'n Br. 14.) In any event, Defendants will have the opportunity to cross-examine Mr. Carocci, and jury instructions will further clarify the context of his testimony for the jury.

The Court, accordingly, denies Defendants' motion to preclude Mr. Carocci from testifying.

### 2.   *Michael Petron*

Defendants seek to exclude Mr. Michael Petron as an expert. The Court has already granted the Government's request to have Mr. Petron testify as a summary witness at trial. (Mem. Op. 26-27, ECF No. 260.) He will therefore not be permitted to testify as an expert.

Defendants argue that the Government should not be permitted to use the summary charts that Mr. Petron put together for two reasons. (Defs.' Moving Br. 28-31.) First, at the time of Defendants' motion, the Government had not yet provided the charts, which Defendants argue is improper and prejudicial because determining the accuracy of these charts would require a significant amount of time. (*Id.* at 28-29.) The Government responds in opposition that Defendants have had a majority of the underlying documents since April 2024, and it provided the summary charts to Defendants on February 5, 2024. (Gov't's Opp'n Br. 20.) The Government also represents that Mr. Petron is expected to testify towards the end of the Government's case-in-chief. (*Id.*)

The Court finds that the summary charts are admissible. Defendants now have the summary charts in their possession for review, and with the Government's representation that Mr. Petron will not testify until the end of its case-in-chief, Defendants will have had over three weeks to review the charts. If Defendants have specific objections to the summary charts once they have reviewed them, Defendants may bring their objections to the Court's attention for a ruling at that time. *See United States v. Malik*, 424 F. App'x 122, 128 (3d Cir. 2011) ("To have a summary admitted, the proponent of a summary must lay a proper foundation and show that the summation is accurate." (citing *Pritchard v. Liggett & Myers Tobacco Co.*, 295 F.2d 292, 301 (3d Cir. 1961))).

Second, Defendants argue that the Government should not be permitted to address Mr. Petron's expertise at length because it risks a danger of prejudice and misleading the jury under Rule 403 by leading the jury to credit Mr. Petron as an expert witness when he is not. (Defs.'

Moving Br. 30-31.) The Government, on the other hand, maintains that it must elicit Mr. Petron's professional background, training, and experience to explain his involvement in the case and why the Government is paying him. (Gov't's Opp'n Br. 20-21.)

The Court agrees with the Government that it must elicit Mr. Petron's background to provide context to the jury concerning his creation of the summary charts. But the Government may not imply or allude to Mr. Petron's testifying as an expert in other cases. Defendants may also, of course, cross-examine Mr. Petron to make clear that he is not testifying as an expert in this case.

### 3. Paul Kumpf

Defendants seek to exclude Mr. Kumpf as an expert. The Government has represented, however, that he will testify as a lay witness under Rule 701. (Gov't's Opp'n Br. 21.) The Court, accordingly, denies this motion as **moot**.

### IV. CONCLUSION

For the above reasons, the Court grants in part, and denies in part, the parties' motions regarding expert testimony. An appropriate order will follow this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE